UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FRANZ LESTI, PETRA RICHTER, CHRISTA
MILLENTRUP, HUBERT MILLENTRUP,
HERBERT SCHICKLE, HANS ZWICKY, KATHI
ZWICKY, and WOLF VON LOEBEN,
individually and on behalf of all
others similarly situated; ROBERT E.
TARDIFF, JR., in his capacity as the
Chapter 7 Trustee of the
substantively consolidated
bankruptcy estates of Debtors,
Ulrich Felix Anton Engler, Private
Commercial Office, Inc., and PCO
Client Management, Inc.,

                    Plaintiffs,

vs.                                    Case No.  2:11-cv-695-FtM-29DNF

WELLS FARGO BANK, N.A., formerly
known as Wachovia Bank, N.A., and
SUNTRUST BANK,

                    Defendants.[1]

_____


**OPINION AND ORDER**

     This matter comes before the Court on (1) SunTrust Bank's

Motion to Dismiss Plaintiffs' Amended Class Action Complaint (Doc.

#35) filed on May 11, 2012, and (2) Wells Fargo Bank, N.A.'s Motion

to Dismiss Amended Class Action Complaint (Doc. #43) filed on May

29, 2012.  Plaintiffs filed an Omnibus Opposition (Doc. #47) on

_____

     [1]The Amended Complaint does not comply with Fed. R. Civ. P.
10(a), which requires that "[t]he title of the complaint must name
all the parties."  The parties will be required to utilize the
caption set forth above for the duration of the case, and the
Amended Complaint is deemed to be interlineated to add the new
plaintiffs and defendant.

June 22, 2012.  On August 15, 2012, Wells Fargo Bank, N.A. filed a
Limited Reply (Doc. #70).  Also before the Court is SunTrust's
Motion to Strike Paragraphs 42, 43, 70(v), 75(v), 83(v), and
Exhibit 4 of Plaintiffs' Amended Class Action Complaint (Doc. #36),
to which plaintiffs filed a Response (Doc. #46).  The parties
request oral arguments (Docs. #37, 71.)

Defendants seek dismissal of all counts of the Amended
Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants assert
that the face of the Amended Complaint establishes that each claim
is barred by the statute of limitations, or alternatively, that
each count fails to sufficiently set forth a cause of action upon
which relief may be granted.

**I.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint
must contain a "short and plain statement of the claim showing that
the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This
obligation "requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will not
do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation
omitted).  To survive dismissal, a complaint must set forth factual
allegations that state a claim which is "plausible on its face."
Id. at 555.  See also Edwards v. Prime Inc., 602 F.3d 1276, 1291
(11th Cir. 2010).  This requires facts which are more than merely
possible, and must set forth enough facts to raise a reasonable

expectation that discovery will reveal evidence of defendant's liability. Twombly, 550 U.S. at 556.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012)(internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

The statute of limitations is an affirmative defense, and the burden of proving an affirmative defense is on the defendant. Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1292 (11th Cir. 2005). A plaintiff is not required to anticipate and negate an affirmative defense in the complaint. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). A Rule 12(b)(6)

motion to dismiss on statute of limitations grounds may be granted, however, if it is apparent from the face of the complaint that the claim is time-barred. <u>La Grasta</u>, 358 F.3d at 845-46. Nonetheless, a motion to dismiss on statute of limitations grounds should not be granted where resolution depends either on facts not yet in evidence or on construing factual ambiguities in the complaint in defendants' favor. <u>Omar ex rel. Cannon v. Lindsey</u>, 334 F.3d 1246, 1252 (11th Cir. 2003).

## II.

The Amended Complaint against defendants Wells Fargo Bank, N.A. (Wells Fargo) and SunTrust Bank (SunTrust) sets forth ten state law claims. In a nutshell, the Amended Complaint alleges that each bank knowingly and/or negligently assisted one of their customers and his minions with a Ponzi scheme being implemented to loot millions of dollars from innocent foreign investors. The original two plaintiffs (Lesti and Richter) refer to themselves as the Wells Fargo Plaintiffs and bring four claims against Wells Fargo. The six new plaintiffs refer to themselves as the SunTrust Plaintiffs and bring four claims against SunTrust. The Bankruptcy Trustee brings two claims, one against each defendant.

In the Amended Complaint, plaintiffs allege the following material facts: Ulrich Felix Anton Engler (Engler), a German citizen, owned and purported to operate Private Commercial Office, Inc. (PCO) as a day trading and investment business. (Doc. #24, ¶

25.)  Engler solicited investments primarily from individuals and entities located in Europe.  (Id., ¶ 26.)  In the solicitations, Engler claimed to be a highly experienced investor who was formerly employed by Chase Manhattan Bank for 21 years, and claimed to possess sophisticated software which allowed him to quickly analyze shares of stock and capture significant investment returns before others could do so.  (Id., ¶ 27.)  Engler guaranteed annualized returns of 48% to 72% in his solicitation materials.  (Id.)

The investments were documented by Promissory Notes and Loan Agreements between Engler and PCO, as Borrowers, and the investors, as Lenders.  (Id., ¶ 28.)  The loans were made payable to the Borrowers' order at a designated account at SunTrust (prior to May 2007) and Wells Fargo (after May 2007).  (Id.)  Engler did not actually invest the money as he represented, but instead used the invested funds to operate a classic Ponzi scheme and make lavish personal expenditures.  (Id., ¶ 29.)

## A.  SunTrust Accounts

Engler opened and maintained two PCO accounts at SunTrust on or about January 1, 2006 (the SunTrust Accounts), and also opened two other SunTrust accounts in the names of two different corporations.  (Id., ¶¶ 34, 36.)  At the time, SunTrust knew that Engler was a German national who purported to conduct a day trading/investing business at a specific location in Cape Coral, Florida.  (Id., ¶ 34.)  Plaintiffs allege that if SunTrust had

-5-

properly discharged its obligation to know its customer, SunTrust
would have learned that: (1) Engler possessed no occupational or
professional licenses; (2) his office location was a mail slot at
a UPS Store; and (3) Engler had a criminal record in Germany for
various fraud-related cases and was wanted on a German arrest
warrant. (Id., ¶ 35.)

The SunTrust Accounts received deposits of approximately $24
million each month in international wire transfers, which stated on
their face that they were for "loans," "loan agreements,"
"promissory notes," or "daytrading." (Id., ¶ 37.) These
international wire transfers were the sole source of deposits into
the SunTrust Accounts. (Id., ¶ 38.) Each month approximately the
same amount was disbursed from the SunTrust Accounts as
international wire transfers, commission payments, and domestic
wire transfers for lavish luxury expenses. (Id., ¶¶ 37, 38.)

Plaintiffs allege that SunTrust had actual knowledge of
Engler's fraudulent use of the SunTrust Accounts by at least May
2007, (id., ¶2), because: (1) on November 22, 2006, the Austrian
Financial Market Authority (AMFA) published a warning to the
general public in an official gazette, (id., ¶ 39; Exhibit 1); (2)
on March 1, 2007, JP Morgan Chase Bank, N.A. filed a federal
lawsuit against Engler and PCO in the Fort Myers Division of the
Middle District of Florida regarding Engler's false representations
concerning his prior employment with Chase Manhattan Bank, and on

September 18, 2007, a Final Consent Judgment and Permanent Injunction was entered against Engler and PCO, (id., ¶ 40); (3) in May 2007, AE Centurion Bank refused to process several wire transfers involving the SunTrust Accounts due to an internal risk management decision, and notified SunTrust, (id., ¶ 41); (4) on or about June 8, 2007, SunTrust issued a 314(b) request to Wells Fargo pursuant to the USA Patriot Act which summarized SunTrust's knowledge of PCO and Engler's suspicious activities and also concerned a $7 million check by PCO to PCOM, (id., ¶¶ 3, 43); and (5) a May 3, 2011, email from a SunTrust attorney summarizing its prior knowledge, (id., ¶ 42).

Plaintiffs allege that notwithstanding SunTrust's knowledge of Engler's fraudulent use of the SunTrust Accounts no later than May 2007, SunTrust consciously rendered substantial assistance to Engler by continuing to process numerous international wire transfers, which enabled Engler to loot over $35 million from innocent investors. (Id., ¶¶ 2, 45.) On June 28, 2007, SunTrust sent PCO a letter stating that based upon an account review and consistent with the best interests of SunTrust and its customers, PCO's two SunTrust Accounts should be closed voluntarily by July 30, 2007, or would be closed involuntarily by that date. (Id., ¶¶ 4, 44.) Upon receipt of this letter, Engler siphoned off the remaining balances in the SunTrust Accounts. (Id., ¶4.)

### B.  Wells Fargo Accounts

PCO Client Management, Inc. (PCOM) maintained two accounts at Wells Fargo (the Wells Fargo Accounts) that were opened on or about May 29, 2007, by Angelika Neumeier-Fuchs (Fuchs).  (Id., ¶ 46.) Plaintiffs allege that Wells Fargo then knew that: (1) Fuchs was a German national; (2) Fuchs was associated with Engler; (3) PCOM purported to conduct billing services for PCO from the same office location as PCO; (4) PCOM's sole client was PCO; (5) PCOM obtained funds from PCO and paid PCO's bills with the funds; (6) on or about May 30, 2007, PCOM deposited a $7 million check from PCO's SunTrust Accounts into PCOM's Wells Fargo Accounts; and (7) Fuchs intended to initiate approximately 1,700 wires per month to Germany, Austria, the Netherlands, and Italy.  (Id., ¶ 46.)  The Wells Fargo Accounts were funded entirely by transfers from PCO and international wire transfers.  (Id., ¶ 54.)  On or about June 8, 2007, Wells Fargo received SunTrust's 314(b) request and the AMFA Warning Notification Letter from SunTrust.  (Id., ¶¶ 47, 48.)  On July 10, 2007, Wells Fargo sent PCOM a letter stating that its two Wells Fargo Accounts should be closed voluntarily by August 21, 2007, or would be closed involuntarily by that date, because PCOM's needs or expectations were not compatible with what Wells Fargo was in a position to offer.  (Id., ¶¶ 6, 49.)  Despite this letter, Wells Fargo continued to process thousands of monthly receipts and disbursements of investor funds totaling tens of millions of

dollars per month to and from Fuchs/PCOM until in or about January 2008. (Id., ¶6.)

Plaintiffs allege that despite Wells Fargo's knowledge by June 2007 that Fuchs was utilizing the PCOM Wells Fargo Accounts as "a mere filter" so Engler could continue to perpetrate his fraud, (id., ¶ 5), Wells Fargo made a conscious decision to keep the accounts open until January 2008 so that it could ensure collection of transaction/service fees and clear up any wire issues, (id., ¶¶ 50, 53, 55). Wells Fargo rendered substantial assistance to Engler by continuing to process numerous international wire transfers of innocent investor funds totaling tens of millions of dollars per month. (Id., ¶¶ 5, 56.) Plaintiffs allege that Wells Fargo generated approximately $30,000 a month in transaction/service fees as a result of the wire transfers. (Id., ¶ 57.)

### C.  German Arrest Warrant for Engler

On December 4, 2007, the County Court of Mannheim, Germany issued an arrest warrant for Engler. (Id., ¶ 30.) On April 21, 2008, the Public Prosecutor's Office of Mannheim, Germany issued a request to the United States for Engler's arrest and extradition. (Id., ¶ 31.) Engler was a fugitive at the time the Amended Complaint was filed. (Id., ¶ 32.)

### D.  Bankruptcy Court Proceedings

On March 31, 2008 a group of creditors filed involuntary petitions for relief under Chapter 7 of the Bankruptcy Code against

Engler, PCO, and PCOM (Debtors).  (Id., ¶ 20.)  On April 29, 2008, the Bankruptcy Court entered Orders of Relief against Debtors. (Id., ¶ 21.)   On April 30, 2008, the Bankruptcy Trustee was appointed for the Debtors' bankruptcy estates.  (Id., ¶ 22.)   In June 2008 and April 2010, the Bankruptcy Court substantively consolidated the assets and liabilities of the Debtors' bankruptcy estates.  (Id., ¶ 23.)  The Trustee asserts that he has exclusive standing to bring certain of the claims asserted on behalf of the Debtors' creditor body.  (Id., ¶ 24.)

**E.   The Complaint and Amended Complaint**

The putative class action Complaint was filed on December 15, 2011, by plaintiffs Franz Lesti (Lesti), Petra Richter (Richter), and Robert E. Tardif, Jr. as Chapter 7 Bankruptcy Trustee (Trustee) against Wells Fargo.  (Doc. #1.)   In response to a motion to dismiss filed by Wells Fargo (Doc. #17), plaintiffs filed an amended complaint.

The Amended Complaint (Doc. #24) was filed on March 30, 2012, and added six plaintiffs and SunTrust as a defendant, and federal jurisdiction is premised upon diversity of citizenship.  All eight individual plaintiffs are alleged to be aliens, that is, residents and citizens of Germany.  (Doc. #24, ¶¶ 9-14.)  The Trustee is alleged to be a citizen of Florida.  (Id., ¶ 15.)[2]  SunTrust is

_____

[2]This may not be accurate.  "[T]he citizenship for diversity purposes of bankruptcy trustees has always been the subject of a (continued...)

alleged to be a citizen of Georgia, (id., ¶ 16), and Wells Fargo is alleged to be a citizen of Delaware and California, (id., ¶ 17).[3]

The Amended Complaint sets forth companion counts against SunTrust and Wells Fargo for the following causes of action: Aiding and Abetting Conversion (Counts I and VI), Aiding and Abetting Fraud (Counts II and VII), Aiding and Abetting Breach of Fiduciary Duties (Counts III and VIII), Unjust Enrichment (Counts IV and IX), and Negligence and Wire Transfer Liability (Counts V and X). (Doc. #24.) Various counts are brought by the "SunTrust Plaintiffs," the "Wells Fargo Plaintiffs," and the Bankruptcy Trustee. The Amended Complaint asserts that all claims accrued on April 29, 2008, when the Bankruptcy Court entered Orders of Relief against Debtors in the pending bankruptcy case. (Id., ¶ 8.)

## III.

Defendants assert that all of the counts are time-barred under the applicable statute of limitations. Alternatively, defendants assert that all claims are insufficiently pled. Plaintiffs take a contrary view.

---

[2](...continued)
special rule: '[I]t is the citizenship of the bankrupt rather than the citizenship of the trustee in bankruptcy that is determinative for diversity jurisdiction.' 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3606." Carlton v. Baww, Inc., 751 F.2d 781, 786-87 (5th Cir. 1985).

[3]Even if the Trustee has the citizenship of the debtors (i.e., is deemed an alien), federal jurisdiction is not affected. Minimal diversity is required under 28 U.S.C. § 1332(d)(2), and the Amended Complaint still alleges complete diversity.

**A.    Statute of Limitations**

When federal jurisdiction is founded upon diversity of citizenship, the law of the forum state will provide the appropriate statute of limitations.  Raie v. Cheminova, Inc., 336 F.3d 1278, 1280 (11th Cir. 2003).  The parties agree that all of plaintiffs claims are governed by a four-year statute of limitations under Florida law.  (Doc. #35, p. 4; Doc. #43, p. 4; Doc. #47, p. 3.)  Florida law will determine when the applicable statute of limitations begins to run, but federal law will provide the legal standard to determine if defendants are entitled to dismissal.  Bernard Schoninger Shipping Ctrs., Ltd. v. J.P.S. Elastomerics, Corp., 102 F.3d 1173, 1177 (11th Cir. 1997).

Under Florida law, the statute of limitations begins to run when the cause of action accrues.  Hearndon v. Graham, 767 So. 2d 1179, 1185 (Fla. 2000).  Generally, a cause of action accrues, and the statute of limitations therefore begins to run, on the date the last element constituting the cause of action occurs.  Hearndon, 767 So. 2d at 1184-85 (citing Fla. Stat. § 95.031).  An exception is made for claims of fraud (and other causes of action not relevant to this case), for which the accrual is delayed until the plaintiff either knows or should know that the last element of the cause of action occurred.  Davis v. Monahan, 832 So. 2d 708, 709-10 (Fla. 2002)(citing Fla. Stat. § 95.031).

SunTrust argues that the face of the Amended Complaint establishes that the causes of action accrued on July 30, 2007, the date it closed the SunTrust Accounts, and the statute of limitations therefore ran on July 30, 2011, eight months prior to the March 30, 2012 filing of the Amended Complaint which first named SunTrust as a defendant. (Doc. #35, pp. 4, 5.)  Wells Fargo argues that based upon the face of the Amended Complaint the statute of limitations ran as to it on December 10, 2011, five days prior to the filing of the original Complaint (Doc. #1) on December 15, 2011.   (Doc. #43, pp. 4, 5.)  The Court applies the statute of limitations to each count individually.

### (1)  Counts I and VI:  Aiding And Abetting Conversion

Count I of the Amended Complaint alleges that SunTrust aided and abetted Engler and PCO in their unlawful conversion of funds provided by innocent investors.  This aiding and abetting consisted of SunTrust continuing to process numerous receipts and disbursements of funds in the form of international wire transfers to and from the SunTrust Accounts, causing losses exceeding $35 million. (Doc. #24, ¶ 71.)  It is alleged that SunTrust gained actual knowledge of Engler's fraudulent use of the SunTrust Accounts no later than May 2007, that on June 28, 2007, SunTrust sent a letter to PCO stating that the accounts "should be closed voluntarily by July 30, 2007, or would be closed involuntarily by

such date," (id., ¶¶ 44, 70), and that Engler then took the rest of the money out of the SunTrust Accounts, (id., ¶ 4).

Count VI of the Amended Complaint alleges that Wells Fargo aided and abetted Fuchs, Engler and PCOM in their unlawful conversion of funds provided by innocent investors. This aiding and abetting consisted of Wells Fargo continuing to process numerous receipts and disbursements of funds in the form of international wire transfers to and from the Wells Fargo Accounts, causing losses exceeding $35 million. (Id., ¶ 102.) It is alleged that Wells Fargo had actual knowledge of the fraudulent use of the Wells Fargo Accounts no later than June 8, 2007. (Id., ¶¶ 44, 101.)

The elements necessary to sustain the aiding and abetting claim are: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." Lawrence v. Bank of Am., N.A., 455 F. App'x 904, 906 (11th Cir. 2012)(citations omitted). The "underlying violation" in these counts is conversion. "It is well settled that a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." Mayo v. Allen, 973 So. 2d 1257, 1258-59 (Fla. 1st DCA 2008).

Plaintiffs assert that SunTrust's statute of limitations argument must be rejected because the face of the Amended Complaint does not explicitly establish when the cause of action in Count I accrued, and therefore it cannot be determined when the statute of limitations ran.  The Court disagrees.  The factual allegations in Count I allege that SunTrust informed its account holders in writing that the SunTrust Accounts would be closed involuntarily on July 30, 2007, if they were not closed voluntarily by that date. Count I then alleges that the funds in the SunTrust Accounts were depleted by Engler.  None of the remaining allegations in the Amended Complaint suggest any conduct involving the SunTrust Accounts which occurred after July 30, 2007, or suggest that the accounts remained opened.  This is in contrast with the allegations concerning the Wells Fargo Accounts after their closing letter. The Court finds that it is apparent from the face of the Amended Complaint that the SunTrust Accounts were closed on July 30, 2007, that the substantial assistance alleged in Count I only involved use of those SunTrust Accounts, and that the last act of SunTrust which could possibly have constituted the aiding and abetting alleged in Count I occurred on July 30, 2007.  Accordingly, the face of the Amended Complaint establishes that the aiding and abetting conversion claim against SunTrust accrued on July 30, 2007.  The four year statute of limitations expired on July 30, 2011.  The Amended Complaint was not filed until March 30, 2012,

-15-

and therefore Count I is time barred.   The SunTrust motion to dismiss will be granted on that basis.

The factual allegations in Count VI as to Wells Fargo are similar yet significantly different.  On July 10, 2007, Wells Fargo sent a letter to PCOM stating that the accounts "should be closed voluntarily by August 21, 2007, or would be closed involuntarily by such date."  (Doc. #24, ¶ 49.)   Unlike SunTrust's situation, the Amended Complaint further alleges that: (1) the Wells Fargo Accounts remained open until in or about January 2008, (id., ¶ 50); after the letter was sent to PCOM, Fuchs repeatedly requested that Wells Fargo close the accounts, (id., ¶ 53); and (3) in an e-mail dated December 10, 2007, a Wells Fargo representative stated that the account was still open and showed a balance of "-8k," (id., ¶ 55).  While Count VI does not expressly allege any wire transfers after December 15, 2011, the allegations cannot support a statute of limitations defense on a motion to dismiss without viewing the allegations and their reasonable inferences in favor of defendant, which is not permitted when resolving a motion to dismiss.  Because it is not apparent on the face of the Amended Complaint that Count VI is barred by the application of the statute of limitations, Wells Fargo's motion to dismiss as to Count VI is denied.

### (2)  Counts II and VII:  Aiding And Abetting Fraud

Count II of the Amended Complaint alleges that the same conduct by SunTrust aided and abetted Engler in the fraud he

perpetrated to obtain funds provided by innocent investors pursuant to his Ponzi scheme.  Similarly, Count VII of the Amended Complaint alleges that the same conduct by Wells Fargo aided and abetted Engler in the fraud he perpetrated to obtain funds provided by innocent investors pursuant to his Ponzi scheme.

The elements of an aiding and abetting claim are as set forth above. Lawrence, 455 F. App'x at 906.  "An aggrieved party proves common law fraud by establishing that: (1) the opposing party made a misrepresentation of a material fact, (2) the opposing party knew or should have known the falsity of the statement, (3) the opposing party intended to induce the aggrieved party to rely on the false statement and act on it, and (4) the aggrieved party relied on that statement to his or her detriment." Jackson v. Shakespeare Found., Inc., No. SC11-1196, --- So. 3d ---, 2013 WL 362786, at *6 n. 2 (Fla. Jan. 31, 2013)(citing Butler v. Yusem, 44 So.3d 102, 105 (Fla. 2010)).  The Florida delayed discovery doctrine applies to a fraud claim, and therefore the statute of limitations does not run until the plaintiff either knows or should know that the last element of the cause of action occurred. Davis, 832 So. 2d at 709-10 (citing Fla. Stat. § 95.031).

Under the facts alleged in the Amended Complaint, plaintiffs were put on notice of the Ponzi scheme on November 22, 2006, when the AMFA issued a public warning about Engler and his business practices. La Grasta, 358 F.3d at 845-46.  As discussed above, the

last element of SunTrust's aiding and abetting was on or about July 30, 2007, and therefore the delayed discovery doctrine does not impact the accrual of the statute of limitations. The statute of limitations has run as to SunTrust, and SunTrust's motion to dismiss will be granted as to Count II on that basis.

As to Wells Fargo, while plaintiffs were on notice from November 22, 2006, as discussed above the timing of the last element of Wells Fargo's aiding and abetting cannot be definitively determined from the Amended Complaint. Therefore, Wells Fargo's motion to dismiss Count VII is denied.

### (3) Counts III and VIII: Aiding and Abetting Breach of Fiduciary Duties

Count III of the Amended Complaint alleges that Engler owed fiduciary duties to the innocent investors, that he breached these fiduciary duties by engaging in the Ponzi scheme, and that SunTrust aided and abetted Engler in the breach of the fiduciary duties he owed to his investors by processing the international wire transfers. (Doc. #24, ¶¶ 79-85.) Count VIII of the Amended Complaint alleges that Fuchs owed fiduciary duties to the innocent investors, that she breached these fiduciary duties by permitting Engler to engage in the Ponzi scheme with the Wells Fargo Accounts, and that Wells Fargo aided and abetted Fuchs in the breach of the fiduciary duties she owed to the investors by processing the international wire transfers. (Id., ¶¶ 110-116.)

The elements of an aiding and abetting claim are as set forth above.  Lawrence, 455 F. App'x at 906.  "The elements of a cause of action for breach of fiduciary duty are (1) the existence of a duty, (2) breach of that duty, and (3) damages flowing from the breach."  Miller v. Miller, 89 So. 3d 962 (Fla. 5th DCA 2012)(quoting Crusselle v. Mong, 59 So. 3d 1178, 1181 (Fla. 5th DCA 2011)).

For the same reasons as discussed in Counts I and II, Count III against SunTrust accrued on July 30, 2007, and the statute of limitations ran prior to the filing of the Amended Complaint against SunTrust.  The SunTrust motion to dismiss Count III is granted.  For the same reasons as discussed above, Count VIII against Wells Fargo cannot be said at this stage of the proceedings to be barred by the statute of limitations.  The Wells Fargo motion to dismiss Count VIII is denied.

### (4)  Counts IV and IX:  Unjust Enrichment

Count IV of the Amended Complaint alleges that PCO conferred a benefit upon SunTrust by making wire transfers into and out of PCO's SunTrust accounts, thereby accruing significant fees, which were paid to SunTrust with misappropriated investor funds.  (Doc. #24, ¶ 87.)  It further alleges that SunTrust knowingly and voluntarily accepted and retained these benefits with respect to transaction/service fees, and has thus been unjustly enriched at the expense of the innocent investors.  (Id., ¶¶ 88, 89.)  Because

-19-

it would be inequitable and unjust for SunTrust to retain these benefits, Count IV alleges the innocent investors are entitled to the return of these amounts.  (Id., ¶¶ 90, 91.)

Count IX of the Amended Complaint alleges that PCOM conferred a benefit upon Wells Fargo by making wire transfers into and out of PCOM's Wells Fargo Accounts, thereby accruing significant fees, which were paid with misappropriated investor funds.  (Id., ¶ 118.) It further alleges that Wells Fargo knowingly and voluntarily accepted and retained these benefits with respect to transaction/service fees, and has thus been unjustly enriched at the expense of the innocent investors.  (Id., ¶¶ 119, 120.) Because it would be inequitable and unjust for Wells Fargo to retain these benefits, Count IX alleges the innocent investors are entitled to the return of these amounts.  (Id., ¶¶ 121, 122.)

"A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendant[ ] to retain it without paying the value thereof." Virgilio v. Ryland Grp., Inc., 680 F.3d 1329, 1337 (11th Cir. 2012)(citations omitted).  The benefits alleged to have been conferred were the fees earned by SunTrust and Wells Fargo for the international wire transfers through their respective accounts. The SunTrust Accounts were closed on July 30, 2007, and no wire

transfers are alleged to have been made through the accounts thereafter.  The statute of limitations therefore expired prior to the filing of the March 30, 2012 Amended Complaint.  The same cannot be determined as to the Wells Fargo Accounts, as discussed above.  SunTrust's motion to dismiss is granted as to Count IV and Wells Fargo's motion to dismiss Count IX is denied.

### (5)  Counts V and X:  Bankruptcy Trustee's Claims for Negligence and Wire Transfer Liability

In Count V, the Bankruptcy Trustee for the Debtors Engler, PCO, and PCOM (the alleged Ponzi scheme wrongdoers) seeks damages from SunTrust based upon negligence and wrongful and improper transfer of funds by the wire transfers.  Count V alleges that Engler authorized and directed wire transfers from funds in the SunTrust Accounts, and that SunTrust had a duty of care to PCO to "correctly, cautiously, and prudently" process the wire transfers pursuant to commercially reasonable security procedures.  (Doc. #24, ¶¶ 94, 95.)  The Trustee alleges that SunTrust breached its duty of care by violating prudent and sound banking practices and procedures, or by the lack of good faith in processing, or by effectuating wire transfers based on an actual knowledge of Engler's fraudulent use of the SunTrust Accounts.  (Id., ¶ 96.) The Trustee argues that by keeping the SunTrust Accounts open, and processing wire transfers after obtaining knowledge of Engler's fraudulent use of its accounts, SunTrust allowed innocent investors

to make deposits into the accounts, and enabled Engler to convert the funds, resulting in damages to PCO.  (Id., ¶¶ 97, 98.)

In Count X, the Bankruptcy Trustee seeks damages from Wells Fargo based upon negligence and wrongful and improper transfer of funds by the wire transfers.  Count X alleges that Fuchs authorized and directed wire transfers from funds in the Wells Fargo Accounts, and that Wells Fargo had a duty of care to PCOM to "correctly, cautiously, and prudently" process the wire transfers pursuant to commercially reasonable security procedures.  (Id., ¶¶ 125, 126.) The Trustee alleges that Wells Fargo breached its duty of care by violating prudent and sound banking practices and procedures, or by the lack of good faith in processing, or by effectuating wire transfers based on an actual knowledge that Fuchs was utilizing the Wells Fargo Accounts so that Engler could continue his fraudulent scheme.  (Id., ¶ 127.)  The Trustee argues that by keeping the Wells Fargo Accounts open, and processing wire transfers after obtaining knowledge of the fraudulent use of the accounts, Wells Fargo allowed innocent investors to make deposits into the accounts, and enabled Fuchs, PCOM, and/or Engler to convert the funds, resulting in damages to PCOM.  (Id., ¶¶ 128, 129.)

The elements necessary to sustain a negligence claim are:

> 1. A duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks.
>
> 2. A failure on the [defendant's] part to

> conform to the standard required: a breach of
> the duty....
>
> 3. A reasonably close causal connection
> between the conduct and the resulting injury.
> This is what is commonly known as "legal
> cause," or "proximate cause," and which
> includes the notion of cause in fact.
>
> 4. Actual loss or damage....

Curd v. Mosaic Fertilizer, LLC, 39 So. 3d 1216, 1227 (Fla. 2010)(quoting Clay Elec. Coop., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003)).

If the Court gets past the fact that the Trustee stands in the shoes of the Debtors, not the victims, and therefore lacks standing to assert any claims on behalf of the investors, the Trustee is suing SunTrust and Wells Fargo for doing what the Debtors instructed. The only breach of the alleged duty relates to the wire transfers from the SunTrust Accounts, which could not occur after July 30, 2007, when the accounts were closed. Again, the same cannot be determined as to the Wells Fargo Accounts, as discussed above. Additionally, the Court does not find that the Trustee's appointment on April 30, 2008 "in some extraordinary way" prevented the Debtors, or then the Trustee, from asserting the Debtors' rights prior to July 30, 2011. Thus, the Court will not apply the doctrine of equitable tolling. The SunTrust motion to dismiss is granted as to Count V, and the Wells Fargo motion to dismiss is denied as to Count X.

**B.   Pleading Sufficiency**

**(1)   Count VI:  Aiding And Abetting Conversion**

Wells Fargo first argues that Count VI must be dismissed because the allegations: (1) fail to establish that Wells Fargo had actual knowledge of the conversion; and (2) fail to demonstrate that Wells Fargo provided substantial assistance in committing the wrongdoing.   In support, Wells Fargo relies on the Eleventh Circuit's recent unpublished opinion in <u>Lawrence v. Bank of Am., N.A.</u>, 455 F. App'x 904.   Plaintiffs respond that <u>Lawrence</u> is distinguishable.

The Court agrees with plaintiffs.   The Amended Complaint, in addition to alleging that the transactions were atypical, alleges that Wells Fargo: (1) knew about the relationship between Fuchs and Engler and between PCOM and PCO on May 29, 2007; (2) received SunTrust's 314(b) request and the AMFA Warning Notification Letter on June 8, 2007; (3) conducted its own investigation into the accounts; (4) sent a letter to PCOM on July 10, 2007, requesting that the accounts be closed by August 21, 2007 or would be closed involuntarily by that date; and (5) despite the letter, continued to process thousands of monthly receipts and disbursements of investor funds totaling tens of millions of dollars per month to and from Fuchs/PCOM until in or about January 2008.   (Doc. #24, ¶¶ 6, 46, 47, 48, 49, 50, 54.)   These allegations are sufficient to plausibly state that Wells Fargo had actual knowledge of the

wrongdoing, Fed. R. Civ. P. 9(b)("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."), and sufficiently demonstrate that Wells Fargo provided substantial assistance in committing the wrongdoing, <u>Groom v. Bank of Am.</u>, No. 8:08-cv-2567-JDW-EAJ, 2012 WL 50250, at *4 (M.D. Fla. Jan. 9, 2012)("Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.")(citation omitted).

Wells Fargo also argues that Count VI must be dismissed because "[t]he failure to repay a loan, even when the borrower had no intention of repaying the loan at the time of the promise, does not give rise to the underlying tort of conversion." (Doc. #43, p. 15). Plaintiffs, in their response to a similar argument made by SunTrust, respond that an exception applies because the claim goes well beyond the terms of the investment agreement. (Doc. #47, p. 30.)

"The law in Florida is clear—a simple monetary debt generally cannot form the basis of a claim for conversion or civil theft." <u>Walker v. Figarola</u>, 59 So. 3d 188, 190 (Fla. 3d DCA 2011)). <u>See also</u> <u>Rosen v. Marlin</u>, 486 So. 2d 623, 625-26 (Fla. 3rd DCA 1986). To establish conversion when there is a contractual relationship, the conversion "must go beyond, and be independent from, a failure to comply with the terms of a contract." <u>Gasparini v. Pordomingo</u>, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). Where money is involved,

"there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified." Walker, 59 So. 3d at 190 (quoting Gasparini, 972 So. 2d at 1056)(internal quotation marks omitted).  On the other hand, Florida case law has also upheld a verdict of conversion where there was a contractual relationship and evidence of "a classic embezzlement." Masvidal v. Ochoa, 505 So. 2d 555, 556 (Fla. 3d DCA 1987).

The Amended Complaint alleges that the investments were documented by Promissory Notes and Loan Agreements between Engler and PCO, as Borrowers, and the investors, as Lenders.  (Doc. #24, ¶ 28.)  Plaintiffs also allege that Engler solicited investments for his day trading and investment business and "guaranteed annualized returns of 48% to 72%," and engaged in a classic Ponzi scheme.  While there is no allegation that plaintiffs, in their Promissory Notes and Loan Agreements, directed how the money was to be used, the pleading is sufficient to state a plausible claim under Masvidal.  Therefore, the motion to dismiss will be denied as to Count VI.

### (2)  Count VII:  Aiding And Abetting Fraud

Wells Fargo does not assert any additional arguments beyond those made as to the actual knowledge and substantial assistance elements of aiding and abetting.  For the reasons stated previously as to Count VI, Wells Fargo's arguments as to Count VII fail, and the motion to dismiss is denied as to Count VII.

**(3)  Count VIII: Aiding and Abetting Breach of Fiduciary Duties**

Wells Fargo's actual knowledge and substantial assistance arguments similarly fail as to Count VIII as they did for Counts VI and VII.  However, Wells Fargo also argues that Count VIII must be dismissed because there are no allegations supporting a fiduciary relationship between Fuchs and the Wells Fargo plaintiffs.

A Florida court has summarized the contours of a fiduciary relationship as follows:

> If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief. Fiduciary relationships may be implied in law and such relationships are premised upon the specific factual situation surrounding the transaction and the relationship of the parties.  Courts have found a fiduciary relation implied in law when confidence is reposed by one party and a trust accepted by the other. To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel and protect the weaker party.

Bingham v. Bingham, 11 So. 3d 374, 387 (Fla. 3d DCA 2009)(internal citations and quotations omitted).  Fiduciary relationships are either expressly or impliedly created.  Capital Bank v. MVB, Inc., 644 So. 2d 515, 518-19 (Fla. 3d DCA 1994).  When a fiduciary relationship has not been created by an express agreement, the question of whether the relationship exists generally depends "upon the specific facts and circumstances surrounding the relationship

-27-

of the parties in a transaction in which they are involved." Collins v. Countrywide Home Loans, 680 F. Supp. 2d 1287, 1297 (M.D. Fla. 2010)(quoting Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp., 850 So. 2d 536, 540 (Fla. 5th DCA 2003)).

Here, plaintiffs simply allege that "Fuchs owed a fiduciary duty to [PCOM's] creditors/innocent investors because it continually operated in the zone of insolvency since in or about January 2005." (Doc. #24, ¶ 110.) Plaintiffs do not, however, allege sufficient facts to support this conclusory allegation. The Court finds that the allegations, standing alone, are insufficient to plausibly suggest that Fuchs was acting as a fiduciary to PCOM's creditors/innocent investors. Therefore, the motion to dismiss will be granted as to Count VIII, and Count VIII will be dismissed without prejudice.

### (4) Count IX: Unjust Enrichment

Wells Fargo asserts that Count IX should be dismissed because there is no allegation that plaintiffs have directly conferred a benefit on defendant. Plaintiffs respond, citing Williams v. Wells Fargo Bank N.A., No. 11-21233-CIV, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011), that the lack of direct contact does not preclude an unjust enrichment claim. Here, plaintiffs allege: (1) PCOM conferred a benefit upon Wells Fargo by making wire transfers into and out of the Wells Fargo Accounts, thereby accruing significant transaction/service fees; (2) PCOM paid the fees with investor

funds; (3) Wells Fargo knowingly accepted and retained the benefits; and (4) the circumstances are such that it would be inequitable for Wells Fargo to retain the benefits. (Doc. #24, ¶¶ 118-121.) At this stage in the litigation, the Court finds that plaintiffs have adequately pled a plausible cause of action for unjust enrichment.

### (5) Count X: Bankruptcy Trustee's Claims for Negligence and Wire Transfer Liability

As alluded to above, the Trustee lacks standing to assert any claims of the investors, Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416 (1972), and cannot set forth a plausible negligence claim or wire liability claim on behalf of the Debtors for doing what the Debtors instructed, see, e.g., O'Halloran v. First Union Nat'l Bank of Fla., 350 F.3d 1197 (11th Cir. 2003). Accordingly, the motion to dismiss will be granted as to Count X.

Accordingly, it is now

**ORDERED:**

1. SunTrust Bank's Motion to Dismiss Plaintiffs' Amended Class Action Complaint (Doc. #35) is **GRANTED**, and Counts I, II, III, IV, and V of the Amended Complaint (Doc. #24) are dismissed with prejudice.

2. Wells Fargo Bank, N.A.'s Motion to Dismiss Amended Class Action Complaint (Doc. #43) is **GRANTED in part and DENIED in part**, and Counts VIII and X of the Amended Complaint are dismissed without prejudice.

3.   SunTrust's Motion to Strike Paragraphs 42, 43, 70(v), 75(v), 83(v), and Exhibit 4 of Plaintiffs' Amended Class Action Complaint (Doc. #36) is **DENIED as moot.**

4.   Plaintiffs' Motion and Incorporated Memorandum of Law in Support of Class Certification (Doc. #54) is **DENIED** without prejudice for plaintiffs to file an amended motion in light of this Opinion and Order.

5.   Plaintiffs shall comply with the Order (Doc. #65) dated August 2, 2012.

**DONE AND ORDERED** at Fort Myers, Florida, this <u>19th</u> day of March, 2013.

JOHN E. STEELE
United States District Judge

Copies: Counsel of record