UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION

FRANZ LESTI and PETRA RICHTER,    Case No. 2:11-cv-695-FtM-29DNF
Individually and on Behalf of All Others
Similarly Situated, and ROBERT E.
TARDIF, JR., in his capacity as the
Chapter 7 Trustee of the substantively
consolidated bankruptcy estates of Debtors,
Ulrich Felix Anton Engler, Private
Commercial Office, Inc., and PCO Client
Management, Inc.,

           Plaintiffs,

   vs.

WELLS FARGO BANK, N.A., formerly
known as Wachovia Bank, N.A., and
SUNTRUST BANK,

          Defendants.

_____ /


**PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION
AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF FACTS ...................................................................................2

     A.     Engler's Ponzi Scheme ...........................................................................2

     B.     Wells Fargo Had Actual Knowledge that PCOM's Wells Fargo
               Accounts Were Being Used for Fraudulent Activity ...............................3

III.    ARGUMENT .......................................................................................................6

     A.     Standards for Class Certification ...........................................................6

     B.     Plaintiffs Satisfy the Requirements of Rule 23(a) .................................9

              1.     The Class Is so Numerous that Joinder of All Members Is
                      Impracticable.............................................................................9

              2.     There Are Questions of Law and Fact Common to Each Member
                      of the Class...............................................................................11

              3.     Plaintiffs' Claims Are Typical of Those of the Class ...............14

              4.     Plaintiffs Will Fairly and Adequately Represent the Class and
                      Plaintiffs' Counsel Should Be Appointed Class Counsel .........17

     C.     Plaintiffs Satisfy the Requirement of Rule 23(b)(3) .............................20

              1.     Common Questions of Law or Fact Predominate.....................21

               2.     A Class Action Is Superior to Other Available Methods for the
                      Fair and Efficient Adjudication of This Action .......................24

     D.     Alternatively, Issue Certification Under Rule 23(c)(4) May be
               Appropriate ...........................................................................................27

IV.    CONCLUSION..................................................................................................29

899103_1

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Appleyard v. Wallace*,
   754 F.2d 955 (11th Cir. 1985) .................................................................................14

*Bruhl v. Price WaterhouseCoopers Int'l*,
   257 F.R.D. 684 (S.D. Fla. 2008)....................................................................10, 15

*Busby v. JRHBW Realty, Inc.*,
   513 F.3d 1314 (11th Cir. 2008) ..........................................................................8, 14

*Bush v. Calloway Consol. Grp. River City, Inc.*,
   No. 3:10-cv-841-J-37MCR, 2012 U.S. Dist. LEXIS 40450
   (M.D. Fla. Mar. 26, 2012) ................................................................ *passim*

*Carroll v. Stettler*,
   No. CIV.A. 10-2262, 2011 U.S. Dist. LEXIS 121171 (E.D. Pa. Oct. 19, 2011)...............15, 28

*Castillo v. N&R Servs. of Cent. Fla., Inc.*,
   No. 8:07-cv-1804-T-26EAJ, 2008 U.S. Dist. LEXIS 36882 (M.D. Fla. May 1, 2008) ......7, 14

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
   6 F.3d 177 (4th Cir. 1993) ....................................................................................27

*Collins v. Olin Corp.*,
   248 F.R.D. 95 (D. Conn. 2008)............................................................................24

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)........................................................................................23

*Cooper v. S. Co.*,
   390 F.3d 695 (11th Cir. 2004) ...............................................................................7

*Coquina Investments v. TD Bank, N.A.*,
   No. 10-60786-CIV-COOKE (S.D. Fla.) ..............................................................20

*CV Reit, Inc. v. Levy*,
   144 F.R.D. 690 (S.D. Fla. 1992).........................................................................11

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)...............................................................................................7

*Facciola v. Greenberg Traurig, LLP*,
281 F.R.D. 363 (D. Ariz. 2012) ........................................................................15

*Franze v. Equitable Assurance*,
296 F.3d 1250 (11th Cir. 2002) ..........................................................................8

*Fuller v. Becker & Poliakoff, P.A.*,
197 F.R.D. 697 (M.D. Fla. 2000)........................................................................9

*Gaalswyk-Knetzke v. The Receivable Mgmt. Servs. Corp.*,
No. 8:08-cv-493-T-26TGW, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008)................. *passim*

*Gutierrez v. Wells Fargo Bank, N.A.*,
730 F. Supp. 2d 1080 (N.D. Cal. 2010),
*aff'd and rev'd in non-relevant part*, 704 F.3d 712 (9th Cir. 2012) ......................................10

*Heffner v. Blue Cross & Blue Shield of Ala., Inc.*,
443 F.3d 1330 (11th Cir. 2006) ..........................................................................7

*Holman v. Student Loan Xpress, Inc.*,
No. 8:08-cv-305-T-23MAP, 2009 U.S. Dist. LEXIS 113491
(M.D. Fla. Nov. 19, 2009) ...............................................................................15

*Holmes v. Cont'l Can Co.*,
706 F.2d 1144 (11th Cir. 1983) ........................................................................28

*In re Beacon Assocs. Litig.*,
No. 09 Civ. 777 (cm), 2013 U.S. Dist. LEXIS 82192 (S.D.N.Y. May 9, 2013) ...................15

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 666 (S.D. Fla. 2011)........................................................................10

*In re Checking Account Overdraft Litig.*,
281 F.R.D. 667 (S.D. Fla. 2012)................................................................ *passim*

*In re Checking Account Overdraft Litig.*,
No. 1:09-MD-02036-JLK, slip op. (S.D. Fla. May 16, 2012) ................................10

*In re Diet Drugs Prods. Liab. Litig.*,
No. CIV. A. 98-20626, 1999 U.S. Dist. LEXIS 13228 (E.D. Pa. Aug. 26, 1999)................10

*In re Disposable Contact Lens Antitrust Litig.*,
170 F.R.D. 524 (M.D. Fla. 1996)........................................................................14

*In re LandAmerica §1031 Exch. Servs. Inc., IRS §1031 Tax Deferred Exch. Litig.*,
No. 8:09-cv-00415, 2012 U.S. Dist. LEXIS 97933 (D.S.C. July 12, 2012)..........................16

899103_1

*In re Med. Capital Sec. Litig.*,
 No. SAML 10-2145 DOC (RNBx), 2011 U.S. Dist. LEXIS 126659
 (C.D. Cal. July 26, 2011) ......................................................................................................15

*In re Miva, Inc. Sec. Litig.*,
 No. 2:05-cv-201-FtM-29DNF, 2008 U.S. Dist. LEXIS 21108
 (M.D. Fla. Mar. 12, 2008).............................................................................................15, 24

*In re Nassau Cnty. Strip Search Cases*,
 461 F.3d 219 (2d Cir. 2006)...................................................................................................28

*In re Recoton Corp. Sec. Litig.*,
 248 F.R.D. 606 (M.D. Fla. 2006).............................................................................................11

*In re Terazosin Hydrochloride Antitrust Litig.*,
 220 F.R.D. 672 (S.D. Fla. 2004).......................................................................................24, 27

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
 236 F.R.D. 62 (D.N.H. 2006) ................................................................................................13

*In re Ulrich Felix Anton Engler, Private Commercial Office, Inc.
 and PCO Client Mgmt. Inc.*,
 No. 9:08-bk-04360-MGW (Bankr. M.D. Fla.) ........................................................................9

*Ingram v. Coca-Cola Co.*,
 200 F.R.D. 685 (N.D. Ga. 2001)............................................................................................21

*Jackson v. Motel 6 Multipurpose, Inc.*,
 130 F.3d 999 (11th Cir. 1997) ...............................................................................................21

*Jenkins v. Raymark Indus.*, Inc.,
 782 F.2d 468 (5th Cir. 1986) .................................................................................................27

*Katz v. MRT Holdings, LLC*,
 No. 07-61438-CIV-COHN/SELTZER, 2008 U.S. Dist. LEXIS 114421
 (S.D. Fla. Oct. 24, 2008)........................................................................................................15

*Kennedy v. Tallant*,
 710 F.2d 711 (11th Cir. 1983) ...............................................................................................17

*Kerr v. West Palm Beach*,
 875 F.2d 1546 (11th Cir. 1989) .............................................................................................21

iv

*Kirkpatrick v. J.C. Bradford & Co.*,
  827 F.2d 718 (11th Cir. 1987) .......................................................................17, 19

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ..................................................... *passim*

*Kornberg v. Carnival Cruise Lines, Inc.*,
  741 F.2d 1332 (11th Cir. 1984) ...................................................................14

*Lipton v. Documation, Inc.*,
  734 F.2d 740 (11th Cir. 1984) .....................................................................22

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  672 F.3d 482 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 338 (2012)...........................28

*Mesa v. Ag-Mart Produce, Inc.*,
  No. 2:07-cv-47-FtM-34DNF, 2008 U.S. Dist. LEXIS 114037
  (M.D. Fla. July 18, 2008).......................................................... *passim*

*Mills v. Foremost Ins. Co.*,
  511 F.3d 1300 (11th Cir. 2008) ..............................................................8, 10

*Murray v. Auslander*,
  244 F.3d 807 (11th Cir. 2001) .....................................................................12

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985).....................................................................................25

*Piazza v. Ebsco Indus.*,
  273 F.3d 1341 (11th Cir. 2001) .....................................................................8

*Powers v. Stuart-James Co.*,
  707 F. Supp. 499 (M.D. Fla. 1989).............................................................25

*Prado-Steiman v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ...................................................................11

*Reese v. Miami-Dade Cty.*,
  209 F.R.D. 231 (S.D. Fla. 2002)....................................................................7

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
  211 F.3d 1228 (11th Cir. 2000) .....................................................................6

*Santiago v. Wm. G. Roe & Sons, Inc.*,
  No. 8:07-CV-1786-T-27MAP, 2008 U.S. Dist. LEXIS 60761
  (M.D. Fla. May 15, 2008)..........................................................13, 15, 26

v

*Schatzman v. Talley*,
91 F.R.D. 270 (N.D. Ga. 1981)...........................................................................17

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
552 U.S. 148 (2008).............................................................................................22

*Upshaw v. Ga. Catalog Sales, Inc.*,
206 F.R.D. 694 (M.D. Ga. 2002) .......................................................................26

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ..............................................................................28

*Veal v. Crown Auto Dealerships, Inc.*,
236 F.R.D. 572 (M.D. Fla. 2006)........................................................................17

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009) ............................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
__ U.S. __, 131 S. Ct. 2541 (2011)..................................................................7, 12

*Walco Inv., Inc. v. Thenen*,
168 F.R.D. 315 (S.D. Fla. 1996) .........................................................................15

*Williams v. Mohawk Indus., Inc.*,
568 F.3d 1350 (11th Cir. 2009) ........................................................11, 12, 14, 28

*Williams v. Wells Fargo Bank, N.A.*,
280 F.R.D. 665 (S.D. Fla. 2012).........................................................................23

## STATUTES, RULES AND REGULATIONS

USA PATRIOT Act
§ 314(b)................................................................................................................4

Fed. R. Civ. P. 23 ...................................................................................... *passim*
Rule 23(a)...........................................................................8, 9, 14, 17, 20
Rule 23(a)(1).......................................................................................9
Rule 23(a)(2).................................................................................11, 12
Rule 23(a)(3).....................................................................................17

Rule 23(a)(4) ......................................................................................................17, 18, 19

Rule 23(b) ...........................................................................................................8, 20

Rule 23(b)(3) ......................................................................................8, 20, 21, 24, 28

Rule 23(b)(3)(A)-(D) ...................................................................................................24

Rule 23(c)(2) ...............................................................................................................20

Rule 23(c)(4) ..........................................................................................................27, 28

Rule 23(g) ...........................................................................................................18, 19

Rule 23(g)(1)(A) .........................................................................................................19

Rule 23(g)(4) ...............................................................................................................18

M.D. Fla. Local Rule 4.04 ............................................................................................1

Local Rule 4.04(b) ......................................................................................................20

## SECONDARY AUTHORITIES

7A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Fed. Practice & Procedure:
   Civil §1765 (1986) ................................................................................................17

Manual For Complex Litigation, Fourth §21.24 (Fed. Jud. Ctr. 2004) ...........................27, 28

899103_1

Pursuant to Rule 23 of the Federal Rules of Civil Procedure and Local Rule 4.04, Plaintiffs Franz Lesti and Petra Richter ("Plaintiffs"), respectfully move for certification of the Class, as defined herein, appointment as class representatives, and appointment of class counsel (the "Motion") and, in support thereof, state:

## I.       INTRODUCTION

Plaintiffs bring this class action against Wells Fargo Bank, N.A., as successor-in-interest to Wachovia Bank, N.A. ("Wells Fargo" or "Defendant").  Defendant's wrongful conduct was uniform to each Class member and straightforward.  Defendant knowingly rendered substantial assistance to Ponzi-schemer Ulrich Felix Anton Engler ("Engler") by continuing to process numerous receipts and disbursements of investor funds in the form of international wire transfers to and from Engler's Wells Fargo bank accounts, and thereby assisted Engler in stealing over $44 million from Plaintiffs and similarly situated investors.   By allowing PCO Client Management, Inc.'s ("PCOM") Wells Fargo bank account numbers 2000031965057 and 2000028877271 ("Wells Fargo Accounts") to remain open notwithstanding Defendant's obvious knowledge of Engler's illegal activity, Defendant was able to generate fees for itself.

Plaintiffs assert claims against Wells Fargo for aiding and abetting fraud, aiding and abetting conversion, and unjust enrichment.  Because Defendant's conduct towards Plaintiffs and the proposed Class was uniform and there are absolutely no individual issues with respect to any Class member, this case is ideal for class certification.  Accordingly, and as more fully stated herein, Plaintiffs move this Court to certify the following Class under Rule 23:

> All persons who lost any money that was either transferred into PCO Client Management, Inc.'s Wells Fargo Accounts from Private Commercial Office Inc.'s SunTrust Accounts or was deposited directly into PCO Client Management, Inc.'s Wells Fargo Accounts between January 1, 2005 and January 2, 2008.

1

## II.    STATEMENT OF FACTS

### A.    Engler's Ponzi Scheme

Plaintiffs invested with Engler, a German citizen who owned and purported to operate Private Commercial Office, Inc. ("PCO") as a highly profitable day trading and investment business based in the Middle District of Florida.  ¶25.[1]  Engler solicited investments from individuals and entities primarily located in Europe by means of newspaper advertisements, telephone solicitations, and through use of mails and wires. ¶26.

Engler falsely claimed that he was formerly employed by Chase Manhattan Bank for 21 years and that he held the position of Chief Trader for derivatives and bank guarantees for 10 years.  ¶27.  Using these and other misrepresentations, Engler purported to be a highly experienced investor who had a long history of generating significant investment returns through "conservative" day trading activities on the stock exchange.  *Id*.  Engler further represented that he possessed sophisticated software capable of analyzing approximately 35,000 shares of stock every five seconds, allowing him to capture significant investment returns before other day traders or investment bankers.  *Id*.  Engler guaranteed annualized returns of 48% to 72% in his solicitations.  *Id*.

Investments were documented by a promissory note and loan agreement between PCO and Engler, as Borrowers, and the investors, as Lenders, and provided that the "loan" should be made payable, prior to May 2007, to the Borrower's order at a designated account at SunTrust

---

[1] All citations to "¶__" refer to Plaintiffs' Amended Class Action Complaint and Demand for Jury Trial [Dkt. No. 24].

Bank ("SunTrust").  After May 2007, once SunTrust closed the PCO SunTrust accounts, the "loan" was made payable in a similar fashion to the designated Wells Fargo Accounts.  ¶28.

Unbeknownst to Plaintiffs and the Class, but known to Wells Fargo, Engler never engaged in day trading activities.  ¶29.  Instead, he used the funds paid by later investors to repay earlier investors (*i.e.*, a classic Ponzi scheme) and to pay for lavish personal expenses.  On December 4, 2007, the County Court of Mannheim, Germany issued an international warrant for Engler's arrest.  ¶30.  Then, on April 21, 2008, the Public Prosecutor's Office of Mannheim, Germany issued a request for Engler's arrest and extradition to the United States Government. ¶31.  Engler remained a fugitive from justice until July 2012, when he was arrested in Las Vegas, Nevada.  Engler was subsequently extradited to Germany, where he pled guilty and received a lengthy prison sentence.

### B.    Wells Fargo Had Actual Knowledge that PCOM's Wells Fargo Accounts Were Being Used for Fraudulent Activity

On or about ***May 29, 2007***, with Class member funds withdrawn from PCO's SunTrust accounts due to SunTrust's own concerns, Engler's co-conspirator Angelika Fuchs ("Fuchs") immediately opened PCOM's two accounts at Wells Fargo.  ¶46.  At this time, Wells Fargo had actual knowledge that Fuchs was a German national who was associated with Engler, that PCO was the sole client of PCOM, and that PCOM purported to conduct billing services for PCO from the same mail slot at a UPS store in Cape Coral, Florida as PCO.  Shortly after Fuchs opened the Wells Fargo Accounts with money withdrawn from SunTrust, on or about ***June 8, 2007***, Wells Fargo received a 314(b) notification from SunTrust, [2] which included the Austrian

---

[2] *See* Declaration of Stuart A. Davidson, Esq. ("Davidson Decl."), submitted herewith, **Ex. A**.

Financial Market Authority ("AFMA") Warning Notification letter concerning Engler.   ¶47.

The AFMA Warning Notification letter received by Wells Fargo stated:

> Pursuant to Article 24 para 6 of the Wertpapieraufsichtsgesetz (WAG; Austrian Securities Supervision Act) the Austrian Financial Market Authority (FMA) is entitled to inform the general public by publication in an official bulletin published nationwide that a particular company is not authorized to provide certain financial services (as stipulated in Section 1 para 1 no. 19 of the Bankwesengesetz (BWG; Austrian Banking Act)). With the announcement in the official gazette "Amtsblatt zur Wiener Zeitung" on 22 November 2006 the FMA makes used[*sic*] of its right and warns against doing any financial services business with the following company
>
> ***Private Commercial Office, Inc, Engler, Ulrich with the alleged location in 1217 Cape Coral Pkwy, #121, Cape Coral, Florida 33904, USA***
>
> This company is not authorized by the FMA. Therefore it is not entitled to provide investment advice concerning client funds, to manage client portfolios in accordance with mandates given by investors or to broker business opportunities for the acquisition or sale of certain financial instruments. This action by the FMA comes as a result of several inquiries and complaints by investors in Austria.

¶48.

The Section 314(b) notification from SunTrust to Wells Fargo was made pursuant to the

USA PATRIOT Act,[3] which, according to an investigation summary prepared by Wells Fargo,

further stated as follows:[4]

> "[Wells Fargo employee Kevin] Scott advised Sun Trust received ***negative news on their customer Private Commercial Office and that their customer issued a check that was deposited into a client's Wachovia account, PCO Client Management Inc in the amount of $7,000,000 on June 1, 2007***.   Private Commercial Office was the subject of a warning notification letter submitted by the Austrian Financial Market Authority following complaints received by investors in that country.   Scott also advised Sun Trust had not been able to

---

[3] Section 314(b) of the USA PATRIOT Act permits, but does not mandate, financial institutions to share information with one another in order to identify and report to the federal government ***activities that may involve money laundering or terrorist activity***.

[4] *See* Davidson Decl., **Ex. B.**

identify any specific BSA violations but recent activity with the client has led to increased suspicious.  Their customer receives about $24 million in foreign wires, mainly from Austria and Germany each month which is then wired out to individuals.  The company claims to be a stock day trading/investment company.  The first address Ulrich Engler, the owner of the business gave for the business was actually the address of a UPS Store.  He was asked for an updated address.  The new address turned out to be a private residence owned by a family who had been there for several years.  He was sent a list of questions to answer about the nature of the business but has not answered.  ***Sun Trust requested Wachovia share any information found regarding the client that might be deemed suspicious*** . . . ."

¶43.

About one month later, on ***July 10, 2007***, an internal Wells Fargo email between two employees stated, "she may have been forced out of the other bank [SunTrust] due to the same information we received."[5]  On the same day, as a result of Wells Fargo's clear knowledge of Engler's illegal activities, Wells Fargo sent a letter to PCOM stating that PCOM's Wells Fargo Accounts would be involuntarily closed by August 21, 2007, if they were not voluntarily closed by PCOM prior to such date.[6]  ¶49.  Then on July 16, 2007, a Wells Fargo employee admitted in an internal email that Engler was "filtering [funds] through Angelika's company to cover it up."[7]

Despite Wells Fargo having acquired actual knowledge by June 2007 that Fuchs was utilizing PCOM's Wells Fargo Accounts as a mere filter so that Engler could continue perpetrating his fraud, and Wells Fargo's expressed intention to close the accounts by no later than August 21, 2007, Wells Fargo made the conscious decision to keep PCOM's Wells Fargo Accounts open until at least ***January 2, 2008***.[8]  ¶50.  Wells Fargo kept PCOM's accounts open so that Wells Fargo could "clear up any wire issues" and ensure collection of transaction/service

---

[5]   *See* Davidson Decl., **Ex. C**.
[6]   *See* Davidson Decl., **Ex. D**.
[7]   *See* Davidson Decl., **Ex. E**.
[8]   *See* Davidson Decl., **Ex. F**.

5

fees owed to Wells Fargo, which, on information and belief, averaged $30,000 per month.  ¶¶50, 57.

Wells Fargo's own Investigations Case Summary provided further explanation of the alleged fraud Wells Fargo knew all about by June 2007: (1) the PCOM accounts at Wells Fargo were funded entirely by transfers from PCO and international wire transfers (many from the same countries referenced in the AFMA Warning Notification Letter); (2) there were 1,675 wire transfers from the accounts totaling $10,301,639.13 and 14 transfers into the accounts totaling $10,193,745.88 *during the month of June 2007 alone*; and (3) there were 1,701 wire transfers from the accounts totaling $8,914,329.14 and 61 credits into the accounts totaling $8,803,937.29 *in the first ten days of July 2007*.[9]  ¶54.

By the time PCOM's Wells Fargo Accounts were finally closed on January 2, 2008, millions in Class member funds had disappeared – $44 million of which while Wells Fargo had actual knowledge that it was providing substantial assistance to a massive fraud.  This case seeks to hold the bank accountable for its misconduct.

## III.   ARGUMENT

### A.   Standards for Class Certification

Rule 23 governs class certification, and plaintiffs seeking class certifications have the burden of proof.  *Bush v. Calloway Consol. Grp. River City, Inc.*, No. 3:10-cv-841-J-37MCR, 2012 U.S. Dist. LEXIS 40450, at *7 (M.D. Fla. Mar. 26, 2012) (Dalton, J.); *see also Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000).  "The question of whether to

---

[9] *See* Davidson Decl., **Ex. B**.

certify a class is left to the sound discretion of the district court." [10]  *Mesa v. Ag-Mart Produce, Inc.*, No. 2:07-cv-47-FtM-34DNF, 2008 U.S. Dist. LEXIS 114037, at *7 (M.D. Fla. July 18, 2008) (Howard, J.) (citing *Cooper v. S. Co.*, 390 F.3d 695, 711 (11th Cir. 2004)).

For purposes of class certification, the Court takes the factual allegations of the complaint as true. *See Castillo v. N&R Servs. of Cent. Fla., Inc.*, No. 8:07-cv-1804-T-26EAJ, 2008 U.S. Dist. LEXIS 36882, at *5-*6 (M.D. Fla. May 1, 2008) (Lazarra, J.); *see also In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 671 (S.D. Fla. 2012). "To determine whether a class should be certified in this case, the Court must not decide the merits of the claim." *Gaalswyk-Knetzke v. The Receivable Mgmt. Servs. Corp.*, No. 8:08-cv-493-T-26TGW, 2008 WL 3850657, at *2 (M.D. Fla. Aug. 14, 2008) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)); *Cooper,* 390 F. 3d at 712. "A trial court should not determine the merits of the claims at the class certification stage, however, the trial court can consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Mesa*, 2008 U.S. Dist. LEXIS 114037, at *9-*10 (quoting *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006)); *see also Reese v. Miami-Dade Cty.*, 209 F.R.D. 231, 232 (S.D. Fla. 2002) ("Class certification is strictly a procedural matter and the merits of the claims at stake are not considered when determining the propriety of the class action vehicle.").

Even if the Court here were to "probe behind the pleadings," Plaintiffs have ample record evidence, even at this early stage of litigation, supporting each of Rule 23's elements. *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551–52 (2011) ("[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification

---

[10] Unless indicated otherwise, citations, internal quotations and footnotes are omitted and emphasis is added.

question, . . . [which] generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."); *Mills v. Foremost Ins. Co*., 511 F.3d 1300, 1309 (11th Cir. 2008).

"To certify a class pursuant to Rule 23, the Court must first determine whether the class representative possess standing the [sic] assert his or her own claim." *Gaalswyk-Knetzke*, 2008 WL 3850657, at *1. Next, a plaintiff must prove the four requirements of Rule 23(a) and at least one of the standards of Rule 23(b) that is appropriate to the relief sought. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008). The four prerequisites of Rule 23(a) have commonly been referred to as "numerosity, commonality, typicality, and adequacy of representation." *Franze v. Equitable Assurance*, 296 F.3d 1250, 1253 (11th Cir. 2002) (quoting *Piazza v. Ebsco Indus.*, 273 F.3d 1341, 1346 (11th Cir. 2001)). Rule 23(b) requires that common questions of law or fact predominate over individual questions, and that class treatment is superior to other available methods of adjudication.

In addition to meeting all four of Rule 23(a)'s requirements, the action must also fit into one of the categories of Rule 23(b). *See Bush*, 2012 U.S. Dist. LEXIS 40450, at *44. "Rule 23(b)(3) requires predominance of group issues over questions affecting only individuals, and the superiority of the class action over individual actions to efficiently and fairly adjudicate the controversy." *Gaalswyk-Knetzke*, 2008 WL 3850657, at *1. Four factors courts consider with respect to Rule 23(b)(3), which are not exhaustive, include: (1) the class members' interests in prosecuting their case individually; (2) the extent and nature of already-started litigation by class members; (3) the desirability of concentrating the litigation in this particular forum; and

(4) the potential difficulties in managing a class action.   *Checking Account Overdraft*, 281 F.R.D. at 676.

### B.       Plaintiffs Satisfy the Requirements of Rule 23(a)

#### 1.       The Class Is so Numerous that Joinder of All Members Is Impracticable

The Class satisfies Rule 23(a)(1), which requires that a class be so numerous that joinder of all members would be impracticable.  In seeking class certification, plaintiffs do not need to know the exact size of the proposed class.  The Eleventh Circuit has held that while there is no fixed rules regarding numerosity, "[g]enerally, a class should have no fewer than 21 members and will satisfy the numerosity requirement if it has more than 40."  *Bush*, 2012 U.S. Dist. LEXIS 40450, at *19 (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009)). "Parties seeking class certification do not need to know the precise number of class members, but they must make reasonable estimates with support as to the size of the proposed class." *Checking Accounting Overdraft*, 281 F.R.D. at 672 (citing *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000)).

As stated above, while in possession of actual knowledge of Engler's illegal activities, Defendant allowed the Wells Fargo Accounts to remain open, and continued to process millions of dollars in international wire transfers of funds received from the Class in order to generate substantial transaction and service fees.  Here, Plaintiffs are able, with near certainty, to determine the size of the Class.  In that regard, Plaintiffs utilized the services of a forensic accounting expert, Soneet R. Kapila, who conducted an extensive review of approximately 29,000 transactions and proof of claim forms filed in the bankruptcy case styled, *In re Ulrich Felix Anton Engler, Private Commercial Office, Inc. and PCO Client Mgmt. Inc.*, No. 9:08-bk-

9

04360-MGW, pending before the United States Bankruptcy Court for the Middle District of Florida ("Engler Bankruptcy Action").[11]  Plaintiffs conclude there are at least 505 members of the Class.[12]  In fact, the Kapila Declaration includes a spreadsheet identifying each net investor in the Engler Ponzi scheme and their loss.[13]  Thus, the number of Class members here well exceeds the thresholds contemplated by the Eleventh Circuit.[14]  *See In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, slip op. (S.D. Fla. May 16, 2012) (recognizing an expert's mining of defendant's data as a means of determining who the members of the class are and for calculating damages).[15]  *See* Davidson Decl., **Ex. K**.

Moreover, Plaintiffs and Class members are geographically dispersed and located throughout Europe, making joinder of claims impracticable.  *Bruhl v. Price WaterhouseCoopers Int'l*, 257 F.R.D. 684, 688 (S.D. Fla. 2008) (numerosity satisfied where class members were located in Hong Kong, Cyrus, Great Britain, France, Canada, Switzerland, the United States, Luxembourg, Bermuda, Ireland, and the Bahamas, making joinder impracticable).  Based on the

---

[11] *See* Declaration of Soneet R. Kapila in Support of Plaintiffs' Amended Motion for Class Certification ("Kapila Declaration" or "Kapila Decl."), a true and correct copy of which is attached to the Davidson Decl. as **Ex. G**.

[12] *See id.*

[13] *See* Kapila Decl., **Ex. 1**.

[14] It is important to note that discovery is ongoing.  Therefore, Plaintiffs reserve the right to supplement this Motion accordingly and as the discovery process unfolds.  *See Mills*, 511 F.3d at 1309 ("[P]recedent also counsels that the parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified.").

[15] Courts have allowed the use of similar methodologies in ascertaining members of the class for class certification purposes.  *See Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1138 (N.D. Cal. 2010) (finding expert's methodology to be "professional and careful" and concluding that he has convincingly identified the class members and isolated the amounts that were wrongfully taken from the class), *aff'd and rev'd in non-relevant part*, 704 F.3d 712 (9th Cir. 2012); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 672-73 (S.D. Fla. 2011); *In re Diet Drugs Prods. Liab. Litig.*, No. CIV. A. 98-20626, 1999 U.S. Dist. LEXIS 13228, at *34-*35 (E.D. Pa. Aug. 26, 1999) (finding class definition was adequate because there were reliable means to determine who had actually taken the drug where fact sheets, prescription records, and records of medical treatment were available to verify consumption).

number of Class members and the fact that they are geographically dispersed, individual joinder

is impracticable, and Plaintiffs satisfy Rule 23(a)'s numerosity requirement.

> ### 2.   There Are Questions of Law and Fact Common to Each Member of the Class

Rule 23(a)'s second requirement is that class members share common questions of law or

fact. *Bush*, 2012 U.S. Dist. LEXIS 40450, at *31.  "The threshold for commonality is not high."

*In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 618 (M.D. Fla. 2006) (Antoon, J.).

Commonality pertains to the characteristics of the class as a whole, unlike typicality which refers

to the individual characteristics of the class representative as compared to those of the class

members.  *Gaalswijk-Knetzke*, 2008 WL 3850657, at *2; *see also Prado-Steiman v. Bush*,

221 F.3d 1266 (11th Cir. 2000).  It measures the extent to which all members of a putative class

have similar claims.  *Mesa*, 2008 U.S. Dist. LEXIS 114037, at *16.

Commonality requires an assessment of whether plaintiffs' claims raise at least one

question of law or fact common to the members of the class.  Fed. R. Civ. P. 23(a)(2); *Williams*

*v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).  Commonality will be satisfied

where questions of law refer to standardized conduct by the defendant toward members of the

proposed class. *Checking Accounting Overdraft*, 281 F.R.D. at 674.  Establishing commonality,

however, does not require complete identity of plaintiffs' claims.  *CV Reit, Inc. v. Levy*,

144 F.R.D. 690, 696 (S.D. Fla. 1992).  More specifically, "it is not necessary that all questions of

fact or law be common, but only that some questions are common and that they predominate

over individual questions."  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004).  The

Eleventh Circuit has held that factual differences concerning treatment of damages will not

defeat a finding of commonality.  *Id.* at 1259-60 (individualized damage determinations are "insufficient to defeat class certification").

In *Dukes*, the Supreme Court explained that, for commonality, class members' claims:

> must depend upon a common contention . . . [which] must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

131 S. Ct. at 2551.

This case easily satisfies Rule 23(a)(2)'s commonality requirement.  Plaintiffs' claims raise several questions of law and fact common to each member of the Class that justify class treatment, including the following:

> (a)     whether Wells Fargo aided and abetted Engler's and/or PCOM's conversion of the Class member's funds;
>
> (b)     whether Wells Fargo aided and abetted the fraud Engler and/or PCOM perpetrated on the Class members;
>
> (c)     whether Wells Fargo was unjustly enriched; and
>
> (d)     whether Wells Fargo should be ordered to disgorge any and all monies unlawfully obtained in connection with its failure to terminate PCOM's Wells Fargo Accounts.

*See*, *e.g.*, ¶61.

"These common questions are sufficient to satisfy the low hurdle of Rule 23(a)(2)."  *Williams*, 568 F.3d at 1356.  Plaintiffs' allegations demonstrate that Class members were all aggrieved by a common course of conduct (Defendants' knowing substantial assistance to Engler's operation of the Ponzi scheme), and Plaintiffs' claims are based on the exact same legal theories.  *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) ("Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide

proof."); *Checking Account Overdraft*, 281 F.R.D. at 677  ("varying degrees of knowledge among class members do not present an obstacle to class certification where other common issues unite the class") (citing *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 236 F.R.D. 62, 70 (D.N.H. 2006)).

Here, Plaintiffs assert common questions of fact among all Class members.  All Class members are investors who lost money when they invested in or paid money to Engler/PCO's SunTrust accounts that was then transferred into PCO Client Management, Inc.'s Wells Fargo Accounts or deposited money directly into PCOM's Wells Fargo Accounts between January 1, 2005 and January 2, 2008.  The core issues center around Defendant's aiding and abetting Engler's Ponzi scheme by providing substantial assistance to his fraud once armed with actual knowledge that PCOM's Wells Fargo Accounts were mere filters that allowed Engler to continue perpetrating his fraudulent actions of securing and converting Class members' funds.  Plaintiffs' substantive allegations, which must be accepted as true, demonstrate a mutuality between their claims and the claims of the Class members, thereby satisfying Rule 23's commonality requirement.  *Santiago v. Wm. G. Roe & Sons, Inc.*, No. 8:07-CV-1786-T-27MAP, 2008 U.S. Dist. LEXIS 60761, at *7 (M.D. Fla. May 15, 2008) (taking substantive allegations as true and certifying a class of approximately 82 foreign national agricultural workers under Rule 23) (Pizzo, MJ); *Checking Accounting Overdraft*,  281 F.R.D. at 674 (plaintiffs satisfy the commonality requirement by "alleging and providing significant evidence that TD Bank uniformly manipulated and re-ordered debit card transactions to increase the number of overdraft fees").

### 3.     Plaintiffs' Claims Are Typical of Those of the Class

Rule 23(a)'s typicality requirement ensures that class representatives have the same interests as the class or suffer the same injury as other class members. *Williams*, 568 F.3d at 1356-57; *Mesa*, 2008 U.S. Dist. LEXIS 114037, at *13-*14. "The main focus of the typicality requirements is that the plaintiffs will advance the interests of the class members by advancing their own interests." *Id.* That is, "[t]ypicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Busby*, 513 F.3d at 1322; *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Similarly, typicality does not require that all putative class members share identical claims; rather, it is only required that the named plaintiff's claims have the same essential characteristics as the class at large because "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). The typicality requirement is generally met if the class representative and class members experienced the same unlawful conduct, irrespective of whether the fact patterns underlying each claim vary. *Castillo*, 2008 U.S. Dist. LEXIS 36882, at *9 ("Even if the fact patterns are unique to each claim, the typicality requirement will be satisfied if the class representative and class members experienced the same unlawful conduct."). The typicality requirement, like commonality is not demanding. *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) (Schlesinger, J.).

In many instances, "[t]he proof of typicality and commonality often tend to merge." *Gaalswyk-Knetzke*, 2008 WL 3850657, at *3. Further, typicality and commonality "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class

action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *In re Miva, Inc. Sec. Litig.*, No. 2:05-cv-201-FtM-29DNF, 2008 U.S. Dist. LEXIS 21108, at *10 n.2 (M.D. Fla. Mar. 12, 2008) (Steele, J.).

Here, there is no question that Plaintiffs' claims satisfy Rule 23's typicality requirement. Plaintiffs and the other Class members seek identical remedies under identical legal theories, and there is no opposition or material factual variation between Plaintiffs' claims and those of the other Class members. *Bush*, 2012 U.S. Dist. LEXIS 40450, at *25 ("On this basis alone courts have found typicality exists."); *Checking Accounting Overdraft*, 281 F.R.D. at 675. (finding typicality because plaintiffs' claims arose out of the same course of conduct and were based on the same legal theories as those of absent class members); *Santiago*, 2008 U.S. Dist. LEXIS 60761, at *10 (certifying class where claims arose from same conduct, breach of contract, as plaintiffs' claims and were based on same legal theories).

Indeed, courts routinely certify classes of victims of Ponzi schemes, such as here. *See*, *e.g.*, *Katz v. MRT Holdings, LLC*, No. 07-61438-CIV-COHN/SELTZER, 2008 U.S. Dist. LEXIS 114421 (S.D. Fla. Oct. 24, 2008); *Bruhl*, 257 F.R.D. 684; *Walco Inv., Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996); *Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 U.S. Dist. LEXIS 113491 (M.D. Fla. Nov. 19, 2009) (granting conditional certification of class of Ponzi scheme victims for settlement purposes) (Merryday, J.); *Facciola v. Greenberg Traurig, LLP*, 281 F.R.D. 363 (D. Ariz. 2012); *Carroll v. Stettler*, No. CIV.A. 10-2262, 2011 U.S. Dist. LEXIS 121171 (E.D. Pa. Oct. 19, 2011); *In re Med. Capital Sec. Litig.*, No. SAML 10-2145 DOC (RNBx), 2011 U.S. Dist. LEXIS 126659 (C.D. Cal. July 26, 2011); *In re Beacon Assocs.*

15

*Litig.*, No. 09 Civ. 777 (cm), 2013 U.S. Dist. LEXIS 82192 (S.D.N.Y. May 9, 2013) (certifying a settlement class in relation to investments made in the Madoff Ponzi scheme); *In re LandAmerica §1031 Exch. Servs. Inc., IRS §1031 Tax Deferred Exch. Litig.*, No. 8:09-cv-00415, 2012 U.S. Dist. LEXIS 97933 (D.S.C. July 12, 2012).

Additionally, absent class members would have to prove identical facts if they pursued their claims individually. If any Plaintiff is to recover, he/she will be required to show that Wells Fargo caused him/her damages by failing to take proper steps to avoid aiding and abetting conversion and fraud owed to Plaintiffs and the Class, based on the same factual premises as all absent Class members. As discussed above, Plaintiffs and the Class seek identical relief for each claim. For each of these claims, Defendant committed the same uniform unlawful conduct: to-wit, armed with actual knowledge of Engler's, PCO's, and PCOM's (collectively, the "Engler Entities") fraudulent conduct, Defendant continued to process numerous receipts and disbursements of Class member funds in the form of international wire transfers to and from the Wells Fargo Accounts, and thereby permitted Engler to take over $44 million from investors. As previously stated, Defendant had actual knowledge that the Engler Entities were engaged in fraudulent activity and provided substantial assistance in allowing the Wells Fargo Accounts to remain open once that knowledge was acquired.

Like absent Class members, Plaintiffs' investments with PCOM were deposited into the Wells Fargo Accounts, directly or indirectly. Plaintiffs are not subject to any unique defenses rendering them atypical. There is no doubt that Plaintiffs' investments with PCOM, which were wire transferred into PCOM's Wells Fargo Accounts by the Engler Entities, is typical of those of other putative Class members.

16

Because Plaintiffs seek to prove Defendant "committed the same unlawful acts in the same method against an entire class [which means that] all members of this class have identical claims," Rule 23(a)(3)'s typicality requirement is satisfied.  *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983); *accord Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722-25 (11th Cir. 1987); *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577 (M.D. Fla. 2006) (finding typicality satisfied, and noting "factual differences among the claims of the putative class members do not defeat certification").

### 4.     Plaintiffs Will Fairly and Adequately Represent the Class and Plaintiffs' Counsel Should Be Appointed Class Counsel

The final prerequisite of Rule 23(a) requires a showing that the representative party will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  What constitutes adequate representation is a question of fact depending upon the circumstances of each case and is to the discretion of the trial court.  *See* 7A Charles A. Wright, Arthur R. Miller & Mary K. Kane, FED. PRACTICE & PROCEDURE: CIVIL §1765, at 271 (1986); *Kirkpatrick*, 827 F.2d at 728; *Schatzman v. Talley*, 91 F.R.D. 270, 272 (N.D. Ga. 1981).   Rule 23(a)(4)'s adequacy requirement encompasses two elements: (1) the proposed class representative has interests in common with and not antagonistic to the interests of the class; and (2) the plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation.  *Kirkpatrick*, 827 F.2d at 726; *see also  Gaalswyk-Knetzke*, 2008 WL 3850657, at *3.   "This requirement serves to uncover any conflict of interest that named parties may have with the class they represent." *Mesa*, 2008 U.S. Dist. LEXIS 114037, at *21.  Minor conflicts will not defeat class certification. *Id.*

Here, Plaintiffs satisfy both prongs of Rule 23(a)(4)'s adequacy test.  Plaintiffs do not have any interests antagonistic to the Class, and Plaintiffs are willing and able to vigorously prosecute this action on the Class' behalf, as they have plainly demonstrated thus far.[16] Plaintiffs' interests, in fact, are directly aligned with the Class'.[17]   Plaintiffs, like all Class members, were injured as a result of Defendant's failure to close the Wells Fargo Accounts once they obtained actual knowledge that the Engler Entities were engaged in fraudulent conduct.[18] *See Checking Account Overdraft*, 281 F.R.D. at 675 ("Each representative Plaintiff, like each absent class member, has a strong interest in proving TD Bank's scheme, establishing its unlawfulness, demonstrating the impact of the illegal conduct and obtaining redress.").  Proof of Plaintiffs' claims will establish the same issues of law and fact as the claims of the Class as a whole.  Plaintiffs and the Class have precisely the same interest in achieving the maximum possible recovery.

Furthermore, Plaintiffs and proposed Class Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Mandel & Mandel LLP ("Mandel & Mandel"), will vigorously prosecute this action.  Indeed, Plaintiffs and Plaintiffs' counsel have been vigorously prosecuting this action since its inception and will continue to do so until its conclusion.  Plaintiffs are willing and able to represent the Class in this action and understand the commitments and the fiduciary responsibilities attendant to serving as Class representatives.

In addition to satisfying Rule 23(a)(4)'s adequacy prong, Plaintiffs' counsel also satisfy the considerations of Rule 23(g) and should be appointed as Class Counsel.  Rule 23(g)(4)

---

[16] *See* Declarations of Plaintiffs Franz Lesti, ¶15; Petra Richter, ¶15 attached to the Davidson Decl. as **Exs. H-I**, respectively.
[17] *See* Lesti Decl., ¶14; Richter Decl., ¶14.
[18] *See* Lesti Decl., ¶11; Richter Decl., ¶11.

requires the Court to appoint counsel who will fairly and adequately represent the Class. Additionally, in appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

Concerning adequacy of representation, the Eleventh Circuit has noted that "adequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class." *Kirkpatrick*, 827 F.2d at 727. Instead, the focus is on whether plaintiff's counsel exhibits the desire and expertise to prosecute a class action vigorously. *Id.* at 726-27. As demonstrated by its firm resume (*see* Davidson Decl., **Ex. J**), Robbins Geller is comprised of highly competent lawyers who possess substantial experience in litigating class actions on behalf of aggrieved investors and consumers, and the firm is adequately prepared to continue to prosecute this action.

To be sure, Robbins Geller – the largest class action firm in the nation – has extensive experience in the prosecution and successful resolution of complex class actions in courts in this District and throughout the United States. Moreover, Robbins Geller has demonstrated its willingness to commit substantial resources to representing the Class through its efforts in prosecuting this action to date. As such, there should be no question about the competence of counsel to fairly and adequately represent the interests of the Class, and the requirements of Rule 23(a)(4) and Rule 23(g) are satisfied.

19

Moreover, Mandel & Mandel also brings special expertise to this matter.  The firm has class action experience and its practice focuses primarily on complex commercial litigation. Mandel & Mandel was also trial counsel in another recent case where a bank aided and abetted a Ponzi scheme.  *See Coquina Investments v. TD Bank, N.A.*,  No. 10-60786-CIV-COOKE (S.D. Fla.).  In 2012, the firm obtained the largest federal jury verdict in the State of Florida ($67,000,000) in the *Coquina* case.  *See* Davidson Decl., **Ex. L** (Online Resumes of David S. Mandel and Nina Stillman Mandel of Mandel & Mandel).

### C.  Plaintiffs Satisfy the Requirement of Rule 23(b)(3)

In addition to meeting Rule 23(a)'s requirements, this action satisfies the requirements of Rule 23(b), which states that common questions of law or fact predominate over individual questions, and that class action treatment is superior to other available methods of adjudication. As set forth below, this case meets all criteria set forth in Rule 23(b)(3).

Further, Local Rule 4.04(b) states that "[i]f a determination is sought that the action shall be maintained under Rule 23(b)(3), the motion shall also suggest a means of providing, and defraying the cost of, the notice required by Rule 23(c)(2), Fed. R. Civ. P."  In this action, Plaintiffs recommend serving notice by mailing this Court's Order on this Motion directly to each member of the Class.  Plaintiffs do not anticipate manageability problems with providing adequate notice to Class members.  Indeed, Plaintiffs are also represented by legal counsel in Germany, Dr. Annerose Tashiro of the international law firm of Schultze & Braun,[19] who will

---

[19]  *See* Firm Biography of Dr. Annerose Tashiro, available at http://www.schubra.de/en/aboutschubra/ ap_profil.php?id=3724 (last visited July 29, 2013).

assist Robbins Geller and Mandel & Mandel in all efforts relating to providing notice to the Class upon certification.

### 1.      Common Questions of Law or Fact Predominate

Rule 23(b)(3) requires that common questions of law and fact predominate over questions affecting individual members.  "Predominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." *Gaalswyk-Knetzke*, 2008 WL 3850657, at *4 (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (quoting *Kerr v. West Palm Beach*, 875 F.2d 1546, 1557-58 (11th Cir. 1989))); *Mesa*, 2008 U.S. Dist. LEXIS 114037, at *23.  The predominance requirement under Rule 23(b)(3) is more demanding than Rule 23(a)'s commonality requirement.  *See Gaalswijk-Knetzke*, 2008 WL 3850657, at *4. "The existence of some individual questions, however, will not nullify the predominance of issues common to the group as a whole."  *Id*.  Common issues of fact and law predominate if they have a "direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001).  Indeed, "[i]t is primarily when there are significant individualized questions going to liability exist [sic] that the need for individualized assessments . . . is enough to preclude 23(b)(3) certification."  *Klay*, 382 F.3d at 1260 (If damages are subject to plausible class-wide methodology, individual damages calculations are "no impediment to class certification.").

Applying these standards here, the Court should find Plaintiffs' and the Class' claims are based on the same legal theories, the same conduct of Defendant consciously rendering

substantial assistance to Engler's Ponzi scheme, and the same theories for damages. Plaintiffs allege issues arising out of Defendant's conduct that are common to all members of the proposed Class. Further, the resolution of Plaintiffs' claims will resolve each Class member's claims. Plaintiffs do not seek to resolve any legal or factual issue that does not apply to all Class members, and the common issues raised by Defendant's failure to take proper steps to avoid aiding and abetting conversion, fraud, and breach of fiduciary duties to Plaintiffs and the proposed Class predominate over any individual issues. *Gaalswyk-Knetze*, 2008 WL 3850657, at *4.

Several additional aspects weigh in favor of certifying the Class. First, not one of Plaintiffs' claims against Defendant includes the elements of or the requirement to prove reliance. This case is solely based on Defendant's knowing failure to take proper steps to avoid aiding and abetting conversion and fraud to Class members. Further, to the extent any claim could be read to require reliance, this is an omissions case where reliance is presumed. Indeed, the Supreme Court has found a rebuttable presumption of reliance when "there is an omission of a material fact by one with a duty to disclose." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 159 (2008). In such cases, the person "to whom the duty was owed need not provide specific proof of reliance." *Id.*; *see also Lipton v. Documation, Inc.*, 734 F.2d 740, 742 n.3 (11th Cir. 1984) (holding the Eleventh Circuit has adopted the rebuttable presumption of reliance in omissions cases).[20]

---

[20] Regardless, "[u]nder well-established Eleventh Circuit precedent, the simple fact that reliance is an element in a cause of action is not an absolute bar to class certification." *Klay*, 382 F.3d at 1258 (based on nature of misrepresentations, circumstantial evidence could be used to show reliance common to entire class).

Second, there is a clear method for calculating damages.  As stated above, forensic accounting expert Soneet Kapila has clearly articulated the manner and methodology by which damages can be calculated, and any damages to unknown Class members can be calculated at a later date, in the same manner, once additional information is received from Defendant.  *See Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 671 (S.D. Fla. 2012) (finding plaintiff's expert "articulated the manner and methodology that he will be able to use once he receives full and complete disclosure from Wells Fargo and QBE.  He has described with specificity the data that he needs to complete his analysis, and had further explained that the records containing the data are standard records kept by an insurance company.").  Further, the fact that individual class members may have different damages amounts based on the same class-wide damages methodology was not found to defeat class certification.  *Klay*, 382 F. 3d at 1259-60.  Moreover, "[t]he Eleventh Circuit has repeatedly held that individual issues relating to damages do not defeat class certification."  *Checking Account Overdraft*, 281 F.R.D. at 678.

In *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013), an antitrust case, the Supreme Court required plaintiffs to demonstrate that damages could be proven on a class-wide basis.  In *Comcast,* the Supreme Court further held that the expert's damages model failed to show that damages were capable of measurement on a class-wide bass because the model measured damages attributable to several possible theories of liability.  *Id*.  Here, Plaintiffs' proposed damages methodology, as prepared by Soneet Kapila, is directly tied to their claims against Wells Fargo.

Even if damages could not be calculated with mathematical precision, as here, the possibility of calculating individual damages for over 505 investors does not mean that

individual issues predominate.  Moreover, at the certification stage, plaintiffs do not need to

supply a precise damage formula.  Instead, "the Court's inquiry is limited to whether or not the

proposed methods are so insubstantial as to amount to no method at all."  *In re Terazosin*

*Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 698 (S.D. Fla. 2004); *see also Klay*, 382 F.3d at

1259; *Collins v. Olin Corp.*, 248 F.R.D. 95, 104 n.8 (D. Conn. 2008) ("Regardless whether the

expert testimony establishes that causation actually cannot be proved on a class-wide basis, the

Court need not weigh this evidence at this stage," since common issues predominate.).  As noted

above,"[t]he Eleventh Circuit has stated that it is primarily when there are significant

individualized questions *going to liability* that the need for individualized assessments of

damages is enough to preclude 23(b)(3) certification."  *Miva*, 2008 U.S. Dist. LEXIS 21108, at

\*27-\*28 (quoting *Klay*, 382 F.3d at 1260).

### 2.    A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action

Rule 23(b)(3) requires a finding that "a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy."  There are four factors the Court should

consider in determining whether a class action is superior to other methods of adjudication:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions; (B) the extent and nature of any litigation concerning
> the controversy already begun by or against class members; (C) the desirability
> or undesirability of concentrating the litigation of the claims in the particular
> forum; (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Mesa*, 2008 U.S. Dist. LEXIS 114037, at \*9.  A review

of these factors makes clear that a class action is the superior method of adjudicating this

controversy.

First, there is no reason to believe the Class members here have any particular interest in controlling their own litigation.  This factor does not counsel against class certification.  *Klay*, 382 F.3d at 1269.  The expenses associated with an individual action would likely far outweigh any potential individual recovery and thus is it not in the interest of any one Class member to pursue an action individually.  The Supreme Court has recognized that "[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually. . . . [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

As set forth above, Wells Fargo consciously rendered substantial assistance to Engler by continuing to process numerous receipts and disbursements of Class member funds in the form of international wire transfers to and from the Wells Fargo Accounts.  While each Class member may have significant damages relative to his/her own financial circumstances, the expense of litigating actions on an individual basis would likely and quickly subsume all recoverable damages.  *Klay*, 382 F.3d at 1271 (class action superior where amounts in controversy are so low that most of the plaintiffs or attorneys working on a contingency fee basis would not be willing to pursue claims individually).

Here, it has been and would be cost prohibitive for each individual Class member to engage in substantial pre-trial discovery and proceed against a large corporation such as Defendant.  *Id.* ("This is especially true when the defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings."); *see also Powers v. Stuart-James Co.*, 707 F. Supp. 499, 504 (M.D. Fla. 1989) ("It appears to the Court that the

899103_1

judicial system, the potential class members, the litigants, counsel for the parties, and the public will all benefit from class certification because the time and money of all parties will be efficiently used.") (Kovachevich, J.); *Upshaw v. Ga. Catalog Sales, Inc.*, 206 F.R.D. 694, 701 (M.D. Ga. 2002) ("[E]ven if sufficient incentive existed for individual claimants to pursue their claims separately, class action treatment is far superior to having the same claims litigated repeatedly, wasting valuable judicial resources."). Thus, in light of the number of potential claimants and the cost and time necessary to litigate each separate claim, it is certainly in the best interests of the Class members to concentrate this action in this forum and prevent the duplication of efforts and possible inconsistent results.

Second, there are no other lawsuits filed on behalf of the Class that raise the same issues against the same Defendant as in the present matter. A number of Class members have filed proof of claim forms in the Engler Bankruptcy Action and are seeking damages from the Engler Entities. The claimants in the Engler Bankruptcy Action, however, are not seeking damages from Defendant. And, to the extent that Class members recover pennies on the dollar from their bankruptcy proofs of claim, such pennies would simply be set off from the damages awarded in this action.

Third, the burden on the courts would be significant if the individual claims of each Class member were pursued in multiple actions or forums. This forum is the superior one in which to concentrate the claims because the Engler Entities were operating out of this District, much of the questionable conduct occurred in this District, Defendant conducts substantial business in this District, and much of the evidence and witnesses are also located within this District. *See Santiago*, 2008 U.S. Dist. LEXIS 60761, at *12 (certifying class in this District where defendant

operated in this District and regularly conducted business in this District).  A class action "offers substantial economies of time, effort, and expense for the litigants . . . as well as for the Court." *Terazosin*, 220 F.R.D. at 700 (holding separate trials for claims that could be tried together would be costly, inefficient, and burden the court system by forcing individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts).

As to the final factor, while every class presents some administrative difficulties, the benefits of maintaining this action on a class basis far outweigh the administrative burdens.  The Class members' claims are predicated on a common set of facts, concern the same conduct by Defendant, and impact investors who invested in the same Ponzi scheme operated by Engler.  It will be unnecessary to hear testimony from every individual Class member.  Any speculative administrative hurdles are not sufficient to preclude class certification, and Plaintiffs anticipate there will most likely be no difficulties in managing this action as a class action.  *See Klay*, 382 F.3d at 1272-73.  Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this action.

**D.      Alternatively, Issue Certification Under Rule 23(c)(4) May be Appropriate**

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4).  The manual published by the Federal Judicial Center to assist federal judges in managing complex cases— including class actions—explains that the rule "permits a class to be certified for specific issues or elements of claims raised in the litigation."  MANUAL FOR COMPLEX LITIGATION, Fourth §21.24 at 272 (Fed. Jud. Ctr. 2004) ("MCL") (citing *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 184 (4th Cir. 1993) (class certified for eight common issues); *Jenkins v. Raymark*

27

*Indus.*, Inc., 782 F.2d 468, 472-73 (5th Cir. 1986) (class action to adjudicate "state of the art"

defense in products liability class action).   The approach is "appropriate only if it permits fair

presentation of the claims and defenses and materially advances the disposition of the litigation

as a whole."  MCL, §21.24 at 273.

Courts have repeatedly held that subsection (c)(4) may be used to single out issues for

class treatment, even when the action as a whole may not satisfy Rule 23(b)(3).  *See In re*

*Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006); *McReynolds v. Merrill*

*Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 489 (7th Cir. 2012) (reversing denial of class

certification, holding that issue certification is appropriate to determine: (1) whether Merrill

Lynch's teaming and account distribution policies had a disparate impact on African American

financial advisors; and (2) if so, whether it is nonetheless justified by business necessity), *cert.*

*denied*, 133 S. Ct. 338 (2012); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.

1996); *Williams*, 568 F.3d at 1360 (approving "hybrid class action" under Rule 23(c)(4) and

reversing denial of class certification); *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1158 n.10

(11th Cir. 1983) (approving certification under Rule 23(c)(4)); *see also Carroll*, 2011 U.S. Dist.

LEXIS 121171, at *19-*20 (certifying six separate issues pertaining to the defendants' liability

to the named plaintiffs who claimed they lost their investments through a Ponzi scheme even

though individualized damages calculations would be required).

Here, there are countless common legal and factual issues to be decided by the jury in

this case, which militate squarely in favor of class treatment of such issues.   These issues

include, among many others identified above, whether Wells Fargo is liable for knowingly

providing substantial assistance to Engler's Ponzi scheme.  This issue infects the claims every

single member of the Class has against Wells Fargo, and should undoubtedly be resolved on a class-wide basis.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an Order granting this Motion, certifying the Class defined by Plaintiffs, appointing Plaintiffs as Class representative, appointing Plaintiffs' counsel, Robbins Geller and Mandel & Mandel, as Class Counsel, and for such further relief as the Court deems just and proper.

DATED: December 6, 2013

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
Florida Bar No. 984795
STUART A. DAVIDSON
Florida Bar No. 084824
ROBERT J. ROBBINS
Florida Bar No. 572233
CULLIN A. O'BRIEN
Florida Bar No. 597341
CHRISTOPHER MARTINS
Florida Bar No. 88733
BAILIE L. HEIKKINEN
Florida Bar No. 55998

*s/ Stuart A. Davidson*
STUART A. DAVIDSON

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
rrobbins@rgrdlaw.com
cobrien@rgrdlaw.com
cmartins@rgrdlaw.com
bheikkinen@rgrdlaw.com

899103_1

DAVID S. MANDEL
Florida Bar No. 38040
NINA STILLMAN MANDEL
Florida Bar No. 843016
CAMELLIA NORIEGA
Florida Bar No. 102777
MANDEL & MANDEL LLP
Alfred I. duPont Building
169 East Flagler Street, Suite 1200
Miami, FL 33131
Telephone: 305/374-7771
305/374-7776 (fax)
dmandel@mandel-law.com
nsmandel@mandel-law.com
cnoriega@mandel-law.com

*Attorneys for Plaintiffs Franz Lesti and Petra
Richter and the Class and Proposed Class Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 6, 2013, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system.  The electronic case filing system sent a

"Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept

this notice as service of this document by electronic means.

s/ Stuart A. Davidson
STUART A. DAVIDSON

30