UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION

PETRA RICHTER, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

     vs.

WELLS FARGO BANK, N.A., formerly
known as Wachovia Bank, N.A.,

                Defendant.

_____ /

Case No. 2:11-cv-695-FtM-29DNF


**PLAINTIFF PETRA RICHTER'S SECOND AMENDED MOTION FOR CLASS
CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ...................................................................................................1

II.  STATEMENT OF FACTS ....................................................................................2

    A.   Engler's Ponzi Scheme .............................................................................2

    B.   Wells Fargo Had Actual Knowledge that PCOM's Wells Fargo
       Accounts Were Being Used for Fraudulent Activity ................................3

III. ARGUMENT ..........................................................................................................7

    A.   Standards for Class Certification .............................................................7

    B.   Plaintiff and This Case Satisfy the Requirements of Rule 23(a) ............9

       1.   The Class Is so Numerous that Joinder of All Members Is
           Impracticable.................................................................................9

       2.   There Are Questions of Law and Fact Common to Each Member
           of the Class..................................................................................11

       3.   Plaintiff's Claims Are Typical of Those of the Class ................13

       4.   Plaintiff Will Fairly and Adequately Represent the Class and
           Plaintiff's Counsel Should Be Appointed Class Counsel .........17

    C.   Plaintiff Satisfies the Requirement of Rule 23(b)(3) .............................23

       1.   Common Questions of Law or Fact Predominate......................24

       2.   A Class Action Is Superior to Other Available Methods for the
           Fair and Efficient Adjudication of This Action .........................30

    D.   Alternatively, Issue Certification Under Rule 23(c)(4) May Be
       Appropriate ..............................................................................................33

IV.  CONCLUSION.....................................................................................................35

# TABLE OF AUTHORITIES

**CASES**                                                                           **PAGE**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013)........................................................................................8

*Appleyard v. Wallace*,
   754 F.2d 955 (11th Cir. 1985) ........................................................................14

*Bruhl v. PriceWaterhouseCoopers Int'l*,
   257 F.R.D. 684 (S.D. Fla. 2008)................................................................10, 15

*Busby v. JRHBW Realty, Inc.*,
   513 F.3d 1314 (11th Cir. 2008) ....................................................................8, 14

*Bush v. Calloway Consol. Grp. River City, Inc.*,
   No. 3:10-cv-841-J-37MCR, 2012 U.S. Dist. LEXIS 40450
   (M.D. Fla. Mar. 26, 2012 ................................................................7, 9, 11, 15

*Carroll v. Stettler*,
   No. 10-2262, 2011 U.S. Dist. LEXIS 121171 (E.D. Pa. Oct. 19, 2011) ...................15, 26, 34

*Castano v. Am. Tobacco*,
   84 F.3d 734 (5th Cir. 1996) ............................................................................34

*Castillo v. N&R Servs. of Cent. Fla., Inc.*,
   No. 8:07-cv-1804-T-26EAJ, 2008 U.S. Dist. LEXIS 36882
   (M.D. Fla. May 1, 2008) ..............................................................................7, 14

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
   6 F.3d 177 (4th Cir. 1993) ..............................................................................33

*City of Cars, Inc. v. Simms*,
   526 So. 2d 119 (Fla. Dist. Ct. App. 1988) ..........................................................25

*Collins v. Olin Corp.*,
   248 F.R.D. 95 (D. Conn. 2008)........................................................................29

*Comcast Corp. v. Behrend*,
   __ U.S. __, 133 S. Ct. 1426 (2013)................................................................28, 29

*Cooper v. S. Co.*,
   390 F.3d 695 (11th Cir. 2004) ........................................................................7

*Coquina Invs. v. Rothstein*,
No. 10-60786-Civ-COOKE/BANDSTRA (S.D. Fla.)...........................................................23

*Coquina Invs. v. Rothstein*,
No. 10-60786-Civ-COOKE/BANDSTRA, 2012 U.S. Dist. LEXIS 139947
(S.D. Fla. Sept. 28, 2012)................................................................................................25

*CV Reit, Inc. v. Levy*,
144 F.R.D. 690 (S.D. Fla. 1992) .....................................................................................11

*Facciola v. Greenberg Traurig, LLP*,
281 F.R.D. 363 (D. Ariz. 2012) ................................................................................15, 26

*Franze v. Equitable Assurance*,
296 F.3d 1250 (11th Cir. 2002) .........................................................................................8

*Fuller v. Becker & Poliakoff, P.A.*,
197 F.R.D. 697 (M.D. Fla. 2000)........................................................................................9

*Gaalswyk-Knetzke v. The Receivable Mgmt. Servs. Corp.*,
No. 8:08-cv-493-T-26TGW, 2008 U.S. Dist. LEXIS 1243822
(M.D. Fla. Aug. 14, 2008) ..................................................................................... *passim*

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003) ............................................................................................34

*Gutierrez v. Wells Fargo Bank, N.A.*,
730 F. Supp. 2d 1080 (N.D. Cal. 2010), *aff'd and rev'd in non-relevant part*,
704 F.3d 712 (9th Cir. 2012) ............................................................................................10

*Heffner v. Blue Cross & Blue Shield of Ala., Inc.*,
443 F.3d 1330 (11th Cir. 2006) .........................................................................................8

*Holman v. Student Loan Xpress, Inc.*,
No. 8:08-cv-305-T-23MAP, 2009 U.S. Dist. LEXIS 113491
(M.D. Fla. Nov. 19, 2009) ................................................................................................15

*Holmes v. Cont'l Can Co.*,
706 F.2d 1144 (11th Cir. 1983) .......................................................................................34

*In re Beacon Assocs. Litig.*,
No. 09 Civ. 777 (CM), 2013 U.S. Dist. LEXIS 82192 (S.D.N.Y. May 9, 2013)....................15

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 666 (S.D. Fla. 2011) ......................................................................................10

*In re Checking Account Overdraft Litig.*,
  281 F.R.D. 667 (S.D. Fla. 2012) ................................................................................. *passim*

*In re Checking Account Overdraft Litig.*,
  No. 1:09-MD-02036-JLK, slip op. (S.D. Fla. May 16, 2012) ................................................10

*In re Diet Drugs Prods. Liab. Litig.*,
  No. 98-20626, 1999 U.S. Dist. LEXIS 13228 (E.D. Pa. Aug. 26, 1999) ...............................10

*In re Disposable Contact Lens Antitrust Litig.*,
  170 F.R.D. 524 (M.D. Fla. 1996).........................................................................................14

*In re Elec. Books Antitrust Litig.*,
  No. 11 MD 2293 (DLC), 2014 U.S. Dist. LEXIS 42537 (S.D.N.Y. Mar. 28, 2014) ..............29

*In re Ins. Mgmt. Solutions Group, Inc., Sec. Litig.*,
  206 F.R.D. 514 (M.D. Fla. 2002)..........................................................................................17

*In re LandAmerica §1031 Exch. Servs. Inc., IRS §1031 Tax Deferred Exch. Litig.*,
  No. 8:09-cv-00415, 2012 U.S. Dist. LEXIS 97933 (D.S.C. July 12, 2012) ...........................15

*In re Managed Care Litig.*,
  209 F.R.D. 678 (S.D. Fla. 2002), *aff'd in part, rev'd in part on other grounds, and
  remanded by Klay*, 382 F.3d 1241 (11th Cir. 2004) ...............................................................17

*In re Med. Capital Sec. Litig.*,
  No. SAML 10-2145 DOC (RNBx), 2011 U.S. Dist. LEXIS 126659
  (C.D. Cal. July 26, 2011) ......................................................................................................15

*In re Miva, Inc. Sec. Litig.*,
  No. 2:05-cv-201-FtM-29DNF, 2008 U.S. Dist. LEXIS 21108
  (M.D. Fla. Mar. 12, 2008)..........................................................................................14, 30

*In re Nassau Cnty. Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006)..................................................................................................33

*In re Recoton Corp. Sec. Litig.*,
  248 F.R.D. 606 (M.D. Fla. 2006)..........................................................................................11

*In re St. Jude Med., Inc.*,
  522 F.3d 836 (8th Cir. 2008) ................................................................................................34

*In re Terazosin Hydrochloride Antitrust Litig.*,
  220 F.R.D. 672 (S.D. Fla. 2004)......................................................................................29, 32

iv

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
 236 F.R.D. 62 (D.N.H. 2006) ..........................................................................................13

*In re Ulrich Felix Anton Engler*,
 No. 08-04360-9W7, Adv. No. 09-01026 (Bankr. M.D. Fla.) ..................................................26

*In re Ulrich Felix Anton Engler*,
 No. 9:08-bk-04360-MGW (Bankr. M.D. Fla.) ...................................................................9, 32

*In re World Vision Entm't, Inc.*,
 275 B.R. 641 (Bankr. M.D. Fla. 2002) ..............................................................................25

*Ingram v. Coca-Cola Co.*,
 200 F.R.D. 685 (N.D. Ga. 2001)......................................................................................24

*Jackson v. Motel 6 Multipurpose, Inc.*,
 130 F.3d 999 (11th Cir. 1997) ........................................................................................24

*Jenkins v. Raymark Indus.*, Inc.,
 782 F.2d 468 (5th Cir. 1986) ..........................................................................................33

*Katz v. MRT Holdings, LLC*,
 No. 07-61438-CIV-COHN/SELTZER, 2008 U.S. Dist. LEXIS 114421
 (S.D. Fla. Oct. 24, 2008) ...............................................................................................15

*Kennedy v. Tallant*,
 710 F.2d 711 (11th Cir. 1983) ........................................................................................16

*Kerr v. West Palm Beach*,
 875 F.2d 1546 (11th Cir. 1989) ......................................................................................24

*Khoday v. Symantec Corp.*,
 No. 11-180, 2014 U.S. Dist. LEXIS 43315 (D. Minn. Mar. 31, 2014) ..................................29

*Kirkpatrick v. J.C. Bradford & Co.*,
 827 F.2d 718 (11th Cir. 1987) ..............................................................................16, 17, 22

*Klay v. Humana, Inc.*,
 382 F.3d 1241 (11th Cir. 2004) .............................................................................. *passim*

*Kornberg v. Carnival Cruise Lines, Inc.*,
 741 F.2d 1332 (11th Cir. 1984) ......................................................................................14

*Marine Transp. Servs. Sea-Barge Group, Inc. v. Python High Performance Corp.*,
 16 F.3d 1133 (11th Cir. 1994) ........................................................................................25

v

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   672 F.3d 482 (7th Cir.), *cert. denied*, 133 S. Ct. 338 (2012).....................................34

*Mesa v. Ag-Mart Produce, Inc.*,
   No. 2:07-cv-47-FtM-34DNF, 2008 U.S. Dist. LEXIS 114037
   (M.D. Fla. Mar. 31, 2008)............................................................................... *passim*

*Mills v. Foremost Ins. Co.*,
   511 F.3d 1300 (11th Cir. 2008) .......................................................................8

*Murray v. Auslander*,
   244 F.3d 807 (11th Cir. 2001) .......................................................................13

*Olden v. LaFarge Corp.*,
   383 F.3d 495 (6th Cir. 2004) .......................................................................33

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)........................................................................................30

*Piazza v. Ebsco Indus.*,
   273 F.3d 1341 (11th Cir. 2001) .......................................................................8

*Powers v. Stuart-James Co.*,
   707 F. Supp. 499 (M.D. Fla. 1989).............................................................31

*Prado-Steiman v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ....................................................................11

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
   211 F.3d 1228 (11th Cir. 2000) .......................................................................7

*Santiago v. Wm. G. Roe & Sons, Inc.*,
   No. 8:07-CV-1786-T-27MAP, 2008 U.S. Dist. LEXIS 60761
   (M.D. Fla. May 15, 2008) ...................................................................13, 15, 32

*Schatzman v. Talley*,
   91 F.R.D. 270 (N.D. Ga. 1981).....................................................................17

*United States v. Bailey*,
   288 F. Supp. 2d 1261 (M.D. Fla. 2003), *aff'd*, 419 F.3d 1208 (11th Cir. 2005) ....................25

*Upshaw v. Ga. Catalog Sales, Inc.*,
   206 F.R.D. 694 (M.D. Ga. 2002) ....................................................................31

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) .......................................................................34

vi

*Veal v. Crown Auto Dealerships, Inc.*,
    236 F.R.D. 572 (M.D. Fla. 2006) ........................................................................16

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ..........................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. ___, 131 S. Ct. 2541 (2011) ......................................................8, 11, 12

*Walco Inv., Inc. v. Thenen*,
    168 F.R.D. 315 (S.D. Fla. 1996) ........................................................................15

*Wiand v. Lee*,
    No. 8:10-CV-210-T-17MAP, 2012 U.S. Dist. LEXIS 185004
    (M.D. Fla. Dec. 13, 2012) ..................................................................................26

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009) ..............................................................11, 13, 34

*Williams v. Wells Fargo Bank, N.A.*,
    280 F.R.D. 665 (S.D. Fla. 2012) ........................................................................28

## STATUTES, RULES AND REGULATIONS

USA PATRIOT Act
    §314(b) ............................................................................................................4

Federal Rules of Civil Procedure
    Rule 23 ...................................................................................................... *passim*
    Rule 23(a) ................................................................................................8, 9, 17
    Rule 23(a)(2) ........................................................................................11, 12, 13
    Rule 23(a)(3) ......................................................................................................16
    Rule 23(a)(4) ........................................................................................17, 21, 22
    Rule 23(c)(2) ......................................................................................................23
    Rule 23(b) ..................................................................................................8, 23
    Rule 23(b)(3) ............................................................................................. *passim*
    Rule 23(c)(4) ..............................................................................................33, 34
    Rule 23(g) ..................................................................................................21, 22
    Rule 23(g)(1)(A) ................................................................................................22
    Rule 23(g)(4) ......................................................................................................21

M.D. Fla. Local Rules
    L.R. 4.04 ............................................................................................................1
    L.R. 4.04(b) ......................................................................................................23

**SECONDARY AUTHORITIES**

Charles A. Wright, Arthur R. Miller & Mary K. Kane, FED. PRACTICE & PROCEDURE: CIVIL
§1765 (1986).............................................................................................................................17

MANUAL FOR COMPLEX LITIGATION, FOURTH §21.24 (Fed. Jud. Ctr. 2004) ...............................33

931447_1

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Local Rule 4.04, and the Court's March 31, 2014 Order [Doc. 206], Plaintiff Petra Richter ("Plaintiff" or "Mrs. Richter") respectfully moves for certification of the Class, as defined herein, appointment as Class representative, and appointment of Class Counsel ("Motion") and, in support thereof, states:

## I.    INTRODUCTION

This action and the claims asserted herein are eminently suited for class treatment because Wells Fargo Bank, N.A., as successor-in-interest to Wachovia Bank, N.A. ("Wells Fargo" or "Defendant") undertook uniform wrongful conduct to the detriment of each Class member.  Defendant knowingly rendered substantial assistance to Ponzi-schemer Ulrich Felix Anton Engler ("Engler") by processing numerous receipts and disbursements of investor funds – in the form of international wire transfers to and from Engler's Wells Fargo bank accounts – *after* learning of Engler's scam.  Wells Fargo, thereby, assisted Engler in stealing over $44 million from Plaintiff and similarly situated investors.  By allowing PCO Client Management, Inc.'s ("PCOM") Wells Fargo bank account numbers 2000031965057 and 2000028877271 ("Wells Fargo Accounts") to remain open notwithstanding Defendant's obvious knowledge of Engler's illegal activity, Defendant was able to generate fees for itself.

Plaintiff asserts claims against Wells Fargo for aiding and abetting fraud, aiding and abetting conversion, and unjust enrichment.  Each of these claims fits comfortably within the construct of Rule 23 because Defendant's conduct towards Plaintiff and the proposed Class was uniform and there are absolutely no individual issues with respect to any Class member.  This case is ideal for class certification.  Accordingly, and as more fully stated herein, Plaintiff moves this Court to certify the following Class under Rule 23:

1

931447_1

> All persons who invested funds with Ulrich Engler, Private Commercial Office, Inc., or PCO Client Management, Inc., suffered a loss therefrom, and whose funds were held in any of the PCOM Wells Fargo Accounts as of July 10, 2007 or anytime thereafter.

## II.     STATEMENT OF FACTS

### A.     Engler's Ponzi Scheme

Plaintiff invested with Engler, a German citizen who owned and purported to operate Private Commercial Office, Inc. ("PCO") as a highly profitable day trading and investment business based in this District. ¶25.[1] Engler solicited investments from individuals and entities primarily located in Europe by means of newspaper advertisements, telephone solicitations, and mails and wires. ¶26.

Engler falsely claimed that he was formerly employed by Chase Manhattan Bank for 21 years and that he held the position of Chief Trader for derivatives and bank guarantees for 10 years.  ¶27.  Using these and other misrepresentations, Engler purported to be a highly experienced investor with a long history of generating significant investment returns through "conservative" day trading activities on the stock exchange.  *Id.*  Engler further represented that he possessed sophisticated software capable of analyzing approximately 35,000 shares of stock every five seconds, allowing him to capture significant investment returns before other day traders or investment bankers.  *Id.*  Engler guaranteed annualized returns of 48% to 72% in his solicitations.  *Id.*

As part of the fraudulent scheme, Engler documented the victims' investments using purported promissory notes and loan agreements between PCO and Engler, as "Borrowers," and

---

[1] All citations to "¶__" refer to Plaintiff's Amended Class Action Complaint and Demand for Jury Trial ("Amended Complaint") [Doc. 24].

the investors, as "Lenders."  The documents provided that the "loan" was made payable, prior to May 2007, to the Borrower's order at a designated account at SunTrust Bank ("SunTrust").[2] After May 2007, once SunTrust closed the PCO SunTrust accounts, the "loan" was made payable in a similar fashion to the designated Wells Fargo Accounts.  ¶28.

Unbeknownst to Plaintiff and the Class, but known to Wells Fargo, Engler never engaged in day trading activities.  ¶29.  Instead, he used the funds paid by later investors to repay earlier investors (*i.e.*, a classic Ponzi scheme) and to pay for lavish personal expenses.  *Id.*  On December 4, 2007, the County Court of Mannheim, Germany issued an international warrant for Engler's arrest.  ¶30.  Then, on April 21, 2008, the Public Prosecutor's Office of Mannheim, Germany issued a request for Engler's arrest and extradition to the United States Government. ¶31.  Engler remained a fugitive from justice until July 2012, when he was arrested in Las Vegas, Nevada.  Engler was subsequently extradited to Germany, where he pled guilty and received a lengthy prison sentence.[3]

### B.   Wells Fargo Had Actual Knowledge that PCOM's Wells Fargo Accounts Were Being Used for Fraudulent Activity

Immediately after SunTrust closed the PCO accounts because of suspicious activity, on or about ***May 29, 2007***, Engler's recently indicted co-conspirator Angelika Fuchs ("Fuchs") quickly moved Class member funds into two new PCOM accounts at Wells Fargo.  ¶46.  At this time, Wells Fargo learned from Fuchs, a German national, and therefore had actual knowledge that Fuchs was associated with Engler, that PCO was the sole client of PCOM, and that PCOM

---

[2]  Initially, Engler utilized accounts at SunTrust to operate his Ponzi scheme.  In approximately June 2007, SunTrust closed the PCO accounts, and the funds from those accounts were transferred to the Wells Fargo Accounts.

[3]  *See* http://www.dailymail.co.uk/news/article-2180139/Ulrich-Engler-German-fugitive-wanted-100m-pyramid-scheme-arrested-Vegas.html; http://in.reuters.com/article/2013/03/05/german-ponzi-conviction-idINL6N0BXJPR20 130305.

purported to conduct billing services for PCO from the same mail box located inside a UPS store

in Cape Coral, Florida as PCO.  Shortly after Fuchs opened the Wells Fargo Accounts with Class

member money withdrawn from SunTrust, on or about **June 8, 2007**, Wells Fargo received a

314(b) notification from SunTrust.  The 314(b) notice included a Warning Notification letter

from the Austrian Financial Market Authority ("AFMA") concerning Engler, which prompted

Wells Fargo to immediately open a "high priority" investigation.  ¶47.[4]  The AFMA Warning

Notification letter received by Wells Fargo stated, among other things, that PCO and Engler,

doing business out of "1217 Cape Coral Pkwy, #121, Cape Coral, Florida 33904, USA," were

"not entitled to provide investment advice concerning client funds [or] manage client portfolios,"

and warned "against doing any financial services business" with PCO and Engler.  ¶48.

The Section 314(b) notification from SunTrust to Wells Fargo was made pursuant to the

USA PATRIOT Act.[5]  According to Wells Fargo's own internal investigation, the 314(b) notice

further stated as follows:[6]

> "[Wells Fargo AML investigator Kevin] Scott advised Sun Trust received
> ***negative news on their customer Private Commercial Office and that their***
> ***customer issued a check that was deposited into a client's Wachovia account,***
> ***PCO Client Management Inc in the amount of $7,000,000 on June 1, 2007***.
> Private Commercial Office was the subject of a warning notification letter
> submitted by the Austrian Financial Market Authority following complaints
> received by investors in that country.  Scott also advised Sun Trust had not been
> able to identify any specific BSA violations but recent activity with the client has
> led to increased suspicious.  Their customer receives about $24 million in foreign
> wires, mainly from Austria and Germany each month which is then wired out to
> individuals.  The company claims to be a stock day trading/investment company.

---

[4] *See* Declaration of Stuart A. Davidson, Esq. ("Davidson Declaration" or "Davidson Decl."), submitted herewith, **Ex. A**.

[5] Section 314(b) of the USA PATRIOT Act permits, but does not mandate, financial institutions to share information with one another in order to identify and report to the federal government ***activities that may involve money laundering or terrorist activity***.

[6] *See* Davidson Decl., **Ex. B**.

The first address Ulrich Engler, the owner of the business gave for the business was actually the address of a UPS Store.  He was asked for an updated address.  The new address turned out to be a private residence owned by a family who had been there for several years.  He was sent a list of questions to answer about the nature of the business but has not answered.  ***Sun Trust requested Wachovia share any information found regarding the client that might be deemed suspicious*** . . . .”

¶43.

About one month later, on ***July 10, 2007***, an internal Wells Fargo email between two employees stated, “[Fuchs] may have been forced out of the other bank [SunTrust] due to the same information we received.”[7]  On the same day, as a result of Wells Fargo’s clear knowledge of Engler’s illegal activities,[8] Wells Fargo sent a letter to PCOM stating that PCOM’s Wells Fargo Accounts would be involuntarily closed by August 21, 2007, if they were not voluntarily closed by PCOM prior to such date.[9]  ¶49.  Then on July 16, 2007, a Wells Fargo employee admitted in an internal email that Engler was “filtering [funds] through Angelika’s [Fuchs] company to cover it up.”[10]   Despite Wells Fargo’s actual knowledge by at least July 10, 2007, that Fuchs was utilizing PCOM’s Wells Fargo Accounts to help Engler perpetrate his fraud, and Wells Fargo’s expressed intention to close the accounts by no later than August 21, 2007, Wells Fargo made the conscious decision to keep PCOM’s Wells Fargo Accounts open until at least ***January 2, 2008***.[11]  ¶50.  Wells Fargo kept PCOM’s accounts open so that Wells Fargo could

---

[7] *See* Davidson Decl., **Ex. C**.
[8] Plaintiff’s banking expert, Catherine Ghiglieri, testified at deposition, consistent with her expert report, that July 10, 2007 was the date when Wells Fargo “put the dots together” between Engler’s fraud and the PCOM accounts at the bank, and, thus, obtained “actual knowledge” of Engler’s fraud.  *See* Excerpts from Deposition of Catherine Ghiglieri on March 13, 2014, at 146-151, attached to the Davidson Declaration as **Ex. D**.  For this reason, the Class Period in this case begins on July 10, 2007.
[9] *See* Davidson Decl., **Ex. E**.
[10] *See* Davidson Decl., **Ex. F**.
[11] *See* Davidson Decl., **Ex. G**.

931447_1

"clear up any wire issues" and ensure collection of transaction/service fees owed to Wells Fargo, which, on information and belief, averaged $30,000 per month.  ¶¶50, 57.  Wells Fargo also allowed Fuchs to open two personal accounts at the bank (*after* it learned of the fraud). Incredibly, Wells Fargo also assisted Fuchs in transferring nearly $1 million in stolen Class member money from the PCOM accounts to her personal accounts, which were not closed until late May 2008.[12]

Wells Fargo's own Investigations Case Summary (dated July 10, 2007) provides further explanation of what Wells Fargo knew about the fraud by that date: (1) the PCOM accounts at Wells Fargo were funded entirely by transfers from PCO and international wire transfers (many from the same countries referenced in the AFMA Warning Notification letter); (2) there were 1,675 wire transfers from the accounts totaling $10,301,639.13 and 14 transfers into the accounts totaling $10,193,745.88 ***during the month of June 2007 alone***; and (3) there were 1,701 wire transfers from the accounts totaling $8,914,329.14 and 61 credits into the accounts totaling $8,803,937.29 ***in the first ten days of July 2007***.[13]  ¶54.

By the time PCOM's Wells Fargo Accounts were finally closed on January 2, 2008, and Fuchs' personal accounts were closed around May 23, 2008, over $44 million in Class member funds had disappeared – all after the time Wells Fargo had actual knowledge that it was providing substantial assistance to a massive fraud.  Plaintiff and similarly situated victims seek to hold Defendant liable.

---

[12] *See* Davidson Decl., **Composite Ex. H**.
[13] *See* Davidson Decl., **Ex. B**.

### III.     ARGUMENT

#### A.     Standards for Class Certification

Rule 23 governs class certification, and plaintiffs seeking class certifications have the burden of proof. *Bush v. Calloway Consol. Grp. River City, Inc.*, No. 3:10-cv-841-J-37MCR, 2012 U.S. Dist. LEXIS 40450, at *7 (M.D. Fla. Mar. 26, 2012) (Dalton, J.); *see also Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000). "The question of whether to certify a class is left to the sound discretion of the district court."[14] *Mesa v. Ag-Mart Produce, Inc.*, No. 2:07-cv-47-FtM-34DNF, 2008 U.S. Dist. LEXIS 114037, at *7 (M.D. Fla. Mar. 31, 2008) (Howard, J.) (citing *Cooper v. S. Co.*, 390 F.3d 695, 711 (11th Cir. 2004)).

For purposes of class certification, the Court takes the factual allegations of the complaint as true. *See Castillo v. N&R Servs. of Cent. Fla., Inc.*, No. 8:07-cv-1804-T-26EAJ, 2008 U.S. Dist. LEXIS 36882, at *5-*6 (M.D. Fla. May 1, 2008) (Lazarra, J.); *see also In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 671 (S.D. Fla. 2012). "To determine whether a class should be certified in this case, the Court must not decide the merits of the claim." *Gaalswyk-Knetzke v. The Receivable Mgmt. Servs. Corp.*, No. 8:08-cv-493-T-26TGW, 2008 U.S. Dist. LEXIS 1243822, at *5 (M.D. Fla. Aug. 14, 2008); *Cooper,* 390 F.3d at 712. "A trial court should not determine the merits of the claims at the class certification stage, however, the trial court can consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Mesa*, 2008 U.S. Dist. LEXIS 114037, at *9-*10

---

[14] Unless indicated otherwise, citations, internal quotations, and footnotes are omitted and emphasis is added.

931447_1

(quoting *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006)).[15]

Even when the Court "probe[s] behind the pleadings," Plaintiff has marshaled ample record evidence, even at this stage of litigation, supporting each of Rule 23's elements. *Dukes*, 564 U.S. __, 131 S. Ct. at 2551-52 ("[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, . . . [which] generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008).

"To certify a class pursuant to Rule 23, the Court must first determine whether the class representative possesses standing the [sic] assert his or her own claim." *Gaalswyk-Knetzke*, 2008 U.S. Dist. LEXIS 124382, at *2. Next, a plaintiff must prove the four requirements of Rule 23(a) and at least one of the standards of Rule 23(b) that is appropriate to the relief sought. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008). The four prerequisites of Rule 23(a) have commonly been referred to as "numerosity, commonality, typicality, and adequacy of representation." *Franze v. Equitable Assurance*, 296 F.3d 1250, 1253 (11th Cir. 2002) (quoting *Piazza v. Ebsco Indus.*, 273 F.3d 1341, 1346 (11th Cir. 2001)). Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions, and that class treatment is superior to other available methods of adjudication. *See Gaalswyk-Knetzke*, 2008 U.S. Dist. LEXIS 124382, at *3. Four factors courts consider with respect to

---

[15] *See also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("Although we have cautioned that a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S. Ct. 2541 (2011), Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

Rule 23(b)(3), which are not exhaustive, include: (1) the class members' interests in prosecuting

their case individually; (2) the extent and nature of already started litigation by class members;

(3) the desirability of concentrating the litigation in this particular forum; and (4) the potential

difficulties in managing a class action. *Checking Account Overdraft*, 281 F.R.D. at 676.

**B.      Plaintiff and This Case Satisfy the Requirements of Rule 23(a)**

**1.      The Class Is so Numerous that Joinder of All Members Is Impracticable**

The Eleventh Circuit has held that while there are no fixed rules regarding numerosity,

"[g]enerally, a class should have no fewer than 21 members and will satisfy the numerosity

requirement if it has more than 40." *Bush*, 2012 U.S. Dist. LEXIS 40450, at *19 (citing *Vega v.

T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009)).  "Parties seeking class certification

do not need to know the precise number of class members, but they must make reasonable

estimates with support as to the size of the proposed class." *Checking Accounting Overdraft*,

281 F.R.D. at 672 (citing *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla.

2000)).

Here, Plaintiff is able, with near certainty, to determine the size of the Class.  As stated

above, while in possession of actual knowledge of Engler's illegal activities, Defendant allowed

the Wells Fargo Accounts to remain open, and continued to process millions of dollars in

international wire transfers of funds received from the Class in order to generate substantial

transaction and service fees.  With these facts in mind, Plaintiff utilized the services of a forensic

accounting expert, Soneet R. Kapila, who conducted an extensive review of approximately

29,000 transactions and proof of claim forms filed in the bankruptcy case styled, *In re Ulrich

Felix Anton Engler*, No. 9:08-bk-04360-MGW (Bankr. M.D. Fla.) ("Engler Bankruptcy

Action").[16]  Plaintiff concludes there are at least 1,770 members of the Class.[17]  In fact, the

Kapila Declaration includes a spreadsheet identifying each net investor in the Engler Ponzi

scheme and their loss.[18]  Thus, the number of Class members here well exceeds the Eleventh

Circuit's thresholds.  *See In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK,

slip op. (S.D. Fla. May 16, 2012) (recognizing an expert's mining of defendant's data as a means

of determining class members and for calculating damages).  *See* Davidson Decl., **Ex. J**.[19]

Moreover, Plaintiff and Class members are geographically dispersed and located

throughout Europe, making joinder of claims impracticable.  *Bruhl v. PriceWaterhouseCoopers

Int'l*, 257 F.R.D. 684, 688 (S.D. Fla. 2008) (numerosity satisfied where class members were

located in Hong Kong, Cyrus, Great Britain, France, Canada, Switzerland, the United States,

Luxembourg, Bermuda, Ireland, and the Bahamas, making joinder impracticable).  Based on the

number of Class members and the fact that they are geographically dispersed, individual joinder

is impracticable, and this case satisfies Rule 23(a)'s numerosity requirement.

---

[16] *See* Declaration of Soneet R. Kapila in Support of Plaintiff's Second Amended Motion for Class Certification ("Kapila Declaration" or "Kapila Decl."), attached to the Davidson Declaration as **Ex.  I**.

[17] *See id.*

[18] *See id.*, Ex. 1.

[19] Courts have allowed the use of similar methodologies in ascertaining members of the class for class certification purposes. *See Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1138 (N.D. Cal. 2010) (finding expert's methodology to be "professional and careful" and concluding that he has convincingly identified the class members and isolated the amounts that were wrongfully taken from the class), *aff'd and rev'd in non-relevant part*, 704 F.3d 712 (9th Cir. 2012); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 672-73 (S.D. Fla. 2011); *In re Diet Drugs Prods. Liab. Litig.*, No. 98-20626, 1999 U.S. Dist. LEXIS 13228, at *34-*35 (E.D. Pa. Aug. 26, 1999) (finding class definition was adequate because there were reliable means to determine who had actually taken the drug where fact sheets, prescription records, and records of medical treatment were available to verify consumption).

**2.      There Are Questions of Law and Fact Common to Each Member of the Class**

Rule 23(a)'s second requirement is that class members share common questions of law or fact. *Bush*, 2012 U.S. Dist. LEXIS 40450, at *31. "The threshold for commonality is not high." *In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 618 (M.D. Fla. 2006) (Antoon, J.). Commonality pertains to the characteristics of the class as a whole, unlike typicality which refers to the individual characteristics of the class representative as compared to those of the class members. *Gaalswyk-Knetzke*, 2008 U.S. Dist. LEXIS 124382, at *7; *see also Prado-Steiman v. Bush*, 221 F.3d 1266, 1278-79 (11th Cir. 2000). Commonality measures the extent to which all members of a putative class have similar claims. *Mesa*, 2008 U.S. Dist. LEXIS 114037, at *16.

Commonality requires an assessment of whether plaintiffs' claims raise at least one question of law or fact common to the members of the class. Fed. R. Civ. P. 23(a)(2); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Commonality will be satisfied where questions of law refer to standardized conduct by the defendant toward members of the proposed class. *Checking Accounting Overdraft*, 281 F.R.D. at 674. Establishing commonality, however, does not require complete identity of plaintiffs' claims. *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992). More specifically, "it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). The Eleventh Circuit has held that factual differences concerning treatment of damages will not defeat a finding of commonality. *Id.* at 1259-60 (individualized damage determinations are "insufficient to defeat class certification").

In *Dukes*, the Supreme Court explained that, for commonality, class members' claims:

931447_1

must depend upon a common contention . . . [which] must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

131 S. Ct. at 2551.

This case easily satisfies Rule 23(a)(2)'s commonality requirement.  Plaintiff's claims raise several questions of law and fact common to each member of the Class that justify class treatment, including the following:

(a)      whether Wells Fargo aided and abetted Engler's and/or PCOM's conversion of the Class member's funds;

(b)      whether Wells Fargo aided and abetted the fraud Engler and/or PCOM perpetrated on the Class members;

(c)      whether Wells Fargo was unjustly enriched; and

(d)      whether Wells Fargo should be ordered to disgorge any and all monies unlawfully obtained in connection with its failure to terminate PCOM's Wells Fargo Accounts.

*See*, *e.g.*, ¶61.

Here, all Class members lost money when they either invested in or paid money to Engler/PCO's SunTrust accounts that was then transferred into PCOM's Wells Fargo Accounts or deposited money directly into PCOM's Wells Fargo Accounts.  The Class includes those persons whose monies were in PCOM's Wells Fargo Accounts at the time Wells Fargo gained actual knowledge of the Ponzi scheme – July 10, 2007.  The core issues center around Defendant's aiding and abetting Engler's Ponzi scheme.  The question of whether Defendant knowingly provided substantial assistance to Engler's fraud is common across the Class.  Plaintiff's substantive allegations, which must be accepted here as true, demonstrate a mutuality between her claims and the claims of the Class members, thereby satisfying Rule 23's

commonality requirement. *See Santiago v. Wm. G. Roe & Sons, Inc.*, No. 8:07-CV-1786-T-27MAP, 2008 U.S. Dist. LEXIS 60761, at \*7 (M.D. Fla. May 15, 2008) (taking substantive allegations as true and certifying a class of approximately 82 foreign national agricultural workers under Rule 23) (Pizzo, M.J.); *Checking Account Overdraft*, 281 F.R.D. at 674 (plaintiffs satisfy the commonality requirement by "alleging and providing significant evidence that TD Bank uniformly manipulated and re-ordered debit card transactions to increase the number of overdraft fees").

"These common questions are sufficient to satisfy the low hurdle of Rule 23(a)(2)." *Williams*, 568 F.3d at 1356. Plaintiff's allegations demonstrate that Class members were all aggrieved by a common course of conduct (Defendant's knowing substantial assistance to Engler's operation of the Ponzi scheme), and Plaintiff's claims are based on the exact same legal theories. *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) ("Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof."); *Checking Account Overdraft*, 281 F.R.D. at 677 ("varying degrees of knowledge among class members do not present an obstacle to class certification where other common issues unite the class") (citing *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 236 F.R.D. 62, 70 (D.N.H. 2006)).

**3.     Plaintiff's Claims Are Typical of Those of the Class**

Rule 23(a)'s typicality requirement ensures that class representatives have the same interests as the class or suffer the same injury as other class members. *Williams*, 568 F.3d at 1356-57; *Mesa*, 2008 U.S. Dist. LEXIS 114037, at \*13-\*14. "The main focus of the typicality requirements is that the plaintiffs will advance the interests of the class members by advancing their own interests." *Mesa*, 2008 U.S. Dist. LEXIS 114037, at \*13-\*14. That is, "[t]ypicality

measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Busby*, 513 F.3d at 1322; *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  Similarly, typicality does not require that all putative class members share identical claims; rather, it is only required that the named plaintiff's claims have the same essential characteristics as the class at large because "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).  The typicality requirement is generally met if the class representative and class members experienced the same unlawful conduct, irrespective of whether the fact patterns underlying each claim vary. *Castillo*, 2008 U.S. Dist. LEXIS 36882, at *9 ("Even if the fact patterns are unique to each claim, the typicality requirement will be satisfied if the class representative and class members experienced the same unlawful conduct.").  The typicality requirement, like commonality is not demanding. *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) (Schlesinger, J.).

In many instances, "[t]he proof of typicality and commonality often tend to merge." *Gaalswyk-Knetzke*, 2008 U.S. Dist. LEXIS 124382, at *7.  Further, typicality and commonality "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *In re Miva, Inc. Sec. Litig.*, No. 2:05-cv-201-FtM-29DNF, 2008 U.S. Dist. LEXIS 21108, at *10 n.2 (M.D. Fla. Mar. 12, 2008) (Steele, J.).

14

931447_1

Here, there is no question that Plaintiff's claims satisfy Rule 23's typicality requirement. Plaintiff and the other Class members seek identical remedies under identical legal theories, and there is no opposition or material factual variation between Plaintiff's claims and those of the other Class members. *Bush*, 2012 U.S. Dist. LEXIS 40450, at *25 ("On this basis alone courts have found typicality exists."); *Checking Accounting Overdraft*, 281 F.R.D. at 675 (finding typicality because plaintiffs' claims arose out of the same course of conduct and were based on the same legal theories as those of absent class members); *Santiago*, 2008 U.S. Dist. LEXIS 60761, at *10 (certifying class where claims arose from same conduct, breach of contract, as plaintiffs' claims and were based on same legal theories).

Indeed, courts routinely certify classes of victims of Ponzi schemes, such as here. *See, e.g.*, *Katz v. MRT Holdings, LLC*, No. 07-61438-CIV-COHN/SELTZER, 2008 U.S. Dist. LEXIS 114421 (S.D. Fla. Oct. 24, 2008); *Bruhl*, 257 F.R.D. 684; *Walco Inv., Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996); *Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 U.S. Dist. LEXIS 113491 (M.D. Fla. Nov. 19, 2009) (granting conditional certification of class of Ponzi scheme victims for settlement purposes) (Merryday, J.); *Facciola v. Greenberg Traurig, LLP*, 281 F.R.D. 363 (D. Ariz. 2012); *Carroll v. Stettler*, No. 10-2262, 2011 U.S. Dist. LEXIS 121171 (E.D. Pa. Oct. 19, 2011); *In re Med. Capital Sec. Litig.*, No. SAML 10-2145 DOC (RNBx), 2011 U.S. Dist. LEXIS 126659 (C.D. Cal. July 26, 2011); *In re Beacon Assocs. Litig.*, No. 09 Civ. 777 (CM), 2013 U.S. Dist. LEXIS 82192 (S.D.N.Y. May 9, 2013) (certifying a settlement class in relation to investments made in the Madoff Ponzi scheme); *In re LandAmerica §1031 Exch. Servs. Inc., IRS §1031 Tax Deferred Exch. Litig.*, No. 8:09-cv-00415, 2012 U.S. Dist. LEXIS 97933 (D.S.C. July 12, 2012).

Additionally, absent Class members would have to prove identical facts if they pursued their claims individually.  If any plaintiff is to recover, he/she will be required to show that Wells Fargo caused him/her damages by failing to take proper steps to avoid aiding and abetting conversion and fraud, based on the same factual premises as all absent Class members.  As discussed above, Plaintiff and the Class seek identical relief for each claim.  For each of these claims, Defendant committed the same uniform unlawful conduct: *to-wit*, armed with actual knowledge of Engler's, PCO's, and PCOM's (collectively, the "Engler Entities") fraudulent conduct, Defendant continued to process numerous receipts and disbursements of Class member funds in the form of international wire transfers to and from the Wells Fargo Accounts, and thereby permitted Engler to take more than $44 million from investors.  As previously stated, Defendant had actual knowledge that the Engler Entities were engaged in fraudulent activity and provided substantial assistance in allowing the Wells Fargo Accounts to remain open once Defendant acquired that knowledge.

Like absent Class members, Plaintiff invested with Engler by wiring money into a Wells Fargo Account.  Plaintiff is not subject to any unique defenses rendering her atypical.  There is no doubt that Plaintiff's investment with Engler, which was wire transferred into a PCOM Wells Fargo Account for the benefit of Engler, is typical of those of other Class members.

Because Plaintiff seeks to prove Defendant "committed the same unlawful acts in the same method against an entire class [which means that] all members of this class have identical claims," Rule 23(a)(3)'s typicality requirement is satisfied.  *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983); *accord Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722-25 (11th Cir. 1987); *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577 (M.D. Fla. 2006) (finding

16

931447_1

typicality satisfied, and noting "factual differences among the claims of the putative class members do not defeat certification").

**4.    Plaintiff Will Fairly and Adequately Represent the Class
and Plaintiff's Counsel Should Be Appointed Class Counsel**

The final prerequisite of Rule 23(a) requires a showing that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).  What constitutes adequate representation is a question of fact depending upon the circumstances of each case and is to the discretion of the trial court.  *See* 7A Charles A. Wright, Arthur R. Miller & Mary K. Kane, FED. PRACTICE & PROCEDURE: CIVIL §1765, at 271 (1986); *Kirkpatrick*, 827 F.2d at 728; *Schatzman v. Talley*, 91 F.R.D. 270, 272 (N.D. Ga. 1981).  Rule 23(a)(4)'s adequacy requirement encompasses two elements: (1) the proposed class representative has interests in common with and not antagonistic to the interests of the class; and (2) the plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation.  *Kirkpatrick*, 827 F.2d at 726; *see also Gaalswyk-Knetzke*, 2008 U.S. Dist. LEXIS 124382, at *8-*9.[20]  "This requirement serves to uncover any conflict of interest that named parties may have with the class they represent."  *Mesa*, 2008 U.S. Dist. LEXIS 114037, at *21.  Minor conflicts do not defeat certification.  *Id.*

Here, Plaintiff satisfies both prongs of Rule 23(a)(4)'s adequacy test.  Plaintiff does not have any interests antagonistic to the Class, and Plaintiff is willing and able to vigorously

---

[20] *See also In re Managed Care Litig.*, 209 F.R.D. 678, 685 (S.D. Fla. 2002), *aff'd in part, rev'd in part on other grounds, and remanded by Klay*, 382 F.3d 1241 (certifying class of healthcare providers outside of securities context, and relying on *Kirkpatrick* for adequacy analysis); *In re Ins. Mgmt. Solutions Group, Inc., Sec. Litig.*, 206 F.R.D. 514, 517 (M.D. Fla. 2002) (citing *Kirkpatrick* and holding that "courts look more at the willingness of the class representative to participate in the action.  This willingness, however, may be expressed merely by the class representative's compliance with discovery requests such as answering interrogatories or showing up for a deposition and answering questions.").

17

prosecute this action on the Class' behalf, as she has plainly demonstrated thus far.[21]  Plaintiff's

interests, in fact, are directly aligned with the Class'.[22]  Plaintiff, like all Class members, was

injured as a result of Defendant's failure to close the Wells Fargo Accounts once they obtained

actual knowledge that the Engler Entities were engaged in fraudulent conduct.[23]  *See Checking*

*Account Overdraft*, 281 F.R.D. at 675 ("Each representative Plaintiff, like each absent class

member, has a strong interest in proving TD Bank's scheme, establishing its unlawfulness,

demonstrating the impact of the illegal conduct and obtaining redress.").  Proof of Plaintiff's

claims will establish the same issues of law and fact as the claims of the Class as a whole.

Plaintiff and the Class have precisely the same interest in achieving the maximum recovery.

### a.     Plaintiff Flew 5,000 Miles from Germany to Be Deposed, and Her Testimony Leaves No Doubt as to Her Adequacy

Plaintiff, a 72-year-old woman from Berlin, Germany, graduated from the University of

the Arts in Berlin, and is an accomplished architect and licensed engineer.[24]  Along with her

husband, Klaus Richter (also a licensed engineer), Mrs. Richter owns and is the Managing

Director of a company in Berlin, Germany, and serves as a government-approved expert in fire

prevention for new and existing construction.[25]  The certificates her company issues to builders

throughout Germany guarantees that their buildings are compliant with local and state fire

---

[21] *See, e.g.*, Declaration of Plaintiff Petra Richter, ¶15, attached to the Davidson Declaration as **Ex. K**.

[22] *Id.*, ¶14.

[23] *Id.*, ¶11.

[24] *See* Excerpts from Transcript of Deposition of Petra Richter on March 6, 2014 ("Richter Dep.") at 17:14-15, 25:4-6, attached to the Davidson Declaration as **Ex. L**.

[25] *Id.* at 19:14-15, 51:1-12.  The Richters' company is only one of three companies in Germany authorized to certify buildings for compliance with fire codes.  *Id.* at 54:9-17.

931447_1

prevention codes and regulations.[26]  She also prepares expert reports for her clients concerning whether their buildings comply with regulations.[27]  Mrs. Richter travels throughout Germany 20 out of 30 days every month.[28]

As Mrs. Richter further testified, she is intimately familiar with this case, understands her obligations to the Class, and, notwithstanding her busy work schedule and the fact that her work accounts for 70% of her company's revenue,[29] she is committed to seeking justice for all of Engler's victims.

*First*, Mrs. Richter flew 5,000 miles from Germany to meet with her attorneys and subsequently be deposed by defense counsel for 10 hours on March 6, 2014, and to attend mediation on March 7, 2014 (which Wells Fargo and its counsel abruptly left).

*Second*, as Mrs. Richter testified in her deposition, she has stayed in constant contact with her lawyers from Germany, who translated court papers for her from English to German,[30] including her interrogatories and verifications,[31] complaints,[32] motions for class certification, and declarations.[33]

*Third*, as she further testified, Mrs. Richter is aware that the trial of this case is scheduled for August 2014[34] and, notwithstanding her work commitments to her company, has emphatically stated that she will do whatever she needs to do to be present for the trial, even if it

---

[26] *Id.* at 51:3-12, 52:5-12.
[27] *Id.* at 52:13-23.
[28] *Id.* at 51:20-25.
[29] *Id.* at 55:22-56:1.
[30] *Id.* at 227:5-9.
[31] *Id.* at 171:23-172:1, 180:2-5.
[32] *Id.* at 187:19-188:20.
[33] *Id.* at 190:4-11.
[34] *Id.* at 58:15-23.

931447_1

means taking two-to-three weeks off.[35]  As Mrs. Richter testified, "I will do that . . . because I'm so mad!"[36]

**Fourth**, Mrs. Richter testified that she reviewed the Amended Complaint before it was filed, after she received a copy in German, and would only agree to be a class representative because she believed everything in the Amended Complaint to be true.[37]

**Fifth**, Mrs. Richter completely understands that her interests in the case are tied directly to the interests of all other Engler investors, and that she is not interested in protecting only herself in this case.  She undoubtedly understands that her obligations as a plaintiff are to the Class and not just herself.  She further understands that she is entitled to no special treatment by serving as the Class representative, and personally seeks to recover only her $6,500 investment with Engler.[38]

Moreover, although general knowledge of the case is all that is required by a class representative, *see supra* at 22, Mrs. Richter demonstrated at deposition that she has much more than just a general knowledge of this case.  For example, Mrs. Richter understands that: (a) the trial is scheduled for August 2014;[39] (b) the Bankruptcy Trustee is Mr. Tardif, who she receives regular email updates from;[40] (c) Fuchs was the Manager of PCOM and "was in on the fraud";[41] (d) Engler committed a Ponzi scheme, which she learned about in or around November 2007 from the prosecutor's office, news stories, and the fact that she stopped receiving account

---

[35] *Id.* at 56:3-12.
[36] *Id.* at 58:20-23.
[37] *Id.* at 187:19-188:20.
[38] *Id.* at 200:9-11, 202:6-9, 222:15-223:7.
[39] *Id.* at 58:15-23.
[40] *Id.* at 106:6-13.
[41] *Id.* at 133:14-20, 169:14-17, 218:14-20.

statements;[42] (e) she is a victim of Engler's Ponzi scheme;[43] (f) Wells Fargo's liability stems from its failure to close the Engler accounts and keeping them open after it learned of the fraud, so that Wells Fargo could "enrich[]" itself;[44] (g) Wells Fargo was a "participant . . . in the fraud" committed by Engler;[45] (h) Wells Fargo made an investigation of Engler, and "found . . . there was criminal activity";[46] (i) Wells Fargo "is Wachovia" (*i.e.*, Wells Fargo is the successor to Wachovia);[47] (j) she made her deposits directly to Wachovia; (k) her own documents show the relationship between Engler and PCOM (notwithstanding Wells Fargo's claim that Fuchs, not Engler, controlled PCOM);[48] and (l) both Engler and Wells Fargo are responsible to her and the Class.[49]

Mrs. Richter is the quintessential class representative, and her adequacy has been demonstrated in spades.

### b.    Class Counsel Are Clearly Adequate

Furthermore, proposed Class Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Mandel & Mandel LLP ("Mandel & Mandel"), will vigorously prosecute this action.  Indeed, Plaintiff's counsel have vigorously prosecuted this action since its inception and will continue to do so through trial and appeals.

In addition to satisfying Rule 23(a)(4)'s adequacy prong, Plaintiff's counsel also satisfy the considerations of Rule 23(g) and should be appointed as Class Counsel.  Rule 23(g)(4)

---

[42] *Id.* at 110:24-112:3, 157:24-158:3, 159:25-160:10.
[43] *Id.* at 12:10-12.
[44] *Id.* at 207:15-21.
[45] *Id.*
[46] *Id.* at 208:10-16.
[47] *Id.* at 209:2-4.
[48] *Id.* at 210:5-10.
[49] *Id.* at 213:2-8.

requires the Court to appoint counsel who will fairly and adequately represent the Class.  In appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

Concerning adequacy of representation, the Eleventh Circuit has noted that "adequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class." *Kirkpatrick*, 827 F.2d at 727.  Even though Plaintiff herself is clearly adequate, the focus should be on whether Plaintiff's counsel exhibits the desire and expertise to prosecute a class action vigorously.  *Id.* at 726-27.  As demonstrated by its firm resume (*see* Davidson Decl., **Ex. M**), Robbins Geller is comprised of highly competent lawyers who possess substantial experience in litigating class actions on behalf of aggrieved investors and consumers, and the firm is adequately prepared to continue to prosecute this action.

To be sure, Robbins Geller – the largest class action firm in the nation – has extensive experience in the prosecution and successful resolution of complex class actions in courts in this District and throughout the United States.  Moreover, Robbins Geller has demonstrated its willingness to commit substantial resources to representing the Class through its efforts in prosecuting this action to date.  As such, there should be no question about the competence of counsel to fairly and adequately represent the interests of the Class, and the requirements of Rule 23(a)(4) and Rule 23(g) are satisfied.

931447_1

Moreover, Mandel & Mandel also brings special expertise to this matter.  The firm has class action experience and its practice focuses primarily on complex commercial litigation. Mandel & Mandel was also trial counsel in another recent case where a bank aided and abetted a Ponzi scheme.  *See Coquina Invs. v. Rothstein*, No. 10-60786-Civ-COOKE/BANDSTRA (S.D. Fla.).  In 2012, the firm obtained the largest federal jury verdict in the State of Florida ($67,000,000) in the *Coquina* case.  *See* Davidson Decl., **Ex. N** (online resumes of David S. Mandel and Nina Stillman Mandel of Mandel & Mandel).

### C.     Plaintiff Satisfies the Requirement of Rule 23(b)(3)

In addition to meeting Rule 23(a)'s requirements, this action satisfies the requirements of Rule 23(b), which states that common questions of law or fact predominate over individual questions, and that class action treatment is superior to other available methods of adjudication. As set forth below, this case meets all criteria set forth in Rule 23(b)(3).

Further, Local Rule 4.04(b) states that "[i]f a determination is sought that the action shall be maintained under Rule 23(b)(3), the motion shall also suggest a means of providing, and defraying the cost of, the notice required by Rule 23(c)(2), Fed.R.Civ.P."  In this action, Plaintiff recommends serving notice by mailing this Court's Order on this Motion directly to each member of the Class.  Plaintiff does not anticipate manageability problems with providing adequate notice to Class members.  Indeed, Plaintiff is also represented by legal counsel in Germany, Dr. Annerose Tashiro of the international law firm of Schultze & Braun,[50] who will assist Robbins Geller and Mandel & Mandel in all efforts relating to providing notice.

---

[50] *See* Firm Biography of Dr. Annerose Tashiro, *available at* http://www.schubra.de/en/aboutschubra/ ap_profil.php?id=3724 (last visited April 3, 2014).

23

### 1.      Common Questions of Law or Fact Predominate

Rule 23(b)(3) requires that common questions of law and fact predominate over questions affecting individual members.  "Predominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." *Gaalswyk-Knetzke*, 2008 U.S. Dist. LEXIS 124382, at *10-*11 (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (quoting *Kerr v. West Palm Beach*, 875 F.2d 1546, 1557-58 (11th Cir. 1989))); *Mesa*, 2008 U.S. Dist. LEXIS 114037, at *23.  The predominance requirement under Rule 23(b)(3) is more demanding than Rule 23(a)'s commonality requirement. *See Gaalswyk-Knetzke*, 2008 U.S. Dist. LEXIS 124382, at *10-*11.  "The existence of some individual questions, however, will not nullify the predominance of issues common to the group as a whole." *Id*.  Common issues of fact and law predominate if they have a "direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001).  Indeed, "[i]t is primarily when there are significant individualized questions going to liability exist [sic] that the need for individualized assessments . . . is enough to preclude 23(b)(3) certification." *Klay*, 382 F.3d at 1260 (If damages are subject to plausible class-wide methodology, individual damages calculations are "no impediment to class certification.").

Applying these standards here, the Court should find Plaintiff's and the Class' claims are based on the same legal theories, the same conduct of Defendant consciously rendering substantial assistance to Engler's Ponzi scheme, and the same theories for damages.  Plaintiff alleges issues arising out of Defendant's conduct that are common to all members of the

proposed Class.  Further, the resolution of Plaintiff's claims will resolve each Class member's

claims.  Plaintiff does not seek to resolve any legal or factual issue that does not apply to all

Class members, and the common issues raised by Defendant's failure to take proper steps to

avoid aiding and abetting conversion, fraud, and breach of fiduciary duties to Plaintiff and the

proposed Class predominate over any individual issues.  *Gaalswyk-Knetze*, 2008 U.S. Dist.

LEXIS 124382, at *10-*11.

Indeed, the law is clear that the existence of a Ponzi scheme, by itself, proves the "fraud"

element of a claim of "aiding and abetting a fraud," as pled here.[51]  *See, e.g.*, *In re World Vision

Entm't, Inc.*, 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002) ("A Ponzi scheme is by definition

fraudulent.  By extension, any acts taken in furtherance of the Ponzi scheme, such as paying

brokers commissions, are also fraudulent.  Every payment made by the debtor to keep the

scheme on-going was made with the actual intent to hinder, delay, or defraud creditors, primarily

the new investors."); *see also Coquina Invs. v. Rothstein*, No. 10-60786-Civ-

COOKE/BANDSTRA, 2012 U.S. Dist. LEXIS 139947, at *48 (S.D. Fla. Sept. 28, 2012)

(denying defendant's motion for judgment on the pleadings in similar aiding and abetting a

Ponzi scheme case, and observing that "Coquina alleged in its complaint that the underlying

---

[51]   Proving that Engler committed a "fraud" through a Ponzi scheme would necessarily also prove a "conversion" by Engler.  *See United States v. Bailey*, 288 F. Supp. 2d 1261, 1264 (M.D. Fla. 2003) (explaining elements of conversion under Florida law), *aff'd*, 419 F.3d 1208 (11th Cir. 2005); *see also Marine Transp. Servs. Sea-Barge Group, Inc. v. Python High Performance Corp.*, 16 F.3d 1133, 1140 (11th Cir. 1994) ("In Florida, the tort of conversion is an unauthorized act which deprives another of his property permanently for an indefinite time.  The essence of the tort is not the acquisition of the property; rather, it is the wrongful deprivation."); *City of Cars, Inc. v. Simms*, 526 So. 2d 119, 120 (Fla. Dist. Ct. App. 1988) ("[a]ny act of a person in asserting a right of dominion over a chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession to which the owner is entitled may constitute a conversion").

fraud was a Ponzi scheme Rothstein operated to defraud investors, including Coquina, with TD Bank's assistance").

Proof of a Ponzi scheme is made simply by establishing that: "(1) deposits [were] made by investors; (2) the [company] conducted little or no legitimate business operations as represented to investors; (3) the purported business operations of the [company] produced little or no profits or earnings; and (4) the source of payments to investors was from cash infused by new investors." *Wiand v. Lee*, No. 8:10-CV-210-T-17MAP, 2012 U.S. Dist. LEXIS 185004, at *24 (M.D. Fla. Dec. 13, 2012). One of Plaintiff's experts, noted forensic accountant Soneet Kapila, has already opined in his Expert Report in this case that there is no doubt that Engler conducted a Ponzi scheme.[52] U.S. Bankruptcy Judge Williamson, overseeing the Engler bankruptcy proceedings, also noted that "unless the sun sort of reverses where it rises tomorrow, I mean, you know, come on, this is a Ponzi scheme." *See* Transcript of Hearing on June 18, 2010, at 20:11-13, *In re Ulrich Felix Anton Engler*, No. 08-04360-9W7 (Chapter 7 Substantively Consolidated), Adv. No. 09-01026 (Bankr. M.D. Fla.), excerpts from which are attached to the Davidson Declaration as **Ex. P**.

To be sure, in *Carroll*, District Judge McLaughlin of the Eastern District of Pennsylvania certified an unjust enrichment class of Ponzi scheme victims and held that "inquiry into the existence of [a] Ponzi scheme . . . is common to all class members." 2011 U.S. Dist. LEXIS 121171, at *17; *see also Facciola*, 281 F.R.D. at 372 (finding predominance element of

---

[52] *See* Report of Expert Submitted by Soneet R. Kapila, CPA, CIRA, CFE, CFF, dated January 31, 2014, at p. 4 & Ex. 1, attached to the Davidson Declaration as **Ex. O**.

Rule 23(b)(3) met where liability was capable of proof through common evidence of, *inter alia*, "the existence and operation of the underlying Ponzi scheme").

Thus, while Wells Fargo will try its best at demonstrating that there are "potential differences" among individual victims of Engler's Ponzi scheme, those superficial differences do not matter to either the class certification analysis or the merits of this case. No "potential differences," no matter how stark they may be, could possibly predominate over the numerous issues common to each one of Engler's victims who comprise the Class.

Put simply, either Wells Fargo knowingly assisted Engler's Ponzi scheme or it did not, and, no matter what reasons an investor may have had for giving their money to Engler or what their investment experience may be, nothing will change that overarching legal and factual issue which sits for the jury to decide at trial. It matters not that Mrs. Richter invested with Engler because she thought she had received a "secret tip" from one of Engler's co-conspiring brokers, or that any other Class member may have been duped by Engler based on different facts or circumstances. What matters is: (a) whether Engler committed a Ponzi scheme (which Plaintiff's expert and the U.S. Bankruptcy Court have opined he did without question); (b) whether Wells Fargo had actual knowledge of Engler's fraud (which Plaintiff's expert and contemporaneous internal Wells Fargo documents and emails prove it did); (c) whether Wells Fargo substantially assisted Engler in conducting his Ponzi scheme (which Plaintiff's expert and contemporaneous internal Wells Fargo documents and emails prove it did); and (d) the amount of damages suffered by each Class member (which has already been determined, to the penny, by Plaintiff's expert, Soneet Kapila). Common issues clearly predominate over any individual issues in this case.

Several additional aspects weigh in favor of certifying the Class.  First, not one of Plaintiff's claims against Defendant includes the elements of or the requirement to prove reliance.  This case is solely based on Defendant's knowing failure to take proper steps to avoid aiding and abetting conversion and fraud to Class members.[53]

Second, there is a clear method for calculating damages.  As stated above, forensic accounting expert Soneet Kapila has clearly articulated the manner and methodology by which damages can be calculated, and any damages to unknown Class members can be calculated at a later date, in the same manner, once additional information is received from Defendant.  *See Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 671 (S.D. Fla. 2012) (finding plaintiff's expert "articulated the manner and methodology that he will be able to use once he receives full and complete disclosure from Wells Fargo and QBE.  He has described with specificity the data that he needs to complete his analysis, and had further explained that the records containing the data are standard records kept by an insurance company.").  Further, the fact that individual Class members may have different damages amounts based on the same class-wide damages methodology cannot defeat class certification here.  *Klay*, 382 F.3d at 1259-60.  Moreover, "[t]he Eleventh Circuit has repeatedly held that individual issues relating to damages do not defeat class certification."  *Checking Account Overdraft*, 281 F.R.D. at 678.

In *Comcast Corp. v. Behrend*, __ U.S. __, 133 S. Ct. 1426, 1433 (2013), an antitrust case, the Supreme Court required plaintiffs to demonstrate that damages could be proven on a class-wide basis.  In *Comcast,* the Supreme Court further held that the expert's damages model failed

---

[53] Regardless, "[u]nder well-established Eleventh Circuit precedent, the simple fact that reliance is an element in a cause of action is not an absolute bar to class certification."  *Klay*, 382 F.3d at 1258 (based on nature of misrepresentations, circumstantial evidence could be used to show reliance common to entire class).

to show that damages were capable of measurement on a class-wide bass because the model measured damages attributable to several other possible theories of liability (for which the underlying claims had already been dismissed). *Id.* Here, Plaintiff's proposed damages methodology, as prepared by Soneet Kapila, is directly tied to her claims against Wells Fargo, and there are no competing theories of liability that need to be accounted for.

Even if damages could not be calculated with mathematical precision (which is not at issue here), the possibility of calculating individual damages for over 1,700 investors does not mean that individual issues predominate. At the certification stage, plaintiffs do not need to supply a precise damage formula. Instead, "the Court's inquiry is limited to whether or not the proposed methods are so insubstantial as to amount to no method at all." *In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 698 (S.D. Fla. 2004); *see also Klay*, 382 F.3d at 1259; *Collins v. Olin Corp.*, 248 F.R.D. 95, 104 n.8 (D. Conn. 2008) ("Regardless whether the expert testimony establishes that causation actually cannot be proved on a class-wide basis, the Court need not weigh this evidence at this stage," since common issues predominate.).[54] As noted above, "[t]he Eleventh Circuit has stated that it is primarily when there are significant individualized questions ***going to liability*** that the need for individualized assessments of

---

[54] *See also In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), 2014 U.S. Dist. LEXIS 42537, at *78 (S.D.N.Y. Mar. 28, 2014) (granting class certification, noting that "although Apple cites *Comcast*[], no fewer than ten times in its briefing of its motion to exclude [the damages expert's] opinions, it seems to have overlooked the Court's recognition that . . . ***damages '[c]alculations need not be exact*.'**" (quoting *Comcast*, 133 S. Ct. at 1433)); *Khoday v. Symantec Corp.*, No. 11-180 (JRT/TNL), 2014 U.S. Dist. LEXIS 43315, at *102 (D. Minn. Mar. 31, 2014) ("[at] class certification, plaintiff must present a likely method for determining class damages***, though it is not necessary to show that his method will work with certainty at this time. Calculations need not be exact***, but at the class-certification stage . . . any model supporting a plaintiff's damages case must be consistent with its liability case . . . . ." (citing *Comcast*)).

damages is enough to preclude 23(b)(3) certification." *Miva*, 2008 U.S. Dist. LEXIS 21108, at

*27-*28 (quoting *Klay*, 382 F.3d at 1260).

**2.      A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action**

Rule 23(b)(3) requires a finding that "a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy."  There are four factors the Court should

consider in determining whether a class action is superior to other methods of adjudication:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *see also Mesa*, 2008 U.S. Dist. LEXIS 114037, at *9.  A review of

these factors makes clear that a class action is the superior method of adjudicating this

controversy.

First, there is no reason to believe the Class members here have any particular interest in

controlling their own litigation.  This factor does not counsel against class certification.  *Klay*,

382 F.3d at 1269.  The expenses associated with an individual action would likely far outweigh

any potential individual recovery and thus is it not in the interest of any one Class member to

pursue an action individually.  The Supreme Court has recognized that "[c]lass actions . . .

permit the plaintiffs to pool claims which would be uneconomical to litigate individually. . . .

[M]ost of the plaintiffs would have no realistic day in court if a class action were not available."

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

As set forth above, Wells Fargo consciously rendered substantial assistance to Engler by

continuing to process numerous receipts and disbursements of Class member funds in the form

30

of international wire transfers to and from the Wells Fargo Accounts.  While each Class member may have significant damages relative to his/her own financial circumstances, the expense of litigating actions on an individual basis would likely and quickly subsume all recoverable damages.  *Klay*, 382 F.3d at 1271 (class action superior where amounts in controversy are so low that most of the plaintiffs or attorneys working on a contingency fee basis would not be willing to pursue claims individually).

Here, it has been and would be cost prohibitive for each individual Class member to engage in substantial pre-trial discovery and proceed against a large corporation such as Defendant.  *Id.* ("This is especially true when the defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings."); *see also Powers v. Stuart-James Co.*, 707 F. Supp. 499, 504 (M.D. Fla. 1989) ("It appears to the Court that the judicial system, the potential class members, the litigants, counsel for the parties, and the public will all benefit from class certification because the time and money of all parties will be efficiently used.") (Kovachevich, J.); *Upshaw v. Ga. Catalog Sales, Inc.*, 206 F.R.D. 694, 701 (M.D. Ga. 2002) ("[E]ven if sufficient incentive existed for individual claimants to pursue their claims separately, class action treatment is far superior to having the same claims litigated repeatedly, wasting valuable judicial resources.").  Indeed, the vast majority of Class members reside in foreign countries, and the expense of litigating their individual claims in the United States would quickly subsume their total potential recovery.  Thus, in light of the number of potential claimants and the cost and time necessary to litigate each separate claim, it is certainly

31

in the best interests of the Class members to concentrate this action in this forum and prevent the duplication of efforts and possible inconsistent results.

Second, there are no other lawsuits filed on behalf of the Class that raise the same issues against the same Defendant as here.  A number of Class members have filed proof of claim forms in the Engler Bankruptcy Action and are seeking damages from the Engler Entities.  The claimants in the Engler Bankruptcy Action, however, are not seeking damages from Defendant. And, to the extent that Class members recover pennies on the dollar from their bankruptcy proofs of claim, such pennies would simply be set off from the damages awarded in this action.

Third, the burden on the courts would be significant if the individual claims of each Class member were pursued in multiple actions or forums.  This forum is the superior one in which to concentrate the claims because the Engler Entities were operating out of this District, much of the questionable conduct occurred in this District, Defendant conducts substantial business in this District, and much of the evidence and witnesses are also located within this District. *See Santiago*, 2008 U.S. Dist. LEXIS 60761, at *12 (certifying class in this District where defendant operated in this District and regularly conducted business in this District).  A class action "offers substantial economies of time, effort, and expense for the litigants . . . as well as for the Court." *Terazosin*, 220 F.R.D. at 700 (holding separate trials for claims that could be tried together would be costly, inefficient, and burden the court system by forcing individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts).

As to the final factor, while every class presents some administrative difficulties, the benefits of maintaining this action on a class basis far outweigh the administrative burdens.  The Class members' claims are predicated on a common set of facts, concern the same conduct by

931447_1

Defendant, and impact investors who invested in the same Ponzi scheme operated by Engler.  It will be unnecessary to hear testimony from every individual Class member.  Any speculative administrative hurdles are not sufficient to preclude class certification, and Plaintiff anticipates there will most likely be no difficulties in managing this action as a class action.  *See Klay*, 382 F.3d at 1272-73.  Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this action.

### D.  Alternatively, Issue Certification Under Rule 23(c)(4) May Be Appropriate

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."  The manual published by the Federal Judicial Center to assist federal judges in managing complex cases – including class actions – explains that the rule "permits a class to be certified for specific issues or elements of claims raised in the litigation."  MANUAL FOR COMPLEX LITIGATION, FOURTH §21.24 at 272 (Fed. Jud. Ctr. 2004) ("MCL") (citing *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 184 (4th Cir. 1993) (class certified for eight common issues); *Jenkins v. Raymark Indus.*, Inc., 782 F.2d 468, 472-73 (5th Cir. 1986) (class action to adjudicate "state of the art" defense in products liability class action).   The approach is "appropriate only if it permits fair presentation of the claims and defenses and materially advances the disposition of the litigation as a whole."  MCL, §21.24 at 273.

Courts have often held that subsection (c)(4) may be used to single out issues for class treatment, even when the action as a whole may not satisfy Rule 23(b)(3).  *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006); *Olden v. LaFarge Corp.*, 383 F.3d 495, 509 (6th Cir. 2004) (approving use of issues classes to bifurcate class trials into liability

33

931447_1

phases and damages phases); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 489 (7th Cir.) (reversing denial of class certification, holding that issue certification is appropriate to determine: (1) whether Merrill Lynch's teaming and account distribution policies had a disparate impact on African American financial advisors; and (2) if so, whether it is nonetheless justified by business necessity), *cert. denied*, 133 S. Ct. 338 (2012); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *Williams*, 568 F.3d at 1360 (approving "hybrid class action" under Rule 23(c)(4) and reversing denial of class certification); *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1158 n.10 (11th Cir. 1983) (approving certification under Rule 23(c)(4)); *see also Carroll*, 2011 U.S. Dist. LEXIS 121171, at *19-*20 (certifying six separate issues pertaining to the defendants' liability to the named plaintiffs who claimed they lost their investments through a Ponzi scheme even though individualized damages calculations would be required).[55]

Here, there are countless common legal and factual issues to be decided by the jury in this case, which militate squarely in favor of class treatment of such issues. These issues include, among many others identified above, whether Wells Fargo is liable for knowingly providing substantial assistance to Engler's Ponzi scheme. This issue infects the claims every

---

[55] Plaintiff is candidly aware that there is a slight split of authority regarding whether Rule 23(c)(4) allows for certification of certain "issues." As noted above, the Second, Sixth, Seventh, Ninth, **and Eleventh** Circuits have concluded that issue certification is proper. The Fourth Circuit, in *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 441, 444 (4th Cir. 2003), acknowledged the split and stated, "we have no need to enter that fray," yet also explained that the "theory" of Rule 23(c)(4) is that efficiency can be achieved by adjudicating certain common issues "even though other issues in the case may have to be litigated separately." The Eighth Circuit has not taken a position. *In re St. Jude Med., Inc.*, 522 F.3d 836, 841 (8th Cir. 2008). The Fifth Circuit does not allow for issue certification. *Castano v. Am. Tobacco*, 84 F.3d 734, 745 n.21 (5th Cir. 1996). Regardless, the Eleventh Circuit's decisions in *Williams* and *Holmes* end the debate for purposes of this case.

single member of the Class has against Wells Fargo, and should undoubtedly be resolved on a

Class-wide basis.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court enter an

Order granting this Motion, certifying the Class defined by Plaintiff, appointing Plaintiff as Class

representative, appointing Plaintiff's counsel, Robbins Geller and Mandel & Mandel, as Class

Counsel, and for such further relief as the Court deems just and proper.

Respectfully submitted,

DATED: April 11, 2014                    ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                         PAUL J. GELLER
                                         Florida Bar No. 984795
                                         STUART A. DAVIDSON
                                         Florida Bar No. 084824
                                         ROBERT J. ROBBINS
                                         Florida Bar No. 572233
                                         CULLIN A. O'BRIEN
                                         Florida Bar No. 597341
                                         CHRISTOPHER MARTINS
                                         Florida Bar No. 88733
                                         BAILIE L. HEIKKINEN
                                         Florida Bar No. 55998

                                              *s/ Stuart A. Davidson*
                                         ────────────────────────────
                                            STUART A. DAVIDSON

                                         120 E. Palmetto Park Road, Suite 500
                                         Boca Raton, FL  33432
                                         Telephone: 561/750-3000
                                         561/750-3364 (fax)
                                         pgeller@rgrdlaw.com
                                         sdavidson@rgrdlaw.com
                                         rrobbins@rgrdlaw.com
                                         cobrien@rgrdlaw.com
                                         cmartins@rgrdlaw.com
                                         bheikkinen@rgrdlaw.com

35

DAVID S. MANDEL
Florida Bar No. 38040
NINA STILLMAN MANDEL
Florida Bar No. 843016
CAMELLIA NORIEGA
Florida Bar No. 102777
MANDEL & MANDEL LLP
Alfred I. duPont Building
169 East Flagler Street, Suite 1200
Miami, FL 33131
Telephone: 305/374-7771
305/374-7776 (fax)
dmandel@mandel-law.com
nsmandel@mandel-law.com
cnoriega@mandel-law.com

*Attorneys for Plaintiff Petra Richter and the Class
and Proposed Class Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 11, 2014, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system.  The electronic case filing system sent a "Notice

of Electronic Filing" to the attorneys of record who have consented in writing to accept this

notice as service of this document by electronic means.

*s/ Stuart A. Davidson*
STUART A. DAVIDSON