UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

FRANZ LESTI AND PETRA RICHTER,
Individually and on Behalf of All Others          CASE NO. 2:11-CV-00695-JES-DNF
Similarly Situated, and ROBERT E.
TARDIF, JR., in his capacity as the Chapter
7 Trustee of the substantively consolidated
Bankruptcy estates of Debtors, Ulrich Felix
Anton Engler, Private Commercial Office, Inc.,
and PCO Client Management, Inc.,

      Plaintiffs,

v.

WELLS FARGO BANK, N.A. (f/k/a
Wachovia Bank, N.A.),

      Defendant.

_____/

### WELLS FARGO BANK, N.A.'S MOTION TO EXCLUDE/STRIKE EXPERT TESTIMONY OF SONEET R. KAPILA AND INCORPORATED MEMORANDUM OF LAW

Defendant, Wells Fargo Bank, N.A. ("Wells Fargo"), pursuant to M.D. Local Rule 3.01,

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137 (1999) and Federal Rules of Evidence 702 and 703, moves the Court

for the entry of an Order excluding and/or striking the opinion testimony of plaintiff's expert

Soneet R. Kapila ("Kapila") and in support states as follows:

### I.    INTRODUCTION

Plaintiff, Petra Richter ("Plaintiff" or "Richter"), timely served Wells Fargo with

Kapila's January 31, 2014 Report of Expert ("January Report") in which she proposed to offer

Kapila's opinion testimony that: Ulrich Felix Anton Engler, Private Commercial Office, Inc.

("PCO") and PCO Client Management, Inc. ("PCOM") operated a Ponzi scheme from January

1, 2005 and thereafter; and assuming Wells Fargo is liable for damages, Kapila is able to

calculate the damages suffered by the persons who lent Engler money and entered into Promissory Notes and/or Lending Agreements with Engler/PCO (the "Lenders") for the period of January 1, 2005 through January 2, 2008 on a class wide basis.

Thereafter, just two days prior to Kapila's deposition, on March 17, 2014, Richter, without ever obtaining leave of Court to file an out of time supplement, provided a Supplemental Report ("Untimely March Supplement"). Therein, Richter proposed to offer Kapila's opinion testimony that: funds were transferred from the Wachovia bank account of PCOM ending 7271 (the "7271 Account") and Wachovia bank account of PCOM ending in 5057 (the "5057 Account") (collectively, the "PCOM Accounts") in September and October, 2007 to personal accounts maintained by Angelika Josefa Neimeier-Fuchs and those funds were further disbursed from the accounts until they were closed on May 23, 2008. These transfers and the personal accounts of Angelika Josefa Neimeier-Fuchs are not framed by the pleadings, and therefore are not at issue in this case. Richter cannot use Kapila to introduce new allegations not framed by the pleadings.

At Kapila's March 19, 2014 deposition, Kapila unequivocally stated that he had rendered all his opinions to date in the case, that they were complete, and that he had not been tasked to do any further work and that he did not need any further documents. Yet twenty-three (23) days later, Wells Fargo received Kapila's Declaration in Support of Plaintiff's Second Amended Motion for Class Certification with exhibits (ECF No. 220-9) ("Untimely Declaration") which not only adds new opinions, but totally contradict his prior report and his deposition testimony. By the Untimely Declaration, Richter proposed to offer Kapila's new and contradictory opinions that: the proposed class for the period of July 10, 2007 through May 23, 2008 includes 1770 investors who lost money as a result of Engler's Ponzi scheme and the transferring in or

2

depositing of related investment monies into the PCOM Accounts; and approximately $44 million in Class member funds transferred to the Wells Fargo Accounts from PCO's SunTrust accounts or deposited directly into the Wells Fargo Accounts have been identified. Kapila's opinions are not only unreliable, but are based on reckless contradictions and no outlined discernible methodology.

There is no reason for Kapila to file untimely reports since he has been involved in this matter for over 5 years (including the related bankruptcy). Specifically, the underlying bankruptcy case was filed on March 31, 2008; Kapila was retained by Robert E. Tardif, Jr., Chapter 7 Trustee as his forensic accountant on October 22, 2008; and Kapila had all of the records of the Debtors relevant to his expert reports years in advance of the February 7, 2014 expert disclosure deadline in this action.

Finally, in light of Kapila's own admissions that no transfers of funds out of the PCOM accounts occurred after November 16, 2007, all of his opinions are irrelevant to the claims and defenses in this action because they are based upon events barred by the statute of limitations. Clearly, the admission of Kapila's opinion testimony would confuse rather than assist the trier of fact in this case. For these reasons, and as described in greater detail below, Kapila's opinion testimony must be excluded.

## II.    REPORTS AND DEPOSITION TESTIMONY

1.      Richter's deadline to disclose expert reports was February 7, 2014 (ECF No 139).

2.      On January 31, 2014, Richter provided Wells Fargo with the Report of Expert submitted by Soneet R. Kapila, CPA, CIRA, CFE, CFF (ECF No. 220-15) ("January Report").

3.      On March 17, 2014, without obtaining leave of Court, Richter served the Untimely March Supplement.

3

4.      On March 19, 2014, Wells Fargo took Kapila's Deposition regarding his expert opinions.  The March 19, 2014 Transcript of the Deposition of Soneet R. Kapila ("Kapila Deposition") is being filed simultaneously herewith.

5.      The only timely opinions set forth by Kapila in his January Report, were as follows: (i) assuming Wells Fargo is liable for damages, Kapila is able to calculate the damages suffered by investors for the Relevant Period on a class wide basis; and (ii) Engler, PCO, and PCOM operated as a Ponzi scheme from January 1, 2005, and continued to operate as a Ponzi thereafter.  January Report, P. 4.

6.      The untimely opinions set forth in Kapila's Untimely March Supplement indicate that funds were transferred from the 7271 Account and 5057 Account in September and October, 2007 to personal accounts maintained by Angelika Josefa Neimeier-Fuchs and those funds were further disbursed from the accounts until they were closed on May 23, 2008.  Untimely March Supplement, P. 3.   These statements regarding the personal accounts of Angelika Josefa Neimeier-Fuchs are not framed the pleadings, are not part of this case, and are therefore inadmissible.

7.      When Kapila was deposed on March 19, 2014, he testified that all of his opinions rendered to date in the case were set forth in the January Report and Untimely March Supplement, that they were complete that he had not been tasked to do any further work in connection with this case and that he was not in need of any further documents.   Kapila Deposition, P. 145, L. 18-25; P. 146, L. 1-24; P. 157, L. 15-19.

8.      The exhibits to both the Kapila Deposition and Kapila's testimony establish that the bulk of the work and analysis for the January Report was done by his former employee Carol Fox and other support professionals for the period of October 22, 2008 through August 31, 2011.

During this period, Kapila only spent 24.1 hours related to the entire underlying bankruptcy matter compared to his former employee Carol Fox who spent 760.5 hours (out of 1,908.6 spent by all professionals)[1]. Kapila Deposition, P. 79- 109; Exhibits 6, 7, and 8 to Kapila Deposition.

9.     Kapila admitted in his deposition that there were no further monies deposited into or wired out of the PCOM account after November 16, 2007. Kapila Deposition, P. 266-267.

10.     Kapila further testified, although not addressed in the January Report or Untimely March Supplement, that the approximately 1700 class members only included those individuals that deposited money directly into Wachovia.[2] Kapila Deposition, P. 134, L. 10-22; P. 163, L. 18-25.

11.     Kapila also testified, although it was not mentioned in his January Report or Untimely March Supplement, that he was unable to identify the names of investors whose funds were transferred from SunTrust to Wells Fargo because the funds had been commingled:

> Q.     You don't know whose individual monies that was, though, do you?
>                             ***
> A:     I would not know that, because its pooled up.
> Q.     It's commingled; is that right?   Is that what you mean by "pooled up"?
> A.     Yes.

Kapila Deposition, P. 167, L. 5-13.

> Q.     You can't tell who the investors were, because the money was commingled at SunTrust, correct?
> A.     Yes, correct.
> Q.     And it was forwarded as a lump sum to Wells Fargo, correct?

---

[1] Of the 24.1 hours, over half of his time relates to his attendance at the Section 341 meeting of creditors, preparation for and adversary deposition and a bankruptcy fee application.

[2] Kapila did not know why this analysis was not included in his January Report or Untimely March Supplement. Kapila Deposition, P. 156, L. 2-7.

A.     Correct.

Kapila Deposition, P. 243, L. 12-17.

12.     Kapila also testified that the purported class members damages, if Wells Fargo were found liable, are less than $9.7 million based on the amount investors wired into Wells Fargo directly with deductions based on payments they received:

> Q.     And we've been talking about nine million that's the number right there, the $9.7 million.   That was money that came in direct wired in from investors?
> A.     That is correct.

Kapila Deposition, P. 243, L. 22-25; P. 167, L. 5-13.

13.     On April 11, 2014, the Plaintiff filed her Second Amended Motion For Class Certification And Incorporated Memorandum of Law (ECF No. 219) ("Class Certification Motion").   In support of the Class Certification Motion, Plaintiff served the Untimely Declaration, some 69 pages long which provides new opinions and calculations, not only not contained in his January Report but contradictory to his March, 2014 deposition testimony.

14.     Kapila's Untimely Declaration, is a complete reversal of his prior opinion, methodology and theories in that he suddenly claims he can now identify the names of the SunTrust Lenders, the amount of their funds that were transferred to Wells Fargo, and dramatically increases the alleged damages from less than $9.7 million to $44 million.   *See* Untimely Declaration, P. 4, ¶¶ 9, 10.

### III.     ARGUMENT

#### A.     Standard under Federal Rule of Evidence 702

Federal district courts serve as gatekeepers for admission of expert testimony, and must see that admitted testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.,*

6

509 U.S. 579, 589 (1993). The admissibility of expert testimony turns on three things: whether a given expert is qualified to testify competently on the subject matter; whether the expert uses a reliable method to reach conclusions; and, whether the witness' expertise would assist the trier of fact in comprehending relevant evidence. *Quiet Tech. DC–8, Inc. v. Hurel–Dubois U.K. Ltd.,* 326 F.3d 1333, 1340-1341 (11th Cir. 2003). The following essential and distinct requirements must be satisfied before testimony is admissible: "qualification, reliability, and helpfulness." *See United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir. 1999).

With respect to reliability, the Court must be satisfied that the expert's reasoning "properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592-593. "[I]f the witness is relying solely or primarily on experience, then the witness must explain . . . how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it." *Frazier,* 387 F. 3d at 1261. Finally, because "expert testimony may be assigned talismanic significance in the eyes of lay jurors," a court "must take care to weigh the value of such evidence against its potential to mislead or confuse" a jury. *Id.* at 1263.

In this case, Kapila's opinions are not reliable or admissible and the Untimely Declaration is unauthorized, contradicts prior testimony, and is not based on reliable methodology or analysis. For these reasons, explained in detail below, Kapila's testimony should be excluded from evidence.

**B.**    **Kapila's Opinion Relates to Events That Occurred Prior to December 15, 2007 And Therefore Is Irrelevant And Should Be Excluded**

This action was filed on December 15, 2011.  All pending claims have a four (4) year statute of limitations.  In its March 19, 2013 Opinion and Order (ECF No. 72, p. 16), this Court stated: "While Count VI does not expressly allege any wire transfers after December 15, 2007, the allegations cannot support a statute of limitations defense on a motion to dismiss without viewing the allegations and their reasonable inferences in favor of defendant, which is not permitted when resolving a motion to dismiss."  In its November 20, 2013 Opinion and Order (ECF No. 116, p.7) on Wells Fargo's prior Dispositive Motion for Summary Judgment (ECF No. 78), this Court determined that there was a "lack of clarity as to the significance of Wells Fargo's activities after December 15, 2007", which "drawing all reasonable inferences in favor of the Plaintiffs" precluded the entry of summary judgment in favor of Wells Fargo at that time.  Thus, this Court is only concerned with "the significance of Wells Fargo's activities *after* December 15, 2007".  The record evidence is clear that there were no activities by Wells Fargo after December 15, 2007 which in any way contributed to the Debtors stealing money from the PCOM Accounts.

At his March 19, 2014 deposition, Kapila testified that his own review shows the last wire transfer into or out of the PCOM Accounts occurred on **November 16, 2007**, and that there were no further monies put into or wired out of the PCOM Accounts after that date.  Kapila Deposition, p. 266, l. 10 – p. 267, l. 10.  Kapila could not identify any transactions conducted on the PCOM Accounts after November 16, 2007.  Kapila Deposition, p. 138, l. 17 – p. 140, l. 23.  Very simply, neither Richter nor any of her proposed experts can point to a single action taken

8

by Wells Fargo after December 15, 2007, which in any way contributed to the Debtors stealing Richter's money from the PCOM Accounts.

As it pertains to the PCOM Accounts, the *only* accounts framed by the pleadings, Kapila's analysis is entirely based upon events prior to December 15, 2007. Accordingly, Kapila's opinion testimony should be stricken and/or excluded as it is not relevant to the current proceedings because it is based upon transactions barred by the statute of limitations and impermissibly seeks to introduce new allegations, claims, and evidence which are not framed by the pleadings.

### C.   Kapila's Untimely Declaration Is Unrealistic, Contradictory and Unreliable and Therefore Should Be Stricken and/or Excluded

In her Second Amended Motion for Class Certification, Richter includes Kapila's Untimely Declaration. Kapila's Untimely Declaration should not be considered as it is based on work that Mr. Kapila performed well after the February 7, 2014 deadline for expert disclosures and after he was deposed by Wells Fargo on March 19, 2014. In fact, Kapila testified at his deposition that all of his opinions rendered to date in the case were set forth in the January Report and Untimely March Supplement, that they were complete that he had not been tasked to do any further work in connection with this case and that he was not in need of any further documents. Kapila Deposition, P. 145, L. 18-25; P. 146, L. 1-24; P. 157, L. 15-19. Based on his deposition testimony, Wells Fargo had no plans or need to retain a forensic accountant expert.

Kapila's Untimely Declaration[3] is not a mere supplementation of his earlier opinion, but is so fundamentally, significantly different from his January Report or Untimely March

---

[3] Plaintiff did not file a motion for leave to file an untimely amendment or supplement to her expert's report, providing any explanation or excuse for the untimely disclosure. Plaintiff should

Supplement, and contradictory to his earlier opinions and testimony that all of his opinions must be disregarded by the Court, stricken and/or excluded. Kapila's January Report and Untimely March Supplement **do not provide**: (i) any opinion as to the number of purported class members, (ii) identification of purported class members, or (iii) the amount of damages of purported class members. Kapila testified at his deposition that the approximately 1700 class members only included individuals that deposited money directly into Wachovia (Kapila Deposition, P. 134, L. 10-22; P. 157, L. 10-13; P. 163, L. 18-25); he was not able to identify the names of investors whose funds were transferred from SunTrust to Wells Fargo because the funds had been commingled (Kapila Deposition, P. 166, L. 12-23; P. 167, L. 5-13; P. 243, L. 12-17); and purported class members' damages, if Wells Fargo were found liable, are **less than $9.7 million** which represents the amount of money deposited directly into Wells Fargo by individual lenders/investors (Kapila Deposition, P. 243, L. 22-25; P. 167, L. 5-13).

Yet, in the Untimely Declaration, Kapila completely reverses course and "estimates that 1770 investors lost money as a result of Engler's Ponzi scheme and the transferring in or depositing of related investments monies into the Wells Fargo Accounts." Kapila also now states that "[p]reliminary analysis of the information I have reviewed has led me to identify approximately **$44 million** in Class member funds that were transferred to the Wells Fargo Accounts from PCO's SunTrust accounts or deposited directly into the Wells Fargo Accounts." (emphasis added). Kapila now claims he can identify the names of individuals when just days prior, under oath, he testified he could not. Following his deposition, Kapila suddenly more than quadrupled his damages calculation from less than $9.7 million to more than $44 million. Kapila

---

not be allowed to avoid the expert opinion deadlines by characterizing new and contradictory opinions as a declaration.

supports his new and contradictory opinions in the Untimely Declaration by attaching exhibits which identify investors that **did not directly** deposit funds into Wells Fargo, increasing the alleged damages to $44 million.

To allow Kapila to dramatically change his expert opinion at this late date would be manifestly prejudicial and unfair to Wells Fargo. This is plainly inconsistent with Fed. R. Civ. P. 26 requirements and the requirements of this Court's February 7, 2014 expert disclosure deadline (ECF No. 139), to which Richter never sought relief. Accordingly, the Untimely Declaration should be stricken. *Southern Gardens Citrus Processing Corp. v. Barnes Richardson & Colburn*, 2013 WL 6844869 *1 (M.D. Fla. 2013); *Alphamed Pharmaceuticals Corp. v. Arriva Phyamaceuticals, Inc.*, 2005 WL 5960935 *1 (S.D. Fla. August 24, 2005)(Late supplemental expert report produced after expert's deposition which raised alternative theory of damages was stricken by Court on the basis that no excusable theory was offered for the untimely disclosure)[4]; *Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821 (11th Cir. 2009)(striking expert testimony because late disclosure of the scientific basis for an expert's opinion deprived defendant of a meaningful opportunity to depose him on the subject).

### D.     Kapila's Untimely Declaration Is Not Supported By An Identified Methodology And Analysis

In assessing the reliability of Kapila's conclusions, this Court is not required to simply assume that Kapila's training and experience (particularly as he only did a nominal portion of the work) would permit him to reach conclusions that can be reliably linked to the underlying facts and

---

[4] However, if this Court will consider matters not included in Kapila's pre-deposition expert reports, Wells Fargo must be allowed to conduct additional discovery on these new alleged, opinions, findings and conclusions prior to addressing class certification and expert disclosures issues and be given ample time thereafter to obtain and identify and disclose an expert.

11

data he reviewed in this case. *See Hendrix v. Evenflo Co., Inc.*, 609 F.3d 1183, 1201 (11th Cir. 2010) (noting that witness "relying solely or primarily on experience must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts"). In this case, Kapila, who has been involved in the facts of this case since he was hired as a forensic accountant in the bankruptcy case in 2008, has substantially changed his testimony at the eleventh hour. Moreover, Kapila did not personally do almost all of the work supporting his January Report. As stated in detail above, the bulk of the analysis was performed by a former employee, Carol Fox, and is not his personal work product.

Kapila does not offer any explanation as to how he came to the determination that the individuals listed on Exhibit 2 to his Untimely Declaration that did not directly deposit funds into the PCOM Wachovia account were identified as individuals whose funds made up the approximately $35 million transferred from SunTrust to Wachovia after he had just recently testified to the complete contrary. His opinion just appears to presume that the money from the SunTrust Account is traceable without outlining any tracing methodology (e.g. first in first out, last in last out, lowest intermediate balance). Kapila merely makes the conclusory statements that "Exhibit 2 is a chart of net investors whose money was in the Wells Fargo Accounts as of July 10, 2007 or anytime thereafter" and that he has identified "approximately $44 million in Class member funds that were transferred to the Wells Fargo Accounts from PCO's Suntrust accounts or deposited directly into the Wells Fargo Accounts." Finally, Kapila has not tied the alleged losses of the Lenders outlined on his Exhibit B to the January Report (ECF No. 220-15;

Page 29 of 54) to the damages now claimed in the Untimely Declaration[5].  Kapila cannot reliably link his conclusions to any methodology or the underlying facts in this case, and consequently his opinions must be excluded.

**WHEREFORE**, Wells Fargo moves the Court for an entry of an Order excluding and/or striking the opinion testimony of plaintiff's proposed expert Soneet R. Kapila, and prohibiting Plaintiff from introducing any evidence contained in his reports in support of any motion or trial of this cause, and for such other and further relief as the Court deems just and proper.

<u>**CERTIFICATE OF COMPLIANCE WITH M.D. FLA. L.R. 3.01(g)**</u>

WE HEREBY CERTIFY that, in accordance with M.D. Fla. L.R. 3.01(g), the undersigned has conferred with Plaintiff's counsel regarding the issues raised in this Motion, who are not in agreement with the relief requested herein.

---

[5] Exhibit B references a Deficiency by investors/lenders of $69,508,702 as of June 30, 2007 and $100,928,735 as of December 31, 2007 (a difference of $31,420,033.00), where he has indicated in his Untimely Contraditory Declaration that purported class members lost in excess of that amount. Further, on Exhibit A.1 (ECF No. 220-15; P. 28 of 54), Kapila fails to take into account unknown funds received and disbursed in the amount of $122,073,689 for the period of January 1, 2007 through December 31, 2007.

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of April, 2014, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

is being served this day on all counsel of record identified on the attached Service List in the

manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF

or in some other authorized manner for those counsel or parties who are not authorized to receive

electronically Notices of Electronic Filing.


Dated: April 25, 2014

West Palm Beach, Florida

> **FOX ROTHSCHILD LLP**
> */s/ Amy S. Rubin*
> Amy S. Rubin (Florida Bar No.: 476048)
> arubin@foxrothschild.com
> Heather L. Ries (Florida Bar No.: 581933)
> hries@foxrothschild.com
> Elliot A. Hallak (Florida Bar No.: 762741)
> ehallak@foxrothschild.com
> Thomas C. Allison (Florida Bar No.: 35242)
> tallison@foxrothschild.com
> 222 Lakeview Avenue, Suite 700
> West Palm Beach, FL 33401
> Telephone:  561.835.9600
> Facsimile:  561.835.9602
>
> *Attorneys for Defendant, Wells Fargo Bank, N.A.*

14

## SERVICE LIST

*Franz Lesti, et al. v. Wells Fargo Bank, N.A.*
Case No: 2:11-CV-695-FtM-29DNF
United States District Court, Middle District of Florida

**Electronically by CM/ECF System**

Amy S. Rubin (Florida Bar Number: 476048)
Heather L. Ries (Florida Bar No.: 581933)
Elliot A. Hallak (Florida Bar Number:  762741)
Thomas C. Allison (Florida Bar No. 35242)
Fox Rothschild LLP
222 Lakeview Avenue, Suite 700
West Palm Beach, FL 33401
Telephone:  561.835.9600
Facsimile:  561.835.9602
*arubin@foxrothschild.com*
*ehallak@foxrothschild.com*
*hries@foxrothschild.com*
*tallison@foxrothschild.com*

Stuart A. Davidson (Florida Bar Number: 084824)
Paul J. Geller (Florida Bar Number: 984795)
Robert J. Robbins (Florida Bar Number: 572233)
Cullin A. O'Brien (Florida Bar Number: 597341)
Christopher Martins (Florida Bar Number: 88733)
Bailie L. Heikkinen, (Florida Bar Number: 55998)
ROBBINS GELLER RUDMAN & DOWD LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33433
Telephone: 561.750.3000
Facsimile: 561.750.3364
*sdavidson@rgrdlaw.com*
*pgeller@rgrdlaw.com*
*rrobbins@rgrdlaw.com*
*cobrien@rgrdlaw.com*
*cmartins@rgrdlaw.com*
*bheikkinen@rgrdlaw.com*

David S. Mandel (Florida Bar Number: 38040
Nina Stillman Mandel (Florida Bar Number: 843016
MANDEL & MANDEL LLP
169 East Flagler Street, Suite 1200
Miami, FL 33131
Tel.: (305) 374-7771
Fax: (305) 374-7776
*dmandel@mandel-law.com*
*nsmandel@mandel-law.com*

Robert F. Elgidely (Florida Bar Number: 111856)
GENOVESE JOBLOVE & BATTISTA, P.A.
200 E. Broward Blvd., Suite 1110
Fort Lauderdale, FL 33301
Telephone: 954.453.8022
Facsimile: 954.331.2907
*relgidely@gjb-law.com*
Carmen Contreras-Martinez (Florida Bar Number: 093445)

GENOVESE JOBLOVE & BATTISTA, P.A.
100 Southeast Second Street
44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
ccontreras@gjb-law.com