UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FRANZ LESTI and PETRA RICHTER,

Plaintiffs,

vs.                                               Case No. 2:11-cv-695-FtM-29DNF

WELLS FARGO BANK, N.A., formerly
known as Wachovia Bank, N.A.,

Defendant.
_____/

**WELLS FARGO BANK, N.A.'S MOTION TO EXCLUDE/STRIKE
EXPERT OPINION TESTIMONY OF CATHERINE GHIGLIERI
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Wells Fargo Bank, N.A. ("Wells Fargo"), through its undersigned counsel, and pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) and Federal Rules of Evidence 702 and 703, move for entry of an order excluding the opinion testimony of Plaintiff, Petra Richter's ("Richter"), proposed expert Catherine Ghiglieri ("Ghiglieri") because the proposed opinions are based on no discernible reliable methodology, are based upon events which are outside of the statute of limitations, and are irrelevant to the issues in this case. Ghiglieri's proposed expert testimony is nothing more than a search of a basis for support of a conclusion already reached, based on a bank's provision of routine banking services to its customer for a period of approximately four months.

*Introduction/Claims*

On December 15, 2011, Plaintiffs, Franz Lesti and Richter and Robert E. Tardif, Jr., as Chapter 7 Trustee ("Trustee") for the substantively consolidated bankruptcy estates of Debtors,

1
FOX ROTHSCHILD LLP

Ulrich Felix Anton Engler ("Engler"), Private Commercial Office, Inc. ("PCO"), and PCO Client Management, Inc. ("PCOM") (collectively, "Debtors") filed their Class Action Complaint (ECF No. 1) ("Complaint"). On March 30, 2012, Plaintiffs filed their Amended Class Action Complaint (ECF No. 24) ("Amended Complaint").

In her Amended Complaint, Richter alleges: Engler, a German citizen, owned and purported to operate Private Commercial Office, Inc. ("PCO"), a day trading and investment business. (*See* ECF No. 24, ¶ 25.) Engler solicited investments from individuals and entities primarily located in Europe and guaranteed annualized returns of 48% to 72%. (*See* ECF No. 24, ¶¶ 26-27.) The investments were documented by Promissory Notes and Loan Agreements between Engler and PCO, as Borrowers, and the investors, as Lenders. (*See* ECF No. 24, ¶ 28.) Engler did not invest the proceeds he received and instead operated a classic Ponzi scheme. (*See* ECF No. 24, ¶ 29.)

Richter's pending claims against Wells Fargo Bank, N.A. are: (i) aiding and abetting conversion (Count VI); (ii) aiding and abetting fraud (Count VII)[1]; (iii) unjust enrichment (Count XI). Richter's claims against Wells Fargo in her Amended Complaint are based upon the wire transfer activity that occurred in the two accounts ("Accounts") that PCOM formerly maintained at Wells Fargo.[2] (*See* ECF No. 24, ¶¶ 5-6.) Engler and PCO did not maintain and are not alleged to have ever maintained accounts at Wells Fargo.

Specifically, as it pertains to the Aiding and Abetting Claims, Richter alleges: "Wells Fargo rendered substantial assistance to Engler by continuing to process thousands of monthly receipts and disbursements of innocent investor funds totaling tens of millions of dollars per

---

[1]   The causes of action for aiding and abetting conversion (Count VI) and aiding and abetting fraud (Count VII) are sometimes collectively referred to herein as the "Aiding and Abetting Claims".

[2]   Engler, PCO, and PCOM are sometimes collectively referred to herein as the "Debtors".

month in the form of international wire transfers to and from the PCO Client Management Wells Fargo Accounts" "thereby enabling Engler to loot over $35 million from innocent investors". (*See* ECF No. 24, ¶¶ 5, 56, 102, 107.) In her unjust enrichment claim, Richter alleges: (i) "PCO Client Management conferred a benefit upon Wells Fargo by making wire transfers into and out of PCO Client Management's Wells Fargo Accounts, thereby accruing significant transaction/service fees" (*see* ECF No. 24, ¶118); and, (ii) "Wells Fargo knowingly and voluntarily accepted and retained the benefits conferred by PCO Client Management with respect to such transaction/service fees" (*see* ECF No. 24, ¶119).

Richter proposes to offer the opinion testimony of Ghiglieri that Wells Fargo's predecessor by merger, Wachovia Bank, N.A. ("Wells Fargo") failed to comply with statutory and regulatory guidelines and internal policies and procedures for opening deposit accounts and monitoring and investigating customer transactions. Ghiglieri further opines that, as a result of this alleged non-compliance, Wells Fargo knew about and assisted Engler's alleged Ponzi scheme.

Ghiglieri's opinions are almost entirely based upon events which occurred prior to December 15, 2007 (more than four years prior to the filing of the complaint) (*see* Ghiglieri Transcript, pp. 106-07[3]), and are therefore barred by the statute of limitations. Even Richter's forensic accountant expert, Soneet Kapila ("Kapila") testified that no money was transferred into

---

[3]   Of even date herewith, Wells Fargo has filed a *Time Sensitive* Motion to Seal ("Motion to Seal") with respect to the expert report of and the deposition transcript of Ghiglieri, as required by the parties' Confidentiality Agreement. (*See* ECF No. 229.) Because the Motion to Seal has not been ruled upon as of the filing of this Motion to Exclude, Wells Fargo will wait until the Court issues an order on the Motion to Seal before submitting the report and transcript, in compliance with the parties' Confidentiality Agreement.

or out of the Accounts subsequent to November 16, 2007.[4] Additionally, Ghiglieri's opinions result from no discernible methodology and are irrelevant to the claims and defenses in this action. Admission of Ghiglieri's opinion testimony would confuse, rather than assist, the trier of fact in this case, to the prejudice of Wells Fargo. For these reasons, and as described in greater detail below, Ghiglieri's opinion testimony should be excluded.[5]

### *Ghiglieri's Proposed Testimony*

Ghiglieri's proposed testimony is fundamentally based upon alleged failures in opening and monitoring the Accounts. However, "[in] order for a claim of aiding and abetting to survive a motion to dismiss, the plaintiff must allege that the defendant had **actual knowledge** of the underlying wrongdoing." *Lawrence v. Bank of America, N.A.*, No. 8:09–cv–2162–T–33TGW, 2010 WL 3467501, at *3 (M.D. Fla., Aug. 30, 2010) (emphasis added), aff'd by *Lawrence v. Bank of America, N.A.*, 455 Fed. Appx. 904 (11th Cir. 2012)). The "actual knowledge" requirement of Florida state law aiding and abetting claims is based upon a long-standing history of decisions issued by the Florida Supreme Court and intermediate District Courts of Appeal. *See, e.g.*, *Wiand v. Wells Fargo Bank, N.A.*, 2013 WL 1401414 at *6 (M.D. Fla. 2013) (detailing Florida state law history of aiding and abetting claims).

Ghiglieri testified that her expert opinions would cover the following matters: "How banks open deposit accounts, how they process wire transfers, how they monitor transaction[s] for suspicious activity, how they process 314 B request[s], and how they close accounts for suspicious activity." (*See* Ghiglieri Depo., p. 52.) According to Ghiglieri, Wells Fargo failed to

---

[4] *See* Kapila Deposition, pp. 138, l. 17 – p. 140, l. 23; 266, l. 10 – p. 267, l. 10. Relevant portions of the Kapila Transcript have previously been filed. (*See* ECF No. 231.)
[5] The Expert Report of Catherine A. Ghiglieri ("Ghiglieri Report") contains extensive quotations and references to policies and procedures that have been designated as "Confidential" in accordance with the Confidentiality Agreement entered into between the parties.

produce and failed to follow policies related to the Bank Secrecy Act, and Know Your Customer and its own account opening procedures. (*See* Ghiglieri Report, pp. 22-35.) Ghiglieri surmises that Wells Fargo should not have opened PCOM demand deposit accounts at the bank and that the PCOM accounts should have been immediately characterized as high risk. (*See, e.g., id*. at pp. 34-35.) Ghiglieri opines that Wells Fargo's "account opening processes were severely flawed as shown by the inadequate verification of the information provided by PCOM at account opening and the failure to properly rate the PCOM accounts as high risk." (*Id*. at p. 35.) Ghiglieri contends that Wells Fargo investigated and had enough information to "connect the funds trail" and to have actual knowledge of the alleged Ponzi scheme, and contends that if the bank had adequately adopted and enforced appropriate systems, policies and procedures for monitoring and investigating its customers and their transactions, the bank would have acquired actual knowledge of suspicious facts and circumstances. (*Id*. at pp. 35-44.) Ghiglieri further asserts that Wells Fargo ignored indicia of money laundering and had a flawed account monitoring system (because no AML alerts were generated for the PCOM accounts during the four months that the accounts were active). (*Id.* at pp. 45-77.) Finally, Ghiglieri has the temerity to offer an "expert" opinion that Wells Fargo resisted closing the PCOM accounts despite knowledge of the "apparent fraud." (*Id.* at pp. 77-86.)

Ghiglieri's opinions are premised upon a position that banks have a duty to monitor and investigate depositors and deposit account transactions (which is contrary to established Florida law regarding Plaintiffs' aiding and abetting claims). Ghiglieri's opinions are further premised upon a position that Wells Fargo should have known of or should have discovered any misconduct perpetrated by Engler/PCO, who were not even accountholders at Wells Fargo. Based in part upon these faulty premises, Ghiglieri attempts to remove this case from the hands of the

5

FOX ROTHSCHILD LLP

jury, by concluding that Wells Fargo *knew* of the alleged Ponzi scheme. These are matters and issues reserved for the trier of fact, and for the Court to instruct regarding law. *See Southern Gardens Citrus Processing Corp. v. Barnes Richardson & Colburn*, Nos. 2:11-cv-377-29UAM, 2:11-cv-378-29UAM, 2013 WL 6844869, at *3 (M.D. Fla., Dec. 22, 2013). Additionally, Ghiglieri's opinions regarding Wells Fargo's compliance with various policies and procedures are based on speculation rather than on any reliable methodology or actual facts. Further, she is not qualified to opine that the transactions she reviewed in this case should have been regarded by bank employees as unusual or suspicious.

Consequently, there is no proper factual or legal basis upon which Ghiglieri's opinions can be founded in this case. With respect to the various transactions in the PCOM accounts and information purportedly received from PCO's bank, Ghiglieri's opinions also improperly direct the jury to conclude that Wells Fargo had "actual knowledge" regarding the alleged Ponzi scheme. Accordingly, all of Ghiglieri's opinions must be excluded because they: (i) are based upon allegations which are outside of the statute of limitations and therefore not relevant to this case; (ii) are based on speculation, rather than reliable methodology; (iii) would confound, rather than assist, the trier of fact in determining facts to which the law is to be applied, to the prejudice of Wells Fargo.

*Memorandum of Law*

A.     *Legal Standard*

Federal district courts serve as gatekeepers for admission of expert testimony, and must see that admitted testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The admissibility of expert testimony turns on three things: whether a given expert is qualified to testify competently on the subject matter; whether the expert uses a

reliable method to reach conclusions; and, whether the witness' expertise would assist the trier of fact in comprehending relevant evidence. *Quiet Tech. DC–8, Inc. v. Hurel–Dubois U.K. Ltd.,* 326 F.3d 1333, 1340-1341 (11th Cir .2003). The following essential and distinct requirements must be satisfied before testimony is admissible: "qualification, reliability, and helpfulness." *See United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir. 1999).

With respect to reliability, the Court must be satisfied that the expert's reasoning "properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592-593. "[I]f the witness is relying solely or primarily on experience, then the witness must explain . . . how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it." *Frazier* at 1261. Finally, because "expert testimony may be assigned talismanic significance in the eyes of lay jurors," a court "must take care to weigh the value of such evidence against its potential to mislead or confuse" a jury. *Id.* at 1263.

**B.    *The Opinions Are Not Based Upon Reliable Methodology***

In assessing the reliability of Ghiglieri's conclusions, this Court is not required to simply assume that Ghiglieri's training and experience would permit her to reach conclusions that can be reliably linked to the underlying facts and data she reviewed in this case. *See Hendrix v. Evenflo Co., Inc.,* 609 F.3d 1183, 1201 (11th Cir. 2010) (noting that witness "relying solely or primarily on experience must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts"). Moreover, in this case, Ghiglieri's conclusions cannot be reliably linked by her training,

experience, or methodology, to the underlying facts in this case, and so her opinions must be excluded.

Ghiglieri holds no certifications available to those who work as consultants concerning the BSA, or anti-money-laundering or fraud examination; her opinions are based solely on her prior work experience. (Ghiglieri Depo., pp. 36-37.) Her work experience consists of seven years as an Office of Comptroller of Currency field examiner in the late 1970s and early 1980s, followed by two years supervising field examiners, two years as an executive assistant on policy matters, and seven years as an OCC field office director. (*Id*. at 27-35.) She left the OCC in 1992 when she was hired by the political appointees comprising the Texas Finance Commission to serve as commissioner for banks chartered in that state. (*Id*.) She resigned that position in **1999** to form Ghiglieri & Company consulting firm, for which she serves as its sole consultant, and provides consulting and testifying expert services in litigation. (*See id*.; Ghiglieri Report, App'x A.)

Ghiglieri acknowledged at her deposition that regulations implementing the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001 reflected major changes in the BSA regulatory scheme that became effective in mid-2003. (Ghiglieri Depo., p. 32.) This was more than a decade after she had left the employ of the OCC and some twenty years since she had last examined a bank for BSA compliance.

At her deposition, Ghiglieri acknowledged that her opinions that the PCOM accounts were opened and monitored in violation of the BSA and requirements imposed under the USA PATRIOT Act were rendered without having access to all of the banks policies and procedures regarding BSA issues. (*See* Ghiglieri Depo., pp. 118-20.) Ghiglieri testified that Wells Fargo's

objection to the production of certain documents did not matter to her. (*See* Ghiglieri Depo., p. 120.) Thus, Ghiglieri makes assumptions and renders "expert" conclusions based on documents that she did not have (because the production of said documents had been properly objected to). Ghiglieri acknowledged that she was unaware of the law applicable to the Plaintiffs' claims in this action. (*See id.* at pp. 98-9.) Similarly, despite conceding that there is no private cause of action against a bank for violation of the BSA (and despite there being no legal requirements in the USA Patriot Act regarding, for example, the changing of a risk rating or to immediately close an account based on receipt of a Section 314(b) request), Ghiglieri contends that Wells Fargo assisted the alleged fraud because it violated the BSA. (*See, e.g.*, Ghiglieri Depo., pp. 128-32.)

With respect to the transactions reviewed by Ghiglieri, she is not qualified to opine that the transactions she reviewed in this case should have been regarded by bank employees as unusual or suspicious, for the simple reason that Ghiglieri rendered her conclusions without knowledge of how PCOM's customer account history would or would not have caused Wells Fargo's systems to generate AML alerts in the four-month window in which the PCOM accounts were active. Ghiglieri's analysis and conclusions are not reliable.

In her deposition, Ghiglieri asserted that SunTrust's (the bank of PCOM's client) statement to Wells Fargo that it had not been able to identify any specific BSA violations was basically irrelevant to her conclusions and that she does not know what if anything SunTrust did after June of 2007. (*See* Ghiglieri Depo., pp.137-39, 144-45.) Ghiglieri admitted that a key document (a certain warning notification) in her analysis did not even mention the names of Wells Fargo's customer (PCOM) or the principal of Wells Fargo's customer. (*See* Ghiglieri Depo., p. 146.)

In her deposition, Ghiglieri also admits that she does not know what steps Wells Fargo took or did not take with regard to its BSA/AML obligations in connection with the Federal government. (*See* Ghiglieri Depo., pp. 103, 210-11, 214.) Ghiglieri even acknowledged that one of her sources in her expert report was a document that was published in 2011 (four years after the accounts in question in this action were open and active). (*See* Ghiglieri Depo., pp.134-35.) For these reasons, even if Ghiglieri's opinions concerning alleged deficiencies in account opening or monitoring were relevant, they are completely unreliable and must be excluded.

A significant portion of Ghiglieri's expert opinion is that bank employees should have identified certain transactions and taken action based on "repeated indicia of money laundering". (*See* Ghiglieri Report., pp. 61 *et seq.*) However, under Florida law, a "conclusory statement that a defendant 'actually knew' was insufficient to support an aiding and abetting claim where the facts in the Amended Complaint only suggested that the defendant "should have known that something was amiss". *Groom*, 2012 WL 50250, at *3. Throughout her opinion, and despite a contrived position that Wells Fargo "actually" knew certain information, Ghiglieri acknowledges that what she is really saying is that Wells Fargo "should have" known about the Engler/PCO Ponzi scheme. (*See, e.g.*, Ghiglieri Depo., p. 66 ("should have raised alarm bells").) Ghiglieri's repeated assertions, in both her report and her deposition, about what Wells Fargo should have known (and therefore purportedly "did" know), indicates that Ghiglieri's opinions are not founded upon a sound or reliable understanding of the law applicable to aiding and abetting claims in the context of Ponzi schemes and the BSA.

Another flaw in Ghiglieri's opinions is illustrated by the following example. On pages 87 and thereafter of Ghiglieri's report, Ghiglieri cites at length various documents related to an investigation that concluded in 2010 with respect to, *inter alia*, *casas de cambio* and high-risk

correspondent banking accounts. In her deposition Ghiglieri admitted that the present action does not involve a *casa de cambio*. (*See* Ghiglieri Depo., pp. 40-41.) Instead, the present action involves only two accounts that PCOM had with Wells Fargo. (*See* Ghiglieri Depo., p. 90.)

As evidenced herein, Ghiglieri's opinions are not based on reliable methodology or analysis. Additionally, her conclusions are based on premises that are contrary to Florida law and on events which occurred outside of the statute of limitations. For these reasons, Ghiglieri's testimony should be excluded from evidence.

C.  *Ghiglieri's Entire Report is Based On Events Barred by the Statute of Limitations*

In its March 19, 2013 Opinion and Order (ECF No. 72, p. 16), this Court stated: "While Count VI does not expressly allege any wire transfers after December 15, 2011, the allegations cannot support a statute of limitations defense on a motion to dismiss without viewing the allegations and their reasonable inferences in favor of defendant, which is not permitted when resolving a motion to dismiss." In its November 20, 2013 Opinion and Order (ECF No. 116, p.7) on Wells Fargo's prior Dispositive Motion for Summary Judgment (ECF No. 78), this Court determined that there was a "lack of clarity as to the significance of Wells Fargo's activities after December 15, 2007", which "drawing all reasonable inferences in favor of the Plaintiffs" precluded the entry of summary judgment in favor of Wells Fargo at that time. Thus, this Court is only concerned with "the significance of Wells Fargo's activities *after* December 15, 2007".

The record evidence in this action is abundantly clear that there were no activities by Wells Fargo after December 15, 2007 which in any way contributed to the Debtors stealing money from the Accounts as set forth in further detail in Wells Fargo's Dispostive Motion for Summary Judgment (ECF No. 230) filed of even date herewith. In fact, at his March 19, 2014 deposition, Plaintiff's forensic accountant expert Soneet Kapila ("Kapila") admitted that his own

review shows the last wire transfer into or out of the Accounts occurred on November 16, 2007, and that there were no further monies put into or wired out of the Accounts after that date, and could not identify any transactions conducted on the Accounts after November 16, 2007.[6] There were none. Ghiglieri herself acknowledged that there were no customer transactions after November 20, 2007. (Ghiglieri Depo., pp. 106-07.) Very simply, neither Richter nor any of her proposed experts can point to a single action taken by Wells Fargo after December 15, 2007, which in any way contributed to the Debtors stealing Richter's money from the Accounts.

Accordingly, Ghiglieri's opinions which are entirely based upon events occurring after May of 2007 and prior to December 15, 2007, which are outside of the statute of limitations period, are entirely irrelevant to the claims at issue in this action and should be excluded.

### D. Ghiglieri's Opinions Are Irrelevant to the Aiding and Abetting Claims Because They Do Not Demonstrate Actual Knowledge

Ghiglieri's Report is largely based upon her position that Wells Fargo violated the BSA and other regulatory statutes. Ghiglieri conceded this in her deposition testimony, in which Ghiglieri stated that she focused on what Wells Fargo "should or shouldn't have done based on what the banking laws and regulations say." (*See* Ghiglieri Depo., p 94.)

However, the law is abundantly clear that no private cause of action exists for alleged violations of BSA or other applicable regulatory statutes. *See e.g.*, *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 552-553 (Fla. 2d DCA 2003) (no private cause of action exists for a bank's failure to comply with regulatory statutes); *Compania de Elaborados de Cafe v. Cardinal Capital Management, Inc.*, 401 F. Supp. 2d 1270, 1279 (S.D. Fla. 2003)(no private cause of action exists under Florida Control of Money Laundering in Financial Institutions Act, Fla. Stat. §655.50); *James v. Heritage Valley Fed. Credit Union*, 197 Fed Appx. 102, 106 (3d

---

[6] *See* Kapila Deposition, p. 138, l. 17 – p. 140, l. 23; p. 266, l. 10 – p. 267, l. 10.

Cir. 2006) (the BSA does not authorize a private cause of action against a financial institution or its employees); *Hanninen v. Fedoravitch*, 583 F. Supp. 2d 322, 326 (D. Conn 2008) (neither Patriot Act nor Bank Secrecy Act creates private cause of action); *Armstrong v. American Pallet Leasing, Inc.,* 678 F. Supp. 2d 827, 875 (N.D. Iowa 2009) (BSA does not permit a private right of action); *Aiken v. Interglobal Mergers and Acquisitions*, 2006 WL 1878323 at *2 (S.D.N.Y. 2006) (neither the BSA or the Patriot Act affords a private right of action); *Martinez Colon v. Santander National Bank*, 4 F. Supp. 2d 53, 57 (D.P.R. 1998) (the BSA provides for civil and criminal penalties, but a defendant's only liability is to the government). Ghiglieri in her deposition concedes that there is no private right of action for violation of the BSA/AML. (*See* Ghiglieri Depo., pp. 129-29.)

In the case of *Rosner v. Bank of China,* 2008 WL 5416380 at *4, 5-7 (S.D.N.Y. 2008) (cited with approval in *Lawrence v. Bank of America, N.A.*, No. 8:09–cv–2162–T–33TGW, 2010 WL 3467501, at *3 (M.D. Fla., Aug. 30, 2010), aff'd by *Lawrence v. Bank of America, N.A.*, 455 Fed. Appx. 904 (11th Cir. 2012)), the Court specifically addressed the effect of disregarding applicable laws and regulations in this context. In *Rosner*, the Receiver alleged that: "BoC disregarded applicable laws and regulations that, if followed, would have prevented the laundering of the [investors'] funds. Specifically, Rosner claims that BoC failed to comply with domestic and international bank secrecy, know-your-customer, and anti-money laundering laws, decrees, and regulations, and that BoC was a knowing and willing participant in the fraudulent scheme and provided the banking services necessary to effectuate the transfer of the stolen funds." *Rosner v. Bank of China,* 528 F. Supp 2d 419, 423 (S.D.N.Y. 2007). However, the *Rosner* Court held that such allegations were insufficient to maintain aiding and abetting claims against the defendant bank. *Id.* at 423, 426-427.

Likewise, a failure to comply with the BSA or other applicable regulatory statutes does not establish actual knowledge of a customer's wrongdoing, much less the wrongdoing of a non-customer. In this regard, Florida courts have expressly held that "Red flags or aroused suspicions do not constitute actual awareness of one's role in a fraudulent scheme". *Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.,* 2008 WL 926513 at *6 (S.D. Fla. 2008). "Recklessness does not suffice as to the actual knowledge element of the alleged fraud." *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.,* 917 So. 2d 368, 371 (Fla. 5th DCA 2005). Thus, "[a]ctual, not constructive, knowledge is required to impose liability on an alleged aider and abettor." *Rosner,* 2008 WL 5416380 at *4, 5-7 (cited with approval in *Lawrence*; holding that bank's knowledge of "red flags" or unusual banking activity did not equate to actual knowledge of the fraud by the bank's client). Ghiglieri even admits that "red flags" do not necessarily mean that there is a problem with a customer's accounts. (*See* Ghiglieri Depo., pp. 112-13.) Ghiglieri states in both her report and her deposition that Wells Fargo had information and "should have" reached certain conclusions. (*See, e.g.*, Ghiglieri Depo., p. 167.) This plainly falls short of the actual knowledge standard under Florida law.

Based upon the foregoing, Richter cannot rely upon the alleged violation of the BSA or any other regulatory statutes to establish the actual knowledge element of her Aiding and Abetting Claims. Similarly, Ghiglieri cannot base her opinions on the various red flags and other items she identifies in her report. As Ghiglieri's opinions only focus on alleged omissions of the requirements of the BSA and other regulatory statutes, and on various purported red flags, her opinions must be excluded.

E.   *Ghiglieri's Opinions Are Irrelevant to the Aiding and Abetting Claims Because They Do Not Demonstrate Substantial Assistance*

"Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so ...." *Lawrence*, 2010 WL 3467501 at *4. In evaluating the substantial assistance element of the Plaintiffs' aiding and abetting claims, the *Lawrence* Court disregarded as conclusory allegations that: "BoA permitted Diamond and DV to "engage in atypical" or "dubious and suspicious" transactions without reporting them to the proper authorities." Thus, in reviewing the "real factual allegations related to BoA's alleged knowing rendition of substantial assistance", the *Lawrence* Court held: "These allegations do not adequately allege that BoA affirmatively assisted, concealed, or otherwise knowingly rendered substantial assistance in Diamond and DV's alleged commission of fraud, conversion, or breach of fiduciary duty. These allegations simply support that BoA provided Diamond and DV with basic banking services available to BoA customers." *Id.* at *5.

The *Rosner* Court explained: "Rosner alleges no participation by BoC other than that it allowed IFS Inc. and Siu Lap to create accounts, transfer funds among accounts, and make withdrawals from accounts. The Second Amended Complaint gives no evidence that BoC was doing anything more than providing its usual banking services to a customer, and the mere fact that participants in a fraudulent scheme use accounts at a bank to perpetrate it, without more, does not in and of itself rise to the level of substantial assistance." *Rosner,* 2008 WL 5416380 at *12. The *Rosner* Court also held that alleged violations of bank secrecy, know-your-customer, and anti-money laundering laws, decrees, and regulations "do not elevate BoC s actions into the realm of "substantial assistance." *Rosner,* 528 F. Supp 2d 419, 427 (S.D.N.Y. 2007).

Ghiglieri's opinions fail to establish the proposition that Wells Fargo substantially assisted any misconduct by any of the Debtors. Ghiglieri's report and deposition testimony

establish nothing more than that PCOM conducted banking activities at Wells Fargo and that Wells Fargo provided routine banking services to its customer. Ghiglieri's opinion that Wells Fargo failed to comply with certain regulatory statutes and suggestion that the banking activities in question herein were anything other than routine banking activities, as a matter of law, does not establish that Wells Fargo substantially assisted any underlying misconduct by the Debtors. Accordingly, Ghiglieri's opinions in this regard should be excluded.

F. ***Ghiglieri Improperly Opines on Matters Reserved for the Trier of Fact and for the Court***

In her report, Ghiglieri repeatedly opines on what Wells Fargo "knew" as a result of a Section 314(b) communication received and based on certain account activity. (*See, e.g.*, Ghiglieri Depo., p. 229.) This "opinion" is in violation of Rule 704, Federal Rules of Evidence. "An expert may testify as to his opinion on ultimate issue of fact but an expert may not, however, merely tell the jury what result to reach. A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law … Courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law." *Southern Gardens*, 2013 WL 6844869, at *3. Ghiglieri's report is rife with her conclusions and statements on what the applicable law is regarding the BSA, and on what Wells Fargo "actually knew". These are matters on which the Court is to provide instruction (not Ghiglieri) and for the jury to decide on (not Ghiglieri). Accordingly, Ghiglieri's expert report must be excluded.

*Conclusion*

For all of the foregoing reasons, Ghiglieri's opinion testimony cannot properly be applied to the facts in this case. Ghiglieri's expert report is unreliable and would confuse, rather than

assist, the trier of fact in this case. Accordingly, Ghiglieri's opinion testimony should be excluded from evidence in this case.

### CERTIFICATE OF COMPLIANCE WITH M.D. FLA. L.R. 3.01(g)

I HEREBY CERTIFY that, in accordance with M.D. Fla. L.R. 3.01(g), the undersigned counsel has conferred with counsel for Plaintiffs in a good faith effort to resolve the issues raised in this motion, but has been unable to reach any resolution with respect to this motion.

### CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of April, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Dated: April 25, 2014
West Palm Beach, Florida

**FOX ROTHSCHILD LLP**

/s/ Amy S. Rubin
Amy S. Rubin (Florida Bar No.: 476048)
arubin@foxrothschild.com
Heather L. Ries (Florida Bar No.: 581933)
hries@foxrothschild.com
Elliot A. Hallak (Florida Bar No.: 762741)
ehallak@foxrothschild.com
Thomas C. Allison (Florida Bar No.: 35242)
tallison@foxrothschild.com
222 Lakeview Avenue, Suite 700
West Palm Beach, FL 33401
Telephone: 561.835.9600
Facsimile: 561.835.9602

*Attorneys for Defendant, Wells Fargo Bank, N.A.*

*Franz Lesti, et al. v. Wells Fargo Bank, N.A.*
Case No. 2:11-cv-695-FtM-29DNF

## SERVICE LIST

*Franz Lesti, et al. v. Wells Fargo Bank, N.A.*
Case No: 2:11-CV-695-FtM-29DNF
United States District Court, Middle District of Florida

**Electronically by CM/ECF System**
Amy S. Rubin (Florida Bar Number: 476048)
Heather L. Ries (Florida Bar No.: 581933)
Elliot A. Hallak (Florida Bar Number: 762741)
Thomas C. Allison (Florida Bar No. 35242)
Fox Rothschild LLP
222 Lakeview Avenue, Suite 700
West Palm Beach, FL 33401
Telephone: 561.835.9600
Facsimile: 561.835.9602
*arubin@foxrothschild.com*
*ehallak@foxrothschild.com*
*hries@foxrothschild.com*
*tallison@foxrothschild.com*

Stuart A. Davidson (Florida Bar Number: 084824)
Paul J. Geller (Florida Bar Number: 984795)
Robert J. Robbins (Florida Bar Number: 572233)
Cullin A. O'Brien (Florida Bar Number: 597341)
Christopher Martins (Florida Bar Number: 88733)
Bailie L. Heikkinen, (Florida Bar Number: 55998)
ROBBINS GELLER RUDMAN & DOWD LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33433
Telephone: 561.750.3000
Facsimile: 561.750.3364
*sdavidson@rgrdlaw.com*
*pgeller@rgrdlaw.com*
*rrobbins@rgrdlaw.com*
*cobrien@rgrdlaw.com*
*cmartins@rgrdlaw.com*
*bheikkinen@rgrdlaw.com*

ACTIVE 25496279v2 04/25/2014

*Franz Lesti, et al. v. Wells Fargo Bank, N.A.*
Case No. 2:11-cv-695-FtM-29DNF

David S. Mandel (Florida Bar Number: 38040
Nina Stillman Mandel (Florida Bar Number: 843016
MANDEL & MANDEL LLP
169 East Flagler Street, Suite 1200
Miami, FL 33131
Tel.: (305) 374-7771
Fax: (305) 374-7776
dmandel@mandel-law.com
nsmandel@mandel-law.com

Robert F. Elgidely (Florida Bar Number: 111856)
GENOVESE JOBLOVE & BATTISTA, P.A.
200 E. Broward Blvd., Suite 1110
Fort Lauderdale, FL 33301
Telephone: 954.453.8022
Facsimile: 954.331.2907
relgidely@gjb-law.com

Carmen Contreras-Martinez (Florida Bar Number: 093445)
GENOVESE JOBLOVE & BATTISTA, P.A.
100 Southeast Second Street
44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
ccontreras@gjb-law.com