UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PETRA RICHTER, individually
and on behalf of all others
similarly situated,

    Plaintiff,

v.                                Case No: 2:11-cv-695-FtM-29DNF

WELLS FARGO BANK NA,

    Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. #230) filed on April 25, 2014. Plaintiff filed a Response (Doc. #252) on May 9, 2014, to which Defendant filed a Reply (Doc. #286) on August 11, 2014. For the reasons set forth below, Defendant's motion is granted.

**I.**

This case concerns Plaintiff's allegations that SunTrust Bank (SunTrust) and Wells Fargo Bank, N.A. (Wells Fargo) assisted Ulrich Engler (Engler) and Angelika Neumeier-Fuchs (Fuchs) in the commission of their Ponzi scheme. When originally filed, the Amended Complaint alleged ten causes of action against Wells Fargo and SunTrust. (Doc. #24.) Subsequently, all causes of action against SunTrust (Counts I-V) were dismissed as time-barred (Doc.

#72); two causes of action against Wells Fargo (Counts VIII and X) were dismissed as insufficiently pled (Doc. #72) and were not further amended; and Plaintiff Franz Lesti's claims were dismissed with prejudice (Doc. #206). Thus, at this juncture all that remain are Plaintiff Petra Richter's (Plaintiff or Richter) causes of action against Wells Fargo for aiding and abetting conversion (Count VI), aiding and abetting fraud (Count VII), and unjust enrichment (Count IX).

Briefly stated, Richter alleges that Engler, a German citizen, owned and purported to operate Private Commercial Office, Inc. (PCO), a highly profitable day trading and investment business. Engler solicited investments from individuals and entities primarily located in Europe, and guaranteed annualized returns of between 48% and 72%. The investments were documented by Promissory Notes and Loan Agreements between Engler and PCO as borrowers and the investors as lenders. Rather than investing the proceeds, Engler and Fuchs operated a classic Ponzi scheme which stole millions of dollars from investors.[1]

The Court has previously found that Richter was on notice of the alleged Ponzi scheme as of November 22, 2006, when the Austrian

---

[1] Engler is currently serving a prison sentence for his role in the Ponzi scheme. Fuchs has been indicted but, as of the filing of Wells Fargo's motion, has not been convicted.

2

Market Financial Authority issued a public warning about Engler and his business practices. (Doc. #72, pp. 17-18.) Richter stated in interrogatories that she became aware of the alleged scheme in early 2007. (Doc. #78-5, p. 29.) Nonetheless, on August 10, 2007, Richter invested $6,500 with PCO, executing a Promissory Note and Loan Agreement, and wiring $6,500 to a Wells Fargo bank account of PCO Client Management, Inc. (PCOM).  In return for her $6,500 investment, Richter was promised a return of $391,574.57 after seven years and one day.  (Doc. #230, p. 8; Doc. #252, p. 6.)

   PCOM maintained two Wells Fargo bank accounts (the PCOM Accounts).  An account number ending "7271" (the 7271 Account) was opened on June 27, 2007, in the name of PCOM.  (Doc. #230-1, ¶¶ 4-10.)  Neither Engler nor PCO were signatories on the 7271 Account, and no wire transfers were ever processed into or out of this account.  (Id.)  The last transfer of proceeds into or out of this account occurred on October 23, 2007, and there was no activity in the account after that date.  (Id.)  Wells Fargo formally closed the 7271 Account on October 23, 2007, and Wells Fargo did not receive any proceeds from the Ponzi scheme into the 7271 Account after that date.  (Id.)

   A second Wells Fargo account, ending in "5057" (the 5057 Account), was opened on May 29, 2007 in the name of PCOM. (Id. at ¶¶ 11-24.)  Neither Engler nor PCO were signatories on the 5057

Account. (Id.) Plaintiff's $6,500 was wire transferred into this account. (Doc. #252, p. 6.) The last wire transfer processed on this account by PCOM occurred on October 23, 2007. (Doc. #230-1, ¶¶ 11-24.) On November 13, 2007, Wells Fargo placed a "debit restraint" on the 5057 Account, which prevented any proceeds from being withdrawn from the 5057 Account. (Id.) The last transfer of any proceeds into or out of the 5057 Account occurred on November 16, 2007, when a previously initiated wire transfer was returned. (Id.) As of December 1, 2007, the 5057 Account had a negative balance of $8,471.85. (Id.) Wells Fargo never collected any portion of the negative balance, which was ultimately charged-off on December 31, 2007. (Id.) Following the charge-off, Wells Fargo formally closed the 5057 Account on January 2, 2008. (Id.)

In addition to the PCOM Accounts, Wells Fargo also maintained personal accounts (the Personal Accounts) for Fuchs. (Doc. #286-1.) In September 2007, Fuchs transferred approximately $1 million from the PCOM Accounts to the Personal Accounts. (Docs. ##252-20, 252-21.)

From December 15, 2007 onward, the maximum amount in the Personal Accounts was $614,226.00. (Docs. ##286-1, 252-25.) Prior to their closure, Fuchs removed all but $639.48 from the Personal Accounts. (Doc. #252-25.) Specifically, on January 7, 2008 Wells Fargo processed a $100,000 check drawn on the Personal Accounts

4

and made payable to Fuchs. (Doc. #252-23.) Wells Fargo closed the Personal Accounts on May 23, 2008. (Doc. #286-1.)

## II.

Wells Fargo now moves for summary judgment, arguing that (1) Richter's claims are time-barred; (2) Richter's investment was a usurious loan for which she is not entitled to recover; and (3) Richter cannot prevail on her fraud claim because she cannot establish reliance on any representation by Engler/PCO. Richter takes a contrary position on each issue, asserting that there are at least issues of disputed material facts which preclude summary judgment. The Court applies the same summary judgment legal standards as set forth in its previous Opinion and Order (Doc. #116, pp. 2-3.)

As determined in the Court's prior Opinion and Orders: (1) Florida law provides the appropriate statute of limitations; (2) the parties agree that all of Richter's current remaining claims are governed by a four-year statute of limitations; (3) the statute of limitations begins to run when the cause of action accrues, which is generally on the date the last element constituting the cause of action occurs; (4) the delayed discovery doctrine does not impact the accrual of the statute of limitations in this case; and (5) the statute of limitations "cutoff" date is December 15, 2007 (the Limitations Cutoff), i.e., four years before the original

Complaint was filed on December 15, 2011. (Docs. ##72, 116.) The Court will apply the statute of limitations to each cause of action separately.

**A.   Aiding and Abetting Conversion (Count VI)**

Count VI of the Amended Complaint alleges that Wells Fargo aided and abetted Engler and Fuchs in their unlawful conversion of her investor funds. It is alleged that Wells Fargo had actual knowledge of the fraudulent use of the PCOM accounts no later than June 8, 2007. (Doc. #24, ¶¶ 44, 101.) Wells Fargo's alleged aiding and abetting consisted of Wells Fargo continuing to process receipts and disbursements of funds to and from the PCOM Accounts (Doc. #24 at ¶ 102) and Personal Accounts (Doc. #252, pp. 15-18). Defendant asserts that plaintiff cannot point to "a single action taken by Wells Fargo after December 15, 2007, which in any way contributed to the Debtors stealing Richter's money from the Accounts." (Doc. #230, p. 16.)

The elements necessary to sustain the aiding and abetting claim under Florida law are: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." Lawrence v. Bank of Am., N.A., 455 F. App'x 904, 906 (11th Cir. 2012) (citations omitted). See also

Perlman v. Wells Fargo Bank, N.A., 559 F. App'x 988, 993 (11th Cir. 2014).

The "underlying violation" in this count is the conversion committed by Engler and Fuchs. "It is well settled that a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." Mayo v. Allen, 973 So. 2d 1257, 1258 (Fla. 1st DCA 2008).  See also Tambourine Comercio Internacional S.A. v. Solowsky, 312 F. App'x 263, 271-72 (11th Cir. 2009).  For summary judgment purposes, Wells Fargo does not dispute that there was a conversion committed by Engler and Fuchs.  Therefore the first element is satisfied for summary judgment purposes.

The actual knowledge by Wells Fargo of the conversion is disputed, but Wells Fargo does not raise this as a summary judgment issue.  (Doc. #230, p. 15 n.26.)  Accordingly, the Court assumes for summary judgment purposes only that Wells Fargo's had actual knowledge of the conversion by Engler and Fuchs.

Wells Fargo focuses on the third element, arguing that the undisputed material facts establish that it did not render substantial assistance to the conversion by Engler and Fuchs within the statute of limitations period.  The Court agrees with Wells Fargo.

"Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the [underlying violation] to occur." BCJJ, LLC v. LeFevre, No. 09-CV-551, 2012 WL 3071404, at *34 (M.D. Fla. July 27, 2012). "[A] failure to act, where there is no duty to act, is not substantial assistance." Hines v. FiServ, Inc., No. 08-CV-2569, 2010 WL 1249838, at *4 (M.D. Fla. Mar. 25, 2010). A defendant does not provide substantial assistance unless his action, or inaction, was a "substantial factor in causing the [underlying violation]." In re Palm Beach Fin. Partners, L.P., 517 B.R. 310, 348 (Bankr. S.D. Fla. 2013) (quotation omitted). Thus, substantial assistance will not be found where "[t]he amount of assistance alleged is minor in comparison to the massive scope of [the] overall fraudulent scheme." Id. at 349. To determine whether a defendant provided substantial assistance, courts examine a variety of factors including "the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, [and] his relation to the other and his state of mind." In re Temporomandibular Joint Implants, 113 F.3d 1484, 1495 (8th Cir. 1997). Additionally, when the alleged aider and abetter is not an integral part of the underlying violation, "[c]ourts must also consider the potentially devastating impact aiding and abetting liability might have on

commercial relationships." In re Palm Beach Fin. Partners, 517 B.R. at 348 (quotation omitted).

The nature of a claim of conversion is also relevant. The last act necessary to make a defendant liable for the tort of conversion occurs when the wrongdoer exercises wrongful dominion and control over the property to the detriment to the rights of its actual owner. Envases Venezolanos, S.A. v. Collazo, 559 So. 2d 651, 652 (Fla. 3rd DCA 1990). The conversion is complete upon the wrongful deprivation of the property, not the acquisition of the property by the wrongdoer. Nat'l Union Fire Ins. Co. of Pennsylvania v. Carib Aviation, Inc., 759 F.2d 873, 878 (11th Cir. 1985) ("The essence of the tort is not the acquisition of the property; rather, it is the wrongful deprivation."); see also Collazo, 559 So. 2d at 652-53 (collecting cases).

It is undisputed that all of the proceeds from the Ponzi scheme were taken from the Wells Fargo PCOM Accounts before December 15, 2007. By that time, the 7271 Account had been closed for over a month, and the 5057 Account had a negative balance that was never recouped. None of the ministerial activity taken by Wells Fargo thereafter aided or abetted the conversion by Engler or Fuchs in any way. On September 13, 2007, prior to closure of the PCOM Accounts, Fuchs transferred approximately $1 million from the PCOM Accounts into her Personal Accounts. Of that $1 million,

$614,226 remained in her Personal Accounts *after* the December 15, 2007 Limitations Cutoff. Wells Fargo did not prevent Fuchs from withdrawing all but $639.48 from the Personal Accounts prior to its closure of her Personal Accounts, some of which was after the Limitations Cutoff. For example, Richter has provided documentary evidence that on January 7, 2008, Wells Fargo processed and cashed a $100,000 check for Fuchs drawn on one of her Personal Accounts. (Doc. #252-23.) This, however, did not aid and abet the conversion because the conversion was already complete, no later than September 13, 2007, when the $1 million was withdrawn from the PCOM Accounts. Simply transferring money from the Personal Accounts to Fuchs did not provide substantial assistance to the completed conversion.

Additionally even if the conversion was not completed, the Court concludes that, as a matter of law, Wells Fargo did not provide substantial assistance to the conversion by allowing Fuchs to access the investor funds she had previously transferred to her Personal Accounts. The only action taken by Wells Fargo after the Limitations Cutoff that arguably aided Fuchs was the failure to freeze Fuchs' Personal Accounts. The lack of a freeze allowed Fuchs to withdraw approximately $600,000 that otherwise might have been returned to Richter and other cheated investors.

That inaction would not support a determination that Wells Fargo provided substantial assistance for the conversion. To the extent Wells Fargo's inaction assisted Fuchs, such assistance was exceedingly minor "in comparison to the massive scope of [the] overall fraudulent scheme." In re Palm Beach Fin. Partners, 517 B.R. at 349. Wells Fargo played no role in convincing Richter and others to invest with PCO, and Fuchs had already transferred the last of the investors' funds to her Personal Accounts by the time Wells Fargo is alleged to have aided and abetted her. Thus, it cannot be said that Wells Fargo's inaction was a "substantial factor in causing" the conversion. Id. at 348. Moreover, Richter has not pointed to any evidence suggesting that Wells Fargo acted in concert with Fuchs or that its failure to freeze her Personal Accounts was made with the goal of assisting Fuchs in the commission of conversion. Nor does Richter argue that Wells Fargo was under a duty to freeze the Personal Accounts. Hines, 2010 WL 1249838 at *4.

Thus, each of the factors outlined in In re Temporomandibular Joint Implants support a finding that Wells Fargo did not render substantial assistance to Engler and Fuchs. 113 F.3d at 1495. Likewise, extending aiding and abetting liability to Wells Fargo here would have a chilling effect on commercial banking relationships by requiring banks to preemptively freeze accounts

11

on their own accord lest they risk liability for aiding and abetting misconduct by their accountholders. In re Palm Beach Fin. Partners, 517 B.R. at 348. Accordingly, the Court concludes that Wells Fargo is entitled to summary judgment as to Count VI.

**B.   Aiding and Abetting Fraud (Count VII)**

Count VII of the Amended Complaint alleges that the same conduct by Wells Fargo aided and abetted Engler and Fuchs in the fraud they perpetrated to obtain new investors to fuel their Ponzi scheme. For similar reasons discussed above, this claim fails.

The elements of an aiding and abetting claim and the standard used to determine "substantial assistance" are as set forth above. Lawrence, 455 F. App'x at 906; In re Temporomandibular Joint Implants, 113 F.3d at 1495; In re Palm Beach Fin. Partners, 517 B.R. at 348; BCJJ, 2012 WL 3071404 at *34; Hines, 2010 WL 1249838, at *4. "An aggrieved party proves common law fraud by establishing that: (1) the opposing party made a misrepresentation of a material fact, (2) the opposing party knew or should have known the falsity of the statement, (3) the opposing party intended to induce the aggrieved party to rely on the false statement and act on it, and (4) the aggrieved party relied on that statement to his or her detriment." Jackson v. Shakespeare Found., Inc., 108 So.3d 587, 595 n.2 (Fla. 2013) (citing Butler v. Yusem, 44 So.3d 102, 105 (Fla. 2010)).

12

For the reasons set forth in the Court's analysis of Count VI, the Court concludes that the fraud was complete prior to the Limitations Cutoff and, as a matter of law, Wells Fargo did not aid and abet Engler and Fuchs in committing fraud. Wells Fargo's inaction was at most a minor factor in the overall fraudulent scheme and therefore it cannot be said that Wells Fargo's failure to freeze Fuchs's Personal Accounts was a substantial causal factor of the fraud. Moreover, as the fraud in question took place at the time Richter made her investment, Wells Fargo's inaction is even further removed from the fraud than it was from the conversion. Accordingly, Wells Fargo is entitled to summary judgment as to Count VII.

**C.   Unjust Enrichment (Count IX)**

"A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." Virgilio v. Ryland Grp., Inc., 680 F.3d 1329, 1337 (11th Cir. 2012) (citations omitted). The benefits alleged to have been conferred in this case were the service and transaction fees earned by Wells Fargo on the PCOM Accounts and Personal Accounts.

13

As set forth above, any transaction or service fees received by Wells Fargo for the PCOM Accounts took place before the Limitations Cutoff. Concerning the Personal Accounts, Wells Fargo has provided uncontradicted testimony and documentary evidence demonstrating that Wells Fargo neither charged nor collected any fees on the Personal Accounts at any time. (Doc. #286-1, ¶¶ 11, 18, 26; Docs. ##286-2, 286-3, 286-4.) Thus, Richter has provided no evidence that Wells Fargo obtained any benefit from the PCOM Accounts or the Personal Accounts after the Limitations Cutoff and, therefore, Wells Fargo is entitled to summary judgment as to Count IX.[2]

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. #230) is **GRANTED**, judgment is entered in favor of Defendant as to Counts VI, VII, and IX of the Amended Complaint (Doc. #24), and Plaintiff shall take nothing. The Clerk shall withhold the entry of judgment pending the outcome of Plaintiff's Second Amended Motion for Class Certification (Doc. #219).

---

[2] Having found that Wells Fargo is entitled to summary judgment on all remaining counts on the basis of its statute of limitations argument, the Court need not address Wells Fargo's other grounds for summary judgment.

14

2. Within fourteen (14) days of the date of this Opinion and Order, the parties shall file supplemental memoranda addressing the impact of this Opinion and Order on Plaintiff's Second Amended Motion for Class Certification (Doc. #219).

**DONE AND ORDERED** at Fort Myers, Florida, this __13th__ day of January, 2015.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies: Counsel of record

15